IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KRAFT FOODS GROUP BRANDS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-028 (LPS) |
| | ) | |
| TC HEARTLAND, LLC d/b/a HEARTLAND | ) | |
| FOOD PRODUCTS GROUP and HEART- | ) | |
| LAND PACKAGING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**HEARTLAND'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS CLAIMS FOR LACK OF PERSONAL JURISDICTION AND
FOR TRANSFER OF VENUE TO THE SOUTHERN DISTRICT OF INDIANA**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
tcurry@mnat.com
  *Attorneys for TC Heartland, LLC d/b/a
  Heartland Food Products Group and
  Heartland Packaging Corporation*

OF COUNSEL:

James W. Dabney
Richard M. Koehl
Emma L. Baratta
FRIED FRANK
HARRIS SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004-1980
(212) 859-8000

June 23, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

      A.    Kraft and Its Claims Against Heartland ........................................................ 2

      B.    Defendants' Lack of Substantial Ties, Connections, or Relations With Delaware ............................................................................ 3

ARGUMENT ................................................................................................................................ 4

    I.    THE COURT LACKS PERSONAL JURISDICTION OVER KRAFT'S CLAIMS ARISING FROM NON-DELAWARE ACTIVITIES OR OCCURRENCES ...................................................... 4

    II.    THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF INDIANA. ............................................. 10

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A. L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.,*
611 F.2d 997 (5th Cir. 1980) ...............................................................13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
21 F.3d 1558 (Fed. Cir. 1994)...............................................................10

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,*
406 U.S. 706 (1972).............................................................................10

*Calder v. Jones,*
465 U.S. 783 (1984)..........................................................................8, 10

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2014).....................................................................7, 9, 10

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.,*
525 F.3d 1353 (Fed. Cir. 2008)...............................................................4

*Fourco Glass Co. v. Transmirra Prods. Corp.,*
353 U.S. 222 (1957)....................................................................2, 10, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
131 S. Ct. 2846 (2011) ................................................................. Passim

*Hanson v. Denckla,*
357 U.S. 235 (1957)...........................................................................6, 8

*Hazelquist v. Guchie Moochie Tackle Co.,*
437 F.3d 1178 (Fed. Cir. 2006)...............................................................4

*J. McIntyre Machinery, Ltd. v. Nicastro,*
131 S. Ct. 2780 (2011)....................................................................6, 7, 8

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995).....................................................................12

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984)..........................................................................8, 10

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co,*
342 U.S. 180 (1952)..............................................................................12

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ..................................................................................................5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) ............................................................................................5

*Sears, Roebuck & Co. v. Sears plc.*,
    752 F. Supp. 1223 (D. Del. 1990) ...............................................................5, 9, 10

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) .............................................................................................8, 9

*Shaw v. Quincy Mining Co.*,
    145 U.S. 444 (1892) .............................................................................................10

*VE Holding Corp. v. Johnson Gas Appliance Co.*
    917 F.2d 1574 (Fed. Cir. 1990) ..........................................................................11

*Virgin Wireless Inc. v. Virgin Enters. Ltd.*,
    201 F. Supp. 2d 294 (D. Del. 2002) ...................................................................13

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .................................................................................. Passim

*Zazzali v. Swenson*,
    852 F. Supp. 2d 438 (D. Del. 2012) ...................................................................12

**RULES AND STATUTES**

28 U.S.C. § 1391 ...............................................................................................2, 11, 12

28 U.S.C. § 1400(b) ......................................................................................2, 10, 11, 12

28 U.S.C. § 1404(a) .................................................................................................12

28 U.S.C. § 1406(a) .................................................................................................12

Fed. R. Civ. P. 4(k) ................................................................................................1, 5

Fed. R. Civ. P. 14 .......................................................................................................5

Fed. R. Civ. P. 19 .......................................................................................................5

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action for alleged patent infringement. In a complaint filed January 14, 2014, Plaintiff Kraft Foods Group Brands LLC ("Kraft") alleges that Defendants TC Heartland, LLC ("TC Heartland") and Heartland Packaging Corporation ("Heartland Packaging") have infringed and are infringing three Kraft patents by making, using, offering to sell, and selling certain liquid water enhancer products. (D.I. 1). On May 1, 2014, the United States Postal Service delivered to TC Heartland and Heartland Packaging in Carmel, Indiana, copies of Kraft's complaint in this action and summonses commanding TC Heartland and Heartland Packaging to appear in this Court or else suffer entry of judgment by default. (D.I. 5-1).

In view of recent Supreme Court decisions which limit specific jurisdiction to causes of action that arise from "an 'activity or an occurrence that takes place in the forum State,'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)), Defendants now move for an Order dismissing Kraft's complaint insofar as it seeks relief for alleged acts of patent infringement that have occurred or are occurring outside of Delaware, which is to say, more than 98% of the making, using, selling, or offering acts which the complaint characterizes as patent infringement. Defendants also move for an Order transferring the venue of this action to the Southern District of Indiana, which alone has personal jurisdiction to adjudicate the entire controversy between the parties. This is Heartland's opening brief in support of its motion.

## SUMMARY OF THE ARGUMENT

Under Federal Rule of Civil Procedure 4(k)(1)(A), the mailing of summonses to Defendants in Indiana established personal jurisdiction over them only if, and to the extent that, the Defendants were "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Defendants are both Indiana corporate entities; they do not

have any ties, connections, or relations with Delaware as could justify requiring Defendants to appear and defend the lawfulness of manufacturing and other activities that have no substantial connection with Delaware. Transfer of venue is warranted, for only in Indiana are Defendants subject to personal jurisdiction with respect to the entirety of the controversy that Kraft's complaint alleges. Transfer of venue to Indiana also accords with historical norms in patent infringement actions. *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228–29 (1957) (holding that the special patent venue statute, 28 U.S.C. § 1400(b), takes precedence over the general venue statute, 28 U.S.C. § 1391).

## STATEMENT OF FACTS

### A.    Kraft and Its Claims Against Heartland

Kraft is a Delaware corporation with its principal place of business in Northfield, Illinois. Kraft's complaint alleges that Defendants are infringing three United States patents owned by Kraft: (1) U.S. Patent No. 8,293,299 entitled "Containers and Methods for Dispensing Multiple Doses of a Concentrated Liquid, and Shelf Stable Concentrated Liquids"; (2) U.S. Patent No. 8,511,472 entitled "Containers Having Perforated Shrink Wrap Sleeves"; and (3) U.S. Patent No. 8,603,557 entitled "Containers and Methods for Dispensing Multiple Doses of a Concentrated Liquid and Shelf Stable Concentrated Liquids."

Kraft alleges that Defendants infringe each of the three patents by "manufacturing, using, offering to sell and selling products that infringe . . . including, but not limited to, products under the Refreshe label, including, *inter alia*, Refreshe Fruit Punch Drink Enhancer." (D.I. 1 at ¶¶ 11, 15, 19). TC Heartland manufactures and bottles REFRESHE® fruit punch drink enhancer in Indiana for Safeway Inc. of Pleasanton, California. (Declaration of Teodor Gelov, sworn to June 23, 2014 ("Gelov Decl.") ¶ 22). Kraft seeks monetary and injunctive relief for Heartland's alleged infringements throughout the nation.

**B.      Defendants' Lack of Substantial Ties, Connections, or Relations With Delaware**

TC Heartland is a limited liability company organized and existing under the laws of the State of Indiana, having its principal place of business in Carmel, Indiana, a suburb of Indianapolis (Gelov Decl. ¶ 3). TC Heartland develops, tests, and manufactures the subject products in Carmel and at a facility located in Indianapolis (*id.*). TC Heartland's business includes the manufacture and sale of zero calorie sweeteners, liquid water enhancers, and certain other food products, including the REFRESHE® product that TC Heartland makes and bottles for Safeway (Gelov Decl. ¶ 2, 22).[1]

TC Heartland is not registered to do business in Delaware and has no office, property, employees, agents, distributors, bank accounts, or other local presence in Delaware (Gelov Decl. ¶ 4–9, 12, 14, 17). TC Heartland has no Delaware telephone number or mailing address (Gelov Decl. ¶ 15–16). TC Heartland does not engage in any advertising or marketing activities in Delaware and does not call on any accounts in Delaware to solicit sales (Gelov Decl. ¶ 10–11, 17). TC Heartland has not entered into any supply contracts in Delaware and does not have any supply contracts governed by Delaware law (Gelov Decl. ¶ 13, 18).

TC Heartland has contracts with two national accounts (both headquartered outside of Delaware) which, from time to time, place orders with TC Heartland in Indiana and specify that Heartland should ship purchased water enhancer products to distribution facilities that the accounts maintain in Delaware (Gelov Decl. ¶ 19). All such shipments are made by placing the purchased product with a common carrier that picks up the product at TC Heartland's manufacturing facility in Indianapolis (*id.*). In the year ending December 31, 2013, more than

---

[1]    Heartland Packaging is an inactive Indiana corporation that ceased business years ago and never sold liquid water enhancers of any kind (Gelov Decl. ¶ 2). It is not mentioned further.

98% of TC Heartland's sales of liquid water enhancer products were shipped to destinations located outside of Delaware (Gelov Decl. ¶ 20). In the year ending December 31, 2013, 100% of TC Heartland's sales of liquid water enhancer products were made under contracts entered into outside of Delaware, under non-Delaware law (Gelov Decl. ¶ 21).

In making liquid water enhancer products in Indiana, and in marketing and selling those products to persons outside of Delaware (and more than 98% of the time, also shipping the sold products to non-Delaware destinations), TC Heartland has not engaged in activities in Delaware with any intent to invoke or benefit from the protection of Delaware law with respect to those activities (Gelov Decl. ¶ 23).

## ARGUMENT

### I.  THE COURT LACKS PERSONAL JURISDICTION OVER KRAFT'S CLAIMS ARISING FROM NON-DELAWARE ACTIVITIES OR OCCURRENCES.

Kraft alleges that TC Heartland has infringed Kraft patents by "manufacturing, using, offering to sell and selling" certain "products" including REFRESHE® fruit punch drink enhancer that TC Heartland manufactures and bottles in Indianapolis, Indiana for Safeway Inc. of Pleasanton, California. (D.I. 1 ¶¶ 11, 15, 19). On its face, Kraft's complaint asserts claims that arise from activities or occurrences that have no connection with Delaware whatsoever; and this reality is rendered no less so by the happenstance that *some* of the claims asserted by Kraft might arise from activities or occurrences in Delaware and *might arguably* be ones that TC Heartland could lawfully be required to defend in Delaware.

"Our case law clearly states that each act of patent infringement gives rise to a separate cause of action." *Hazelquist v. Guchie Moochie Tackle Co.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006). *Accord E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1362 (Fed. Cir. 2008) ("we have held that each act of infringement gives rise to a

separate cause of action."). *See also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) ("Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs.").

So here, the complaint characterizes as alleged patent infringement, and seeks relief with respect to, "manufacturing" activities occurring in Indiana and "selling" and "offering" and "using" activities occurring in California and other non-Delaware locations. Under Federal Rule of Civil Procedure 4(k), the Court lacks personal jurisdiction to adjudicate Kraft's claims arising from these non-Delaware activities. *Cf. Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1227 (D. Del. 1990) (Latchum, J.) (where Delaware activity did not "set in motion" an alleged infringement occurring outside of Delaware, personal jurisdiction was lacking to adjudicate infringement claims arising from non-Delaware activity even though personal jurisdiction did exist with respect to the defendant's alleged in-state infringements).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). There is no federal statute that authorizes service of originating process in patent cases, so Federal Rule of Civil Procedure 4(k)(1)(C) does not apply. TC Heartland is subject to personal jurisdiction in Indiana, so Federal Rule of Civil Procedure 4(k)(2) does not apply. TC Heartland is not a party "joined under Rule 14 and 19," so Federal Rule of Civil Procedure 4(k)(1)(B) does not apply. That leaves, as the sole basis for personal jurisdiction in this case, Federal Rule of Civil Procedure 4(k)(1)(A), which states that service of a summons "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

As set forth below, a quartet of recent Supreme Court decisions makes clear that a Delaware state court could not rightly exercise personal jurisdiction over the vast bulk of the activity that Kraft's complaint challenges as alleged patent infringement.

In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), the Supreme Court held that the State of North Carolina lacked personal jurisdiction to hear a claim against a non-resident tire manufacturer arising from a tire blow-out that occurred outside the state, where the defendant manufacturer's connections with North Carolina were not such as to make it "at home" in that state. *Id.* at 2857. This was so, the Court held, even though the defendant corporation allegedly made regular sales of tires in North Carolina. *Id.* at 2857 n.6. The Court stated: "even regularly occurring sales of a product in a State do not justify the exercise of personal jurisdiction over a claim unrelated to those sales." *Id.*

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), the Supreme Court held that the State of New Jersey lacked personal jurisdiction to hear a claim against a non-resident manufacturer arising from the use of an allegedly defective machine made by the defendant, where the defendant manufacturer had not "engage[d] in any activities in New Jersey that reveal[ed] an intent to invoke or benefit from the protection of its laws." *Id.* at 2791 (plurality opinion). The defendant in *Nicastro* "had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State." *Id.* at 2790. Six Justices held that the facts were insufficient to support a conclusion that the defendant manufacturer had "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *Id.* at 2787 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *id.* at 2792 (Breyer, J., concurring in the judgment). All of the Justices agreed that "specific"

personal jurisdiction is limited to claims that arise from "the defendant's activities touching on the State." *Id*. at 2788; *id*. at 2797–98 (Ginsburg, J., dissenting).

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Supreme Court held that a federal district court in California lacked personal jurisdiction to hear claims against a non-resident vehicle manufacturer arising from allegedly wrongful acts that occurred outside the state, where the defendant's connections with California were not such as to make it "at home" in that state. *Id*. at 751 (quoting *Goodyear*, 131 S. Ct. at 2851). This was so, the Court held, even if the defendant's U.S. subsidiary, Mercedes-Benz USA, LLC ("MBUSA"), were deemed to be "at home in California" and even if the U.S. subsidiary's California contacts were deemed "imputable to" the defendant. *Id*. at 760. The defendant corporation was not itself "at home" in California and thus could not be sued there on claims "having nothing to do with anything that occurred or had its principal impact in California." *Id*. at 762.

Finally, in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court held that a federal district court in Nevada lacked personal jurisdiction to hear a claim arising from an allegedly wrongful detention of the plaintiffs' property that occurred in Georgia, the effects of which detention were alleged to have adversely affected the plaintiffs in Nevada. "For a State to exercise jurisdiction consistent with due process," the *Walden* Court held, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Id*. at 1121. "'Specific' or 'case-linked' jurisdiction 'depends on an 'affiliatio[n] between the forum and the underlying controversy' (*i.e.*, an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')." *Id*. at 1121 n.6 (quoting *Goodyear*, 131 S. Ct. at 2851). The alleged tort committed by the *Walden* defendant was held, as a matter of law, to have created no such "substantial connection" or "affiliation" between himself and Nevada.

With regard to the plaintiffs' contention that the *Walden* defendant's allegedly wrongful conduct had caused them injury in Nevada, the Court stated: "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id*. at 1125. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. The wrongful detention of the *Walden* plaintiffs' property did not establish a substantial or meaningful connection with Nevada, the Court reasoned, merely because the plaintiffs chose to be in Nevada when they desired to use the allegedly wrongfully seized property. *Id*. The plaintiffs would have experienced the same alleged injury in "California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had." *Id*. This point distinguished the *Walden* defendant's conduct from that of the defendants in *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770 (1984), and *Calder v. Jones*, 465 U.S. 783 (1984), where libelous articles were published in the forum States and affected the plaintiffs' reputations in the minds of readers of the publications. In the case of libel, the Court reasoned, the tort actually occurs *in* the forum State by virtue of the injurious effects the publication had on the minds of readers in the forum state. *Walden*, 134 S. Ct. at 1124.

Measured against the legal standards articulated and applied in *Walden, Bauman*, *Nicastro*, and *Goodyear*, not to mention the Supreme Court's seminal decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977), it is clear that the Court lacks personal jurisdiction to hear virtually all, if not all, of the claims that Kraft has asserted in this action. Under *Nicastro*, it is highly doubtful whether TC Heartland can rightly be deemed to have "purposefully avail[ed] itself of the privilege of conducting activities within" Delaware (131 S. Ct. at 2787–88 (quoting

*Hanson*, 357 U.S. at 253)), even with respect to the liquid water enhancer products that certain national, non-Delaware accounts have occasionally instructed TC Heartland to ship to Delaware destinations under the terms of master supply contracts solicited and entered into between TC Heartland and those accounts outside of Delaware, under non-Delaware law.

But even assuming, for purposes of argument, that the Court had personal jurisdiction to hear Kraft's claims arising from use or consumption of TC Heartland-manufactured products in Delaware, the Supreme Court's recent decisions in *Walden*, *Bauman*, and *Goodyear* make abundantly clear that the Court lacks personal jurisdiction to hear Kraft's claims arising from TC Heartland's manufacturing, using, offering, or selling liquid water enhancer products *outside* of Delaware. *Cf. Sears*, 752 F. Supp. at 1227–30 (alleged in-State infringement did not establish personal jurisdiction to hear claim arising from alleged infringement arising from activity outside of Delaware, even though same alleged intellectual property was being asserted).

Like the defendants in *Goodyear* and *Bauman*, TC Heartland has no physical or other presence in Delaware as could justify TC Heartland being deemed to be "at home" in Delaware, *Bauman*, 134 S. Ct. at 762, such that TC Heartland could be rightly sued here on claims arising from the allegedly wrongful manufacture of TC Heartland products in Indiana or the allegedly wrongful sale, offering for sale, or use of those products in, say, Alaska.

Like the defendant in *Walden*, TC Heartland's alleged infringement of Kraft patents outside of Delaware (*e.g.,* by selling products made in Indiana to customers in California or Arkansas) does not establish any substantial connection between TC Heartland and Delaware. The Plaintiff's status as a Delaware corporation has no more jurisdictional significance here than did the plaintiff's Nevada residence in *Walden* or the Delaware residence of the shareholder's derivative suit plaintiff in *Shaffer*, 433 U.S. at 213–17 (defendant's status as a director of a

Delaware corporation was insufficient to justify personal jurisdiction over an alleged breach of fiduciary duty committed by him in Arizona).

In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 n.21 (Fed. Cir. 1994), the court suggested in dictum that a non-resident defendant could be required to defend claims arising from alleged acts of patent infringement occurring outside the forum state, without regard for whether the defendant was "at home" in the forum, *Bauman*, 134 S. Ct. at 762, and without regard for whether the acts were "subject to the [forum] State's regulation." *Walden*, 134 S. Ct. at 1121 n.6 (quoting *Goodyear*, 131 S. Ct. at 2851). As support for this assertion, the *Beverly Hills Fan* decision cited the same two libel cases, *Keeton* and *Calder*, that the *Walden* court distinguished en route to rejecting an effect-based theory of personal jurisdiction analogous to the one the *Beverly Hills Fan* decision suggested in dictum. The *Walden* decision effectively overrules this aspect of *Beverly Hills Fan*,[2] and returns the law to the state it was in when Judge Latchum decided the *Sears* case, 752 F. Supp. at 1227–30.

## II.  THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF INDIANA.

28 U.S.C. § l400(b) provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

As used in 28 U.S.C. § 1400(b), the term "resides" has long been held to refer to a person's *domicile,* which in the case of a corporation "mean[s] the state of incorporation only." *Fourco,* 353 U.S. at 226 (citing *Shaw* v. *Quincy Mining Co.,* 145 U.S. 444 (1892)). *See Brunette Mach. Works, Ltd.* v. *Kockum Indus., Inc.,* 406 U.S. 706, 707 n.2 (1972) ("the residence of a

---

[2]   It is probably not a coincidence that, within a short time following the issuance of the *Beverly Hills Fan* decision, patent plaintiffs began flocking to the Eastern District of Texas.

corporation for purposes of [§] 1400(b) is its place of incorporation"). In *Fourco*, the Supreme Court expressly held: "28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions, and . . . it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." 353 U.S. at 229.

In *VE Holding Corp.* v. *Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), the Federal Circuit held that a 1988 amendment of § 1391(c)[3] had purportedly overruled the *Fourco* decision and, without comment, had abruptly rendered § 1400(b) a dead letter insofar as corporate defendants are concerned; however, in 2011, Congress repealed the text of § 1391(c) that the *VE Holding* court had interpreted. As amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, § 202, Pub. L. No. 112-63, 125 Stat. 758, 763 (2011), 28 U.S.C. § 1391(c) was completely rewritten and now provides, insofar as is relevant here, that: "For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction *with respect to the civil action in question* . . . ." 28 U.S.C. § 1391(c)(2) (emphasis added). The italicized language was newly added in 2011, and effectively restores § 1400(b) to its traditional role.

As noted above, TC Heartland clearly *is not* subject to the Court's personal jurisdiction "with respect to *the civil action* in question." 28 U.S.C. § 1391(c)(2) (emphasis added). "The civil action" here is defined by a complaint which, as to more than 98% of the allegedly infringing activity, asserts claims that arise from transactions and events that have no connection

---

[3]   At the time of the *VE Holding* decision, then-existing 28 U.S.C. § 1391(c) (1988) had provided in part: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

to Delaware whatsoever. Current 28 U.S.C. § 1391(c)(2) prescribes a definition of "resides" that, wholly aside from the history of § 1400(b) and the Supreme Court's reasoning in *Fourco*, is not met here even assuming that amended § 1391(c)(2) were rightly interpreted as informing the meaning of "resides" in § 1400(b), which it is not.

28 U.S.C. § 1406(a) provides that, when a case is filed in the "wrong division or district," the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1404(a) further provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

Section 1404(a) is "intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 447 (D. Del. 2012) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)). The Court must analyze "all relevant factors," and is not bound by a "definitive formula or list." *Zazzali*, 852 F. Supp. 2d at 448.

Transfer to the Southern District of Indiana is warranted, as only there can the entire controversy between the parties be adjudicated. *Cf. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co*, 342 U.S. 180, 183 (1952) (second filed action in Illinois permitted to proceed, in part because Delaware court lacked personal jurisdiction over a part of the controversy). TC Heartland and its defunct affiliate, Heartland Packaging, are both domiciled in Indiana, meaning that the district court in Indianapolis has general personal jurisdiction over both Defendants and can adjudicate the entirety of the civil action commenced by Kraft's complaint. Transfer of this action to the Southern District also comports with historical norms and the clear intent of

Congress reflected in the special patent venue statute, 28 U.S.C. § 1400(b), which has long been interpreted by the Supreme Court as limiting the venue of actions for patent infringement.

In addition to being the one place where the entire controversy between the parties may be adjudicated, the Southern District of Indiana is a logistically convenient forum for both parties. Not only is the Southern District of Indiana the location of TC Heartland's principal place of business and the principal place of the events giving rise to this suit and related evidence, it is significantly closer than Delaware to Kraft's own principal place of business in Northfield, Illinois, which is roughly a three-hour and fifteen-minute drive from Indianapolis. Kraft also maintains a manufacturing facility in Indiana (Gelov Decl. ¶ 26). Coca Cola Company also makes liquid water enhancers in Indiana, *id*. ¶ 27, and is likely to employ individuals who may be called as third-party witnesses knowledgeable as to the state of the liquid water enhancer art at relevant times.

Given the logistical advantages of litigating this matter in Indiana and the lack of connection between approximately 98% of the acts at issue and Delaware, it would be a waste of judicial resources for this Court to stretch to assert personal jurisdiction over Kraft's claims arising from the approximately 2% of TC Heartland's liquid water enhancer sales volume that non-Delaware parties have purchased and instructed be shipped to Delaware destinations, when transfer to the more convenient Indiana forum would avoid any questions of personal jurisdiction and permit certain adjudication of the entire controversy stated in Kraft's complaint. *Cf. A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*, 611 F.2d 997, 1001 (5th Cir. 1980) (mandating transfer from district court with jurisdiction over only one of two claims: "since only the Court of Claims can exercise jurisdiction over the entire case, we deem it in the interests of justice to transfer both of the claims . . . to the Court of Claims"); *Virgin Wireless*

*Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del. 2002) (dismissing case against one defendant for lack of personal jurisdiction and transferring remaining claims to forum of a related case in which that defendant had submitted to jurisdiction).

## CONCLUSION

For the reasons stated above, Heartland submits that the Court should issue an Order (i) dismissing Kraft's complaint insofar as it seeks relief in this Court for acts of manufacturing, using, offering for sale, or selling of TC Heartland liquid water enhancer products that have occurred or are occurring outside of Delaware; and (ii) transferring venue of this action to the Southern District of Indiana pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
tcurry@mnat.com
  *Attorneys for TC Heartland, LLC d/b/a*
  *Heartland Food Products Group and*
  *Heartland Packaging Corporation*

OF COUNSEL:

James W. Dabney
Richard M. Koehl
Emma L. Baratta
FRIED FRANK
HARRIS SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004-1980
(212) 859-8000

June 23, 2014
8331344

- 14 -