IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KRAFT FOODS GROUP BRANDS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-028 (LPS)(CJB) |
| | ) | |
| TC HEARTLAND, LLC d/b/a HEARTLAND | ) | |
| FOOD PRODUCTS GROUP and HEART- | ) | |
| LAND PACKAGING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF HEARTLAND'S MOTION TO
DISMISS CLAIMS FOR LACK OF PERSONAL JURISDICTION AND
FOR TRANSFER OF VENUE TO THE SOUTHERN DISTRICT OF INDIANA**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
tcurry@mnat.com
*Attorneys for TC Heartland, LLC d/b/a
Heartland Food Products Group and
Heartland Packaging Corporation*

OF COUNSEL:

James W. Dabney
Richard M. Koehl
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

October 14, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................3

     I.       VENUE IS IMPROPER IN THIS DISTRICT ......................................................3

     II.      PERSONAL JURISDICTION OVER THIS ACTION IS LACKING .................................................................................................................5

         A.    General Jurisdiction Is Lacking ................................................................5

         B.    Specific Jurisdiction Is Lacking................................................................6

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.,*
   689 F.3d 1358 (Fed. Cir. 2012)...............................................................................2, 8-9

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the West. Dist. of Tex.,*
   134 S. Ct. 568 (2013)..............................................................................................2, 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
   21 F.3d 1558 (Fed. Cir. 1994)......................................................................................9

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,*
   406 U.S. 706 (1972).............................................................................................. 1, 4-5

*D. Ginsberg & Sons, Inc. v. Popkin,*
   285 U.S. 204 (1932).....................................................................................................5

*Daimler AG v. Bauman,*
   134 S. Ct. 746 (2014)............................................................................................ 5-6, 9

*Fourco Glass Co. v. Transmirra Prods. Corp.,*
   353 U.S. 222 (1957)............................................................................................... 1, 3-5

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   131 S. Ct. 2846 (2011)........................................................................................ 3, 6-7, 9

*Hanson v. Denckla,*
   357 U.S. 235 (1958).....................................................................................................7

*Hazelquist v. Guchi Moochie Tackle Co.,*
   437 F.3d 1178 (Fed. Cir. 2006)....................................................................................6

*Intellectual Ventures I LLC v. Ricoh Co. Ltd.,*
   13-474-SLR, 2014 WL 4748703 (D. Del. Sept. 12, 2014)......................................5

*J. McIntyre Machinery, Ltd. v. Nicastro,*
   131 S. Ct. 2780 (2011)........................................................................................... 8-10

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984).....................................................................................................9

*LSI Indus. v. Hubbell Lighting, Inc.,*
   232 F.3d 1369 (Fed. Cir. 2000)....................................................................................5

*Schnell v. Peter Eckrich & Sons, Inc.*,
    365 U.S. 260 (1961) ........................................................................................................1, 5

*Sears, Roebuck & Co. v. Sears*,
    752 F. Supp. 1223 (D. Del. 1990) ...........................................................................................8

*Stonite Prods. Co. v. Melvin Lloyd Co*,
    315 U.S. 561 (1942) ........................................................................................................1, 5

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ........................................................................................ 1-4

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................... 3, 6-7, 9

**Rules and Statutes**

28 U.S.C. § 1391 ........................................................................................................... 1-4

28 U.S.C. § 1400 ................................................................................................... *passim*

28 U.S.C. § 1406 .............................................................................................................2, 5

## INTRODUCTION

The special patent venue statute, 28 U.S.C. § 1400(b), has long been held to be "the sole and exclusive provision controlling venue in patent infringement actions." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). Section 1400(b) traces to the Act of March 3, 1897, ch. 395, 29 Stat. 695, 695–96 (the "1897 Act"). The 1897 Act was passed to abrogate the very venue rule that Kraft now advances, namely, one that permits patent infringement actions to be brought "in any district in which a defendant could be served." *Schnell*, 365 U.S. at 262. *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 712–13 (1972) (describing history and purpose of 1897 Act); *Stonite Prods. Co. v. Melvin Lloyd Co*, 315 U.S. 561, 563–66 (1942) (same). Faced with the very venue argument Kraft makes now, the Supreme Court in *Fourco* held that § 1400(b) "is not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." 353 U.S. at 229. A contrary holding would have completely defeated the purpose of § 1400(b) and contravened basic canons of statutory construction. *Id*. at 228–29.

Under longstanding precedent, "the residence of a corporation for purposes of § 1400(b) is its place of incorporation." *Brunette*, 406 U.S. at 707 n.2. Section 1400(b) thus limits venue in patent infringement actions to districts (i) located in the state where a defendant is incorporated, or (ii) in which the defendant has "committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here it is undisputed that Heartland is not incorporated in Delaware and has no regular or established place of business in Delaware.

In its one-page discussion of § 1400(b), Kraft does not even argue that § 1400(b) permits venue of this action to be laid in Delaware. Rather, Kraft asserts (Kraft Br. at 13) that venue is proper in this district based on a combination of (i) non-existent language that formerly existed in a repealed, 1988 version of 28 U.S.C. § 1391; and (ii) *VE Holding Corp. v. Johnson Gas*

*Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), a 1990 decision which interpreted the non-existent language in former 28 U.S.C. § 1391 (1988) which Kraft erroneously cites.

In fact, and contrary to Kraft's suggestion, the text of *current* 28 U.S.C. § 1391 is expressly made subject to special venue statutes like § 1400(b). As amended in 2011, § 1391 now begins with a first section (a) headed "Applicability of Section," the text of which states, "*Except as otherwise provided by law,* -- (1) this section shall govern the venue of all civil actions brought in district courts of the United States . . . ." (emphasis added). The current text of § 1391 thus includes the very exception for special venue statutes whose omission from the 1988 version of the statute was the linchpin of the *VE Holding* decision. *See* 917 F.2d at 1579 ("Congress could readily have added 'except for section 1400(b),' if that exception, which we can presume was well known to the Congress, was intended to be maintained."). The Supreme Court has interpreted amended § 1391 in precisely this way. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for the West. Dist. of Tex.,* 134 S. Ct. 568, 577 n.2 (2013) ("Section 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply. Cf., *e.g.*, § 1400 (identifying proper venue for copyright and patent suits).")).

On its face and as interpreted in *Atlantic Marine*, current § 1391 plainly does not govern this case because a "more specific venue provision" clearly *does* apply here, namely, § 1400(b). Because venue is clearly improper under § 1400(b) and amended § 1391 is inapplicable, it is unnecessary for the court to reach the question of personal jurisdiction. Venue should be transferred to the Southern District of Indiana under 28 U.S.C. § 1406. (Part I, *infra*).

Should the Court nonetheless choose to reach the question of personal jurisdiction, the record is bereft of evidence that Heartland "purposefully directs activities at the forum's residents," *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012), even

with respect to liquid water enhancer products that Heartland's non-Delaware based Customer occasionally instructs Heartland to ship to the Customer's distribution center in Delaware. As to the vast majority of the alleged infringements for which Kraft seeks relief (*i.e.*, acts of making, selling, offering to sell, or using liquid water enhancer products *outside* of Delaware), Kraft simply ignores the requirement that specific jurisdiction is limited to claims that arise from "an 'activity or an occurrence that takes place in the forum State'." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Kraft has identified not even a theory on which, consistently with *Walden*, the court could rightly exercise personal jurisdiction to hear Kraft's claims arising from use of Heartland products in, say, California. (Part II, *infra*).

## ARGUMENT

## I. VENUE IS IMPROPER IN THIS DISTRICT

Citing what it calls "the plain language" of 28 U.S.C. § 1391, Kraft asserts that "[a]s a result of *VE Holding*, 28 U.S.C. §1391(c), not 28 U.S.C. §1400(b), controls the venue analysis in a patent infringement context." Kraft Br. at 13. Kraft is wrong. The so-called "plain language" cited by Kraft *was repealed* in 2011. The reasoning of *VE Holding*, even assuming that decision was correctly decided in 1990, actually supports Heartland's position on this motion, not Kraft's.

As previously noted (*see* Heartland Br. at 11), in *VE Holding*, the Federal Circuit held that a 1988 amendment of 28 U.S.C. § 1391 had purportedly overruled *Fourco* and predecessor cases and permitted patent infringement suits to be brought in any district where venue was proper under § 1391, even if § 1400(b) would otherwise bar venue. In reaching this result, *VE Holding* noted that the 1988 text of § 1391 did not contain any exception for special venue statutes like § 1400(b) and, to the contrary, included the broad language, "[f]or purposes of venue under this chapter . . . ." 917 F.2d at 1579, *quoted in* Kraft Br. at 13.

In 2011, Congress amended § 1391 in three ways relevant to this motion. First, Congress repealed the language, "[f]or purposes of venue under this chapter," on which the *VE Holding* decision had relied. Second, and reinforcing its repeal of the "[f]or purposes of venue under this chapter" language, Congress added a new § 1391(a) headed "Applicability of Section" whose text begins, "*Except as otherwise provided by law* – (1) this section shall govern the venue of all civil actions brought in district courts of the United States . . . ." This second change added the very type of exception whose absence, in 1988, was a second ground on which *VE Holding* had relied. Third, and even as to civil actions governed by § 1391 (which the present action plainly is not, *see Atl. Marine*, 134 S. Ct. at 577 n.2), the definition of "residency" in § 1391 was amended to require that a defendant be subject to the court's personal jurisdiction "with respect to the civil action in question," not merely with respect to some part of the action as Kraft would have it.

As thus amended in 2011, 28 U.S.C. § 1391 excepts § 1400(b) from its reach and thus restores the latter statute as "a special and separate venue statute" which "place[s] patent infringement cases in a class by themselves, outside the scope of general venue legislation." *Brunette*, 406 U.S. at 713. *Atlantic Marine* leaves no doubt that § 1400(b) rather than § 1391 applies to patent cases: "Section 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply. Cf., *e.g.*, § 1400 (identifying proper venue for copyright and patent suits)." *Atl. Marine*, 134 S. Ct. at 577 n.2.

Especially in view of the new "except as otherwise provided by law" preamble, a general statute like 28 U.S.C. § 1391 is not rightly interpreted as nullifying and defeating the purpose of a more specific venue statute like § 1400(b). *Fourco* applied the canon of statutory construction that applies here: "However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment . . . .

Specific terms prevail over the general in the same or another statute which otherwise might be controlling." 353 U.S. at 228-29 (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)).

The "residence of a corporation for purposes of § 1400(b) is its place of incorporation." *Brunette*, 406 U.S. at 707 n.2. Because Heartland is not incorporated in Delaware and does not have an established place of business in Delaware, § 1400(b) precludes the laying of venue in this district, as it did in *Fourco*, *Schnell*, and *Stonite*. Accordingly, the Court should transfer this action pursuant to 28 U.S.C. § 1406(a) to the Southern District of Indiana. Section 1406(a) provides that, when a case is filed in the "wrong division or district," the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Under § 1400(b), Indiana, where Heartland is incorporated and has its principal place of business, is a proper forum and the only forum which may hear the entire dispute.

## II.      PERSONAL JURISDICTION OVER THIS ACTION IS LACKING

### A.      General Jurisdiction Is Lacking

Citing *LSI Indus. v. Hubbell Lighting*, *Inc.*, 232 F.3d 1369 (Fed. Cir. 2000), and other pre-2014 precedents, Kraft argues that Heartland is "subject to personal jurisdiction in this forum because its contacts with Delaware are 'continuous and systematic.'" (Kraft Br. at 11). But *LSI* and the other precedents cited by Kraft are outdated. Under the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), "the inquiry" for purposes of general jurisdiction "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id*. at 761. *Accord Intellectual Ventures I LLC v. Ricoh Co. Ltd.*, 13-474-SLR, 2014 WL 4748703 at *3

(D. Del. Sept. 12, 2014) (noting that, in *Daimler*, the Supreme Court "rejected as 'unacceptably grasping' an approach to finding jurisdiction wherein a corporation merely 'engages in a substantial, continuous, and systematic course of business [in the forum state]'").

Here it is undisputed that Heartland is an Indiana corporation and has no office, property, employees, agents, distributors, bank accounts, or other local presence in Delaware. By no stretch can Heartland be deemed "at home" in Delaware under *Daimler*. Kraft's assertion of general personal jurisdiction is meritless.

### B. Specific Jurisdiction Is Lacking

With regard to the issue of whether the Court has specific jurisdiction to hear this action, Kraft's claims fall into two categories: (i) alleged infringements committed by Heartland or third parties *outside* of Delaware; and (ii) alleged infringements committed by Heartland or third parties inside Delaware. These categories of claims must be separately analyzed, for "each act of patent infringement gives rise to a separate cause of action," *Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006), and specific personal jurisdiction is limited to claims that arise from an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden*, 134 S. Ct. at 1121 n.6 (quoting *Goodyear*, 131 S. Ct. at 2851).

Insofar as Kraft seeks relief with respect to acts of making, using, selling, or offering to sell liquid water enhancer (LWE) products *outside* of Delaware, Kraft's opposition presents no basis on which the Court could rightly exercise specific personal jurisdiction. To the extent that Kraft asserts that Heartland infringed Kraft patents by *making* LWE products, it is undisputed that all such "making" activity occurred in Indiana. Heartland's *making* of LWE products in *Indiana* can by no stretch be characterized as an "act by which [Heartland] purposefully avail[ed]

itself of the privilege of conducting activities within the forum State [*i.e.,* Delaware], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Insofar as Kraft alleges that Heartland used, offered to sell, or sold LWE products *outside* of Delaware, or that Heartland allegedly induced or contributed to third party use or sale of LWE products *outside* of Delaware (e.g., in Arizona, California, Colorado, Idaho, Illinois, Kansas, Michigan, New York, Wisconsin), such activity also cannot by any stretch be characterized as acts by which Heartland "purposefully avail[ed] itself of the privilege of conducting activities within the forum State [i.e., Delaware], thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253. Sales or consumption of LWE products outside of Delaware is also beyond the Court's personal jurisdiction because it is not an "activity or an occurrence that takes place in the forum State and [that] is therefore subject to the State's regulation." *Walden*, 134 S. Ct. at 1121 n.6 (quoting *Goodyear*, 131 S. Ct. at 2851).

Even as to LWE products that Heartland's non-Delaware Customer purchased by submitting purchase orders to Heartland in Indiana and occasionally instructed be shipped from Heartland's Indiana manufacturing facility to a Customer facility in Delaware,[1] or that non-Delaware retailers may have purchased outside of Delaware and, on their own initiative, brought into Delaware, Heartland's acts are not fairly or rightly characterized as acts by which Heartland "purposefully avail[ed] itself of the privilege of conducting activities within the forum State [i.e., Delaware], thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. There is no evidence, or even any allegation, that Heartland's sales to Customer or any other customer were the result of Heartland soliciting or calling on Customer in Delaware or marketing

---

[1]   While Kraft speaks of "at least 2%" (Kraft Br. at 1, 3) of Heartland's allegedly infringing sales as involving shipments to Delaware, Heartland CEO Teodor Gelov's testimony confirmed that the number is less than 2% (Gelov Decl. ¶ 20, Gelov Dep. at 50). Kraft adduced no evidence that Delaware sales are greater than as averred by Mr. Gelov.

LWE products to Customer in Delaware.  There is no evidence that Heartland has advertised or marketed LWE products in Delaware. Rather, the uncontroverted evidence is that all Heartland shipments of LWE products to Delaware were initiated by Customer, under purchase orders submitted to Heartland in Indiana under a non-Delaware contract made between Heartland and Customer outside of Delaware under non-Delaware law.

Filling a non-Delaware customer's drop shipment orders in Indiana simply does not constitute "purposeful direction toward" Delaware, in the sense of case law applying specific jurisdiction principles. *AFTG-TG*, 689 F.3d at 1361 (shipments initiated by third-parties did not evidence "purposeful direction toward" the forum to which the accused products were shipped). It was Customer, not Heartland, which placed the LWE orders and initiated the shipments to itself from Heartland's facility in Indiana, under the terms of a master contract made and entered into outside of Delaware. Heartland's contacts with Delaware here fall far short of the activity that, in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), all of the Justices agreed did not "reveal an intent to invoke or benefit from the protection of [the forum state's] laws." *Id*. at 2791 (plurality opinion); *id*. at 2793 (Breyer, J. concurring in the judgment and in this point).

But even assuming, for purposes of argument, that Heartland could be required to defend, in Delaware, alleged infringements committed inside Delaware by Customer or other third parties who may have sold or used the accused LWE products in Delaware, it would not follow that the Court could exercise personal jurisdiction with respect to independent acts of making, using, selling, or offering to sell accused LWE products *outside* of Delaware. *Cf. Sears, Roebuck & Co. v. Sears*, 752 F. Supp. 1223, 1230 (D. Del. 1990) (finding no jurisdiction over alleged non-Delaware trademark and trade name infringement, even though there was jurisdiction over related infringement in Delaware).

In asserting the contrary, Kraft relies on dictum in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), which reasoned that a State having jurisdiction to hear infringement claims arising within its borders "has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action." *Id.* at 1568. But under *Walden*, *Nicastro*, and *Goodyear*, the jurisdictional inquiry is not whether a State might have an "interest" in providing "a forum" for a plaintiff's purported claim, but whether a *defendant* has a *liberty* interest that would be invaded by forcing it to defend a claim that does not arise from an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden*, 134 S. Ct. at 1121 n.6 (quoting *Goodyear*, 131 S. Ct. at 2851).

Even before *Daimler* and *Walden*, then-Chief Judge Rader noted that, after *Nicastro*, "*Beverly Hills Fan*, with its unfettered reliance on a 'stream of commerce' theory, is now shaky precedent." *AFTG-TG*, 689 F.3d at 1368 (concurring opinion). The *Beverly Hills Fan* did not ask or answer the question whether all of the defendant's non-forum acts of alleged infringement were "subject to the [forum] State's regulation." *Walden*, 134 S. Ct. at 1121 n.6 (quoting *Goodyear*, 131 S. Ct. at 2851). Instead, *Beverly Hills Fan* merely cited to a libel-specific case, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) (distinguished in *Walden*, as described in Heartland's Op. Br. at 8), and suggested policy reasons for allowing the adjudication of nationwide claims in the forum where some small amount of alleged infringement was deemed to have occurred. *Beverly Hills Fan*, 21 F.3d at 1568 ("other states will thus be spared the burden of providing a forum" and "defendants will be protected from harassment resulting from multiple suits"). Such policy reasons do not meet the jurisdictional standards elucidated by the Supreme Court in *Goodyear*, *Nicastro*, and *Walden*. In *Nicastro*, the New Jersey Supreme Court had given

"significant policy reasons" for a finding of personal jurisdiction, but six Justices nevertheless voted to overturn that decision, with the plurality noting that "the Constitution commands restraint before discarding liberty in the name of expediency." *Nicastro*, 131 S. Ct. at 1791.

Kraft argues that "Heartland's proposed analysis would lead to manifestly absurd results" (Kraft Br. at 10), but 28 U.S.C. § 1400(b) protects against the "absurd result" postulated by Kraft. Kraft asserts that it would be "radical" and "turn the Civil Rules and statutory venue provisions . . . on their head" to require a patentee to "sue the infringer in its home district once" (*id.*), but that result is precisely what the special patent venue statute prescribes.

## CONCLUSION

For all of the reasons set forth above and in Heartland's opening brief, Heartland requests that the Court grant Heartland's Motion and enter its Proposed Order.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
tcurry@mnat.com
*Attorneys for TC Heartland, LLC d/b/a*
*Heartland Food Products Group and*
*Heartland Packaging Corporation*

OF COUNSEL:

James W. Dabney
Richard M. Koehl
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

October 14, 2014
8539237