```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE



KRAFT FOODS GROUP,         )
BRANDS, LLC,               )
                           )
          Plaintiff,       )   C.A. No. 14cv-28-LPS
                           )
v.                         )
                           )
TC HEARTLAND, LLC d/b/a)
HEARTLAND FOOD PRODUCTS)
GROUP,                     )
                           )
-and-                      )
                           )
HEARTLAND PACKAGING        )
CORPORATION,               )
                           )
          Defendants.      )




                    Monday, December 22, 2014
                    1:33 p.m.
                    Courtroom 2B



                    844 King Street
                    Wilmington, Delaware



BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States District Court Judge
```

APPEARANCES:


          RICHARDS, LAYTON & FINGER, PA
          BY:  FREDERICK L. COTTRELL, III, ESQ.

               -and-

          DINSMORE SHOHL, LLP
          BY:  ERIC K. COMBS, ESQ.
          BY:  ROBERT M. ZIMMERMAN, ESQ.

                    Counsel for the Plaintiff


 9
          MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
10        BY:  MARY B. GRAHAM, ESQ.
          BY:  THOMAS J. CURRY, ESQ.
11
                 -and-
12
          HUGHES, HUBBARD & REED, LLP
13        BY:  JAMES W. DABNEY, ESQ.

14               -and-

15        HEARTLAND
          BY:  WILLIAM O'CONNOR, ESQ.
16
                    Counsel for the Defendants
17

18

19

20

21

22

23

24

```
 1              THE COURT:  Before we get started,
 2    let me just say a few things for the record.
 3    First that we're here for oral argument today in
 4    the matter of Kraft Food Group Brands, LLC,
 5    versus TC Heartland, LLC, et al.  It's civil
 6    action number 14-28-LPS here in our court and
 7    we're here for oral argument on a motion to
 8    dismiss filed by the Defendants.  With that
 9    said, why don't we otherwise start by asking
10    counsel for each side, leading with Delaware
11    counsel, to identify themselves for the record
12    and we'll start with counsel for the Plaintiff,
13    Kraft Food Group Brands, LLC.  Mr. Cottrell.
14              MR. COTTRELL:  Yes.  Good
15    afternoon, Your Honor.  Thank you.  Fred
16    Cottrell from Richards Layton for Plaintiff,
17    Kraft Foods.  With me from the Cincinnati, Ohio,
18    firm of Dinsmore Shohl is Eric Combs and Rob
19    Zimmerman.  And Mr. Combs, with Your Honor's
20    permission will present argument for Kraft.
21              THE COURT:  That you.
22              MR. COTTRELL:  Thank you.
23              THE COURT:  All right.  And for
24    counsel for Defendants, starting with Delaware
```

1    counsel, Ms. Graham.

2              MS. GRAHAM:  Good afternoon, Your

3    Honor.  Mary Graham from Morris Nichols on

4    behalf of Defendant, Heartland.  And with me

5    today are Jim Dabney from Hughes Hubbard who

6    will be making the argument.  My associate, Tom

7    Curry and Bill O'Connor who is vice president

8    and general counsel from Heartland.

9              THE COURT:  Okay.

10              MS. GRAHAM:  Thank you.

11              THE COURT:  All right.  Counsel,

12    so the Court has allocated 45 per side for oral

13    argument here.  I've asked my court to keep

14    track of time so I can let you know when you're

15    within five minutes or so, whatever amount of

16    time you want me to let you know within your

17    total allotted time and to the extent we can go

18    over and the court has some additional

19    questions, I won't take that out of your time as

20    well.  Why don't we start first with the side

21    whose motion it is.  That's Defendants.  And Mr.

22    Dabney, I'll call on you to begin.

23              MR. DABNEY:  Thank you, your

24    honor.

```
 1                    THE COURT:  Thank you.

 2                    MR. DABNEY:  James Dabney from

 3      Hughes, Hubbard & Reed for the Defendants.  May

 4      it please the Court, this motion is believed to

 5      be the first in which the Federal Court's

 6      Jurisdiction and Venue Clarification Act of 2011

 7      has been raised as a basis for seeking dismissal

 8      of a suit for improper venue.  This statute was

 9      passed in 2011 and I have copies to hand up to

10      the Court.  I think it might be helpful.  I have

11      copies for opposing counsel.

12                    THE COURT:  Why don't you go head.

13      Thank you.  So we'll identify it for the record,

14      we'll mark this Defendant's Demonstrative

15      Exhibit 1.  Mr. Dabney.

16                    MR. DABNEY:  Yes.  For most of the

17      20th Century Delaware was a principle venue for

18      patent suits because the law specific to patent

19      cases said that venue in patent cases was proper

20      only in two districts, a district where the

21      Defendant was incorporated and most -- many

22      Delaware corporations were incorporated in

23      Delaware, and cases where a Defendant had both

24      committed an act of infringement and maintained
```

1     a regular and established place of business.

2     This venue regime was adopted in 1897,

3     specifically to reverse what had been the

4     practice where a person could be sued for patent

5     infringement anywhere where an allegedly

6     infringing product could be found.  That regime

7     came before the Supreme Court again and again

8     between 1942 and 1957.  And that principle was

9     recognized up until 1990 when the VE Holdings

10    case was decided by the Federal Circuit.  And

11    the VE Holdings case, which bears careful

12    reading, held that a 1988 change to the text of

13    the general venue statute, 28 USC Section 1391,

14    had, whether intentionally or unintentionally,

15    done away with the legal regime that had for

16    almost 90 years prior to that restricted venue

17    and patent cases under 28 USC Section 1400 B.

18    And the reasoning for VE Holdings is important

19    to study because it was based not on anything

20    other than the statutory text.  And what

21    happened in 1988 was that Congress passed a law

22    that said for purposes of venue under this

23    chapter, the residents of a corporation shall be

24    deemed to be wherever it may be subject to

```
 1     personal jurisdiction.  And in VE Holdings, the
 2     Court said, well, if Congress had intended to
 3     maintain 1400 as a special and separate limit on
 4     venue and patent cases, they would have written
 5     into the text except as otherwise provided by
 6     law or except as otherwise provided in section
 7     1400 B.  That's in 917 Federal 2nd at page 1579,
 8     Judge Plager specifically stated that in the VE
 9     Holdings opinion.  Well, exactly as the Federal
10     Circuit had challenged it to do in 1990, 20 --
11                    THE COURT:  Mr. Dabney, before you
12     go on --
13                    MR. DABNEY:  Yes.
14                    THE COURT:  Is the part of -- is
15     1579 that you were citing to --
16                    MR. DABNEY:  The part that I am
17     citing to, Your Honor, is the part which states
18     at the top of the page on the right-hand column,
19     Congress -- it says and starting the third line,
20     Congress could readily have added quote, except
21     for Section 1400 B, comma unquote, if that
22     exception, which we can presume was well known
23     to the Congress was intended to be maintained.
24     This was page 1579, second column starting on
```

```
 1        the second line.  If Your Honor is with me

 2        there.

 3                    THE COURT:  Okay.

 4                    MR. DABNEY:  So this was a crucial

 5        part of the Federal Circuit's reasoning in VE

 6        Holdings, that you had a plain text of a statute

 7        that led to the result that was reached in that

 8        case, which was to go back to the pre 1897

 9        regime and permit lawsuits to be brought in

10        Marshall, Texas, or wherever you might find an

11        ATM machine or just some act of infringement

12        somewhere.  So with that as background, we come

13        to the Federal Court's Jurisdiction of Venue

14        Clarification Act of 2011, which I've handed up

15        to the Court.

16                    THE COURT:  Mr. Dabney, do you

17        happen to have the -- two questions about what

18        you said already.  One is do you happen to have

19        a copy of what Section 1391 looked like at the

20        time of VE Holdings?

21                    MR. DABNEY:  It is quoted in

22        our -- I believe it is quoted either in our

23        reply brief or our opening brief.  Just -- yes,

24        it's quoted in footnote 3 on page 11 of our
```

1    opening brief.

2              THE COURT:  Well, that is what --

3              MR. DABNEY:  I don't have the

4    full -- Your Honor is asking me if I have the

5    full text of 1391.  That I do not believe that

6    I --

7              THE COURT:  Isn't it part of your

8    argument here, I don't want you to simply look

9    at what 1391 C says, I want you to look at the

10   very very beginning of 1391?

11             MR. DABNEY:  Yes, exactly right.

12             THE COURT:  It would be helpful

13   and it's not always easy to find this

14   electronically.  I presume what you're

15   suggesting is the version of section 1391 back

16   at the time VE Holdings was, was decided did not

17   have an introductory phrase in subsection A that

18   began as except as otherwise provided by law.

19             MR. DABNEY:  That's absolutely

20   correct.  It did not.

21             THE COURT:  What did it say?

22             MR. DABNEY:  It didn't have any

23   such subsection at all.

24             THE COURT:  Okay.

```
 1              MR. DABNEY:  It just -- it said --

 2    I don't have it.  But we can certainly provide

 3    that to the Court.  It -- I should have had

 4    that.  I apologize to the Court that I don't

 5    have it.  But that's something that if you have

 6    access to Heine on line, the 1988 version of the

 7    United States code has the text in it.

 8              THE COURT:  Okay.

 9              MR. DABNEY:  And that is where I

10    would go to find it.

11              THE COURT:  Okay.

12              MS. DABNEY:  It's a very

13    convenient place to find that text.

14              THE COURT:  Okay.  And last

15    question about what you said already.  The

16    argument you're making with respect to the venue

17    statue, you said to your knowledge it's the

18    first time it's brought forth in the -- this

19    argument regarding to the venue issue premise

20    had on the change to the venue act in 2011.

21              MR. DABNEY:  That's correct.

22              THE COURT:  So that means as far

23    as you're aware, it's an argument that has never

24    be made to a Federal Court, an argument that has
```

1    never be referenced in a Federal Judicial

2    decision, all correct so far?

3              MR. DABNEY:  Well, except the

4    Atlantic Marine case in the Supreme Court

5    interprets the statute exactly as we would say

6    it should be interpreted.

7              THE COURT:  Though there, the

8    Atlantic Marine case, it's not as though the

9    Supreme Court there -- I think it's a footnote.

10   It's not as if the Supreme Court was presented

11   with this argument as it relates to patent

12   venue, et cetera.

13             MR. DABNEY:  No.

14             THE COURT:  You're making a

15   general statement about it.

16             MR. DABNEY:  It was making a

17   general statement.

18             THE COURT:  And in fact, as to

19   what's said in Atlantic Marine, what's said

20   there could have well have been said in some way

21   at the time prior to VE Holdings, correct, that

22   there is a more specific venue statute that

23   relates to patent cases, section 1300 and then a

24   more general patent venue section 1491, that

1    that statement could have been made even prior

2    to VE Holdings, could it not?

3                    MR. DABNEY:  But not with the same

4    degree of strength.

5                    THE COURT:  Okay.

6                    MR. DABNEY:  The reason that the

7    specific takes precedence over the general was

8    the Supreme Court's reasoning in the Forco case

9    from 1957.  What's significant about the 2011

10   act, coupled with Atlantic Marine, coupled with

11   VE Holdings is that Congress has now said except

12   as otherwise provided by law venue shall be

13   proper here.  And certainly the way Justice

14   Oleto read the statute, without having any ax to

15   grind in that particular case, because that had

16   to do with whether a forum's election clause in

17   a contract rendered venue improper, nonetheless

18   the natural reading of the statute, according to

19   a unanimous Supreme Court of the United States,

20   is that where there's a specific statute like

21   1400 B, this new introduction to 1391 prescribes

22   that the specific venue statute should apply,

23   and that Section 1391 does not apply.

24                    THE COURT:  Then to just run out

1    my question.  You know what I'm asking as to

2    this basic argument you're making, is this venue

3    related argument as to the venue statute in

4    Section 2011, so far as you're aware it hasn't

5    been made to a Federal Court nor has it been

6    commented on in a Federal District court opinion

7    or otherwise?

8              MR. DABNEY:  To my knowledge, Your

9    Honor, I am not aware that this issue has been

10   raised.

11             THE COURT:  Is it an issue that

12   has been commented on by, by -- in publications

13   by -- I think another way of putting it is who

14   came up with the argument?  Is this one that's

15   been banned about in the academic community or

16   is it one that your client, you know, came up

17   with?

18             MR. DABNEY:  Candidly, this is an

19   argument that originated in our office when we

20   had the unusual situation of an Indiana

21   corporation with no Delaware presence being sued

22   in Delaware, so that you had a situation in

23   which 1400 B, if it applied, was case

24   dispositive.  It was the end of the case.  So

14

```
1      I -- when -- I can tell the Court that when the

2      Federal Court's Jurisdiction and Venue

3      Clarification Act of 2011 was passed, it did not

4      register in the IP community to my knowledge.  I

5      don't recall commentary on this law at the time

6      in the context of patent venue, any more than

7      the 1988 amendment.

8              THE COURT:  And I ask that, not

9      because it's certainly -- not because it's the

10     case that an argument like this, if originating

11     in the way it did, couldn't be fully successful,

12     it's just that obviously from the Court's

13     perspective you want to make sure you have a

14     full handle on whether jurists or other

15     published commentators have interacted about the

16     issue and I just want to make sure from your

17     perspective we know that they have not.

18              MR. DABNEY:  Believe me, Your

19     Honor, we researched this and we have not found

20     any commentary that is to the contrary of this.

21     We have not found any judicial opinions contrary

22     to this.  We have not found judicial opinions

23     dealing with this either way.  So as far as we

24     are concerned, this is an issue of first
```

```
 1      impression.
 2                     THE COURT:  Now are you aware -- I
 3      found a couple of District Court cases since
 4      2011 in which District Court's, including Judge
 5      Sleet in a footnote of a case called, first name
 6      is Debacor, is one of the parties, in which
 7      Court and Chief Judge Sleet is one of I think
 8      three that said something like the following; I
 9      recognize talking about the issue of venue,
10      admittedly not this argument, just simply venue
11      general.  Acknowledged that the statute's
12      language had changed with respect to section
13      1391 C.
14                     MR. DABNEY:  Uh-huh.
15                     THE COURT:  And then said
16      something to the effect of that I don't believe
17      that has any impact as to the venue.  Not
18      addressing the particular argument that you're
19      making, but are you aware that there are some
20      courts who have noted the difference or the
21      change in the beginning of section 1391 C, ie,
22      the change from -- the change to what now reads
23      a civil action may be brought in, and have said
24      in their view that that change actually
```

```
 1    broadened the language in the beginning of --

 2    I'm sorry, section 1391 C -- let me step back.

 3    There are a couple of courts, including then

 4    Chief Judge Sleet in this Debacor case I

 5    mentioned and that is 2013 Westlaw 486 638 who

 6    have noted the change at the beginning of

 7    Section 1391 C that is the change that now means

 8    that section beginning for all venue purposes

 9    and have commented that that change actually

10    broadens the language at the beginning of

11    Section 1391 C, to make it even broader than it

12    was at the time of VE Holdings and have

13    suggested that for that reason there's no change

14    in, in the venue calculus with respect to patent

15    cases.  Are you aware of those cases and/or what

16    would -- I presume you would say that that

17    doesn't make a difference because of this change

18    earlier to section 1391 A; is that correct?

19              MR. DABNEY:  Yes.  I would say two

20    things in response to that.  First is exactly

21    right, the preamble which is headed

22    applicability of section, this is on the page

23    125 Stat 763 and the document that I just held

24    up to you, it now begins with subsection
```

```
1        applicability of section and that was not in the

2        statute before.  So we say this statute does not

3        apply where there is a more specific venue

4        statute, as Atlantic Marine stated.  So that's

5        the first point.  The second point is as we have

6        noted, new C 2 includes new language that says

7        personal jurisdiction with respect to the civil

8        action in question.  And it seems to me that the

9        language with respect to the civil action in

10       question can be seen as a narrowing change which

11       makes sense with the patent venue statute,

12       because as we argue in the alternative, I don't

13       think the Court needs to reach this question,

14       but in patent cases for this one, for example,

15       just to take an example, the Plaintiff is suing

16       for patent infringements that were committed in

17       Indiana, alleged infringements that were

18       committed in California, alleged infringements

19       committed outside the State of Delaware.  And

20       even if the Court were to find that following

21       Walmart's orders as far as where their product

22       is going to be sent to, then that falls within

23       purposeful availment within the meaning of the

24       modern quartet of Supreme Court cases.  That
```

1    doesn't get them jurisdiction over the sales in

2    California or the sales in Alaska.  The law of

3    patents does not have anything akin to the

4    single publication rule which some states have

5    adopted to permit the adjudication in a single

6    forum of all wrongful acts committed anywhere in

7    the country in a single forum.  That was the

8    lynch pin of the Keaton case.  That is the lynch

9    pin of the liable cases that have applied the

10   effects tests broadly.  But I would argue that

11   this language in 1391, new 1391 C 2 provides a

12   second and independent basis for holding that

13   whereas in this case a Plaintiff is seeking

14   relief, damages with respect to events such as

15   manufacture in Indiana followed by sale to

16   California, which have no arguable connection to

17   Delaware, that there is no jurisdiction as to

18   the action as a whole.  There is only at most

19   jurisdiction as to the small number of acts that

20   they say constituted purposeful availment of the

21   law of Delaware when Heartland followed its non

22   Delaware customer's shipping instructions.  So

23   as to this, I will say I did read yesterday an

24   opinion of Judge Zatcoff out in Michigan which

```
1      didn't address, he just cited VE Holdings as if

2      nothing had changed.  I don't think that --

3                  THE COURT:  That's one of the

4      three cases.

5                  MR. DABNEY:  Yes.  I did not see

6      in there any discussion of this question of

7      whether the text had made a difference in the VE

8      Holdings analysis.

9                  THE COURT:  Two more questions

10     about, as to Section 1391.  One is you've cited

11     a couple of changes, certainly the change that

12     you mentioned with respect to the addition of

13     the phrase to the civil action in question,

14     cited the addition of language in now section

15     1391 A, and you cited the absence of prior

16     language in the beginning of section 1391 C.  Is

17     there anything in the legislative history of

18     these changes in 2011 that A, shed light on what

19     Congress meant by the changes, and B, says

20     anything about how those changes might impact

21     patent venue?

22                 MR. DABNEY:  Candidly, Your Honor,

23     I have been told that the legislative history

24     points in opposite directions on this.  And I
```

```
 1    should be better prepared on this, but my

 2    position on this would be that the text of the

 3    statute is controlling and that the legislative

 4    history is inconclusive.

 5              THE COURT:  Do you know as to

 6    whether there is any specific reference in the

 7    legislative history to patent cases at all or is

 8    what you are referring to simply things that are

 9    being inclusive as they are really important

10    generally to statutory language?

11              MR. DABNEY:  I've only had it

12    described to me.  I honestly can't answer the

13    question that Your Honor is raising as to the

14    legislative history.

15              THE COURT:  And then with regard

16    to the other District Court cases, I think

17    including the Michigan case, but certainly Chief

18    Judge Sleet's case, to the extent that courts

19    have commented on the changes in the act, one

20    thing they have said is, and forgive me, I don't

21    have it in front of me, but the prior language

22    that began Section 1391 C was what?  It now

23    reads for all venue purposes.

24              MR. DABNEY:  It says for purposes
```

```
 1        of venue under this chapter.

 2                    THE COURT:  Under this chapter.

 3                    MR. DABNEY:  Under this chapter.

 4                    THE COURT:  So what some courts

 5        have pointed out is that the phrase for purposes

 6        of venue under this chapter was found by the VE

 7        Holdings court to cover other venue statutes

 8        including Section 1400, that this new phrase is

 9        even broader for all venue purposes.  And that

10        again, to the extent you were looking simply at

11        this phrase, which certainly VE Holdings Corp

12        was, it would only augment the argument that it

13        was meant to pull in other venue statutes in the

14        chapter like Section 1400.  I understand your

15        argument is, look, but in addition they added

16        what's at the top of section 1391 A.  Is there

17        any additional argument, though?  Would you

18        argue in some way that there's something about

19        the phrase for all venue purposes that's

20        narrower or is your argument simply the addition

21        of section 1391 A's language?

22                    MR. DABNEY:  My argument is

23        two-fold.  The 1391 A addition means that you

24        have to look to see if there's a more specific
```

```
 1      venue statute before coming to apply Section
 2      1391 so we would say if the statute is not
 3      applicable to patent cases per Judge Oleto
 4      footnote in Atlantic Marine and secondly we
 5      would say although for all venue purposes,
 6      there's certainly no narrower and arguably is
 7      broader than for purposes of venue under this
 8      chapter, the new language in C 2 requires that
 9      there be personal jurisdiction with respect to
10      the entire civil action.  And in a case like
11      this, that further requirement is not met.  This
12      language makes sense.  If you have a personal
13      injury case or, you know, you have something
14      where the injury is clearly concentrated in a
15      particular venue and you don't have this problem
16      of, of events all over the country being sought
17      to be litigated in a single action.  And I think
18      that the peculiar nature of IP cases is such
19      that it explains why we have something like 1400
20      and the history of it was specifically to
21      restrict where defendants in patent cases could
22      be sued for infringement.
23                  THE COURT:  And you'd acknowledge
24      that if your argument is correct, that the
```

| | |
|---|---|
| 1 | effect of this change into Section 1391 means |
| 2 | that in not only patent cases like this but all |
| 3 | patent cases I suppose, there's really only two |
| 4 | venues in which the suit can go forward, am I |
| 5 | right?  It would either be the place of the |
| 6 | defendant's corporation or the place of the |
| 7 | defendant's place of business; is that right? |
| 8 | MR. DABNEY:  Well, what 1400 B |
| 9 | prescribes, which was a specific legislative |
| 10 | judgment, it's the place of incorporation, Your |
| 11 | Honor is correct, or a place where there is both |
| 12 | an act of infringement and a real and effective |
| 13 | place of business. |
| 14 | THE COURT:  And I'm shorthanding |
| 15 | you because the second part of 1400 B would |
| 16 | require an act of infringement, but in this case |
| 17 | for example, am I correct that the Defendant is |
| 18 | both -- if I'm remembering correctly, the |
| 19 | Defendant was both incorporated and has |
| 20 | undisputedly its only principle place of |
| 21 | business or only established place of business |
| 22 | in Indiana? |
| 23 | MR. DABNEY:  That's correct.  In |
| 24 | this particular case that would be true.  If |

```
1      you're talking about Ford Motor Company or

2      something that has real effective established

3      places around the country, then this argument

4      would not apply as to a defendant like this.

5                    THE COURT:  I know what you're

6      saying, but if by amending the statute Congress

7      was intending to make a huge change in the venue

8      status quo of patent cases which themselves

9      represent billions and billions of dollars in

10     the United States economy, wouldn't it have been

11     expected that they would have said something

12     about that, noted it in some way, et cetera?

13     What's your response to that line of thinking?

14                   MR. DABNEY:  Well, my response is

15     that the current status quo dates only to 1990.

16     And as VE Holdings' panel candidly acknowledged,

17     was potentially an accident of the 1988

18     amendment.  And I was practicing then and I can

19     tell the Court that in the first years after

20     that District Courts were saying the 1988

21     amendment didn't change anything, there was a

22     split of authority on that, there was no

23     discussion that I can recall that you were going

24     to bring about a C change that would result in
```

```
 1    the creation of a whole new patent venue in East

 2    Texas, that is ultimately a product of the VE

 3    Holdings case, so I don't think that the fact

 4    that there was -- we have in the fullness of

 5    time, a very small window in which its been held

 6    that a 1988 statutory change that was held by an

 7    intermediate appellate court to abrogate a lot

 8    of existing precedent means that a similar

 9    legislative change which did exactly what VE

10    Holdings said should be done, exception.

11    Congress wanted to maintain the exception, they

12    could put the exception language in.  What VE

13    Holdings did was to apply a textural language.

14    They said well, Congress' intent is best shown

15    in the text of the law.  The text is where we

16    look to.  And in this case we have a statute

17    that says except as otherwise provided by law,

18    venue is as stated in 1391.  So we have to ask,

19    why is that exception in there?  Well, Justice

20    Oleto has given us an explanation because we

21    have all these specific venue statutes.  It

22    isn't just patent venue statutes, there are many

23    special venue statutes for civil rights cases

24    and other cases, and it's not -- it would make
```

```
 1     sense that congress would provide an exception

 2     to the general venue statute to give life back

 3     to what had been a very important fixture of

 4     patent litigation during most of the 20th

 5     Century.

 6                    THE COURT:  Is the impact of what

 7     you're suggesting about the phrase except as

 8     otherwise provide by law, does that mean that

 9     now no part of Section 1391 could have any

10     impact on a more specific venue statute; in

11     other words, no aspect of Section 1391 or how it

12     might define a particular term could impact any

13     venue statute, including the patent statute,

14     because it says except as otherwise provided by

15     law?

16                    MR. DABNEY:  I don't know that I

17     could make a sweeping categorical statement like

18     that.  I think the patent venue statute was so

19     well established and the subject of so many

20     Supreme Court decisions that it wouldn't

21     necessarily follow that a 1400 B were held once

22     again to be the exclusive venue rule for patent

23     cases that that would mean necessarily that 1391

24     could not supplement other statutes.  I think
```

```
 1     there are some cases cited by the Defendant in

 2     which 1391 was held to be permitted to

 3     supplement certain other special venue statutes.

 4     But in this -- historically.  That isn't -- I

 5     don't -- I think Your Honor could decide this

 6     motion and say that given what Justice Oleto

 7     said in Atlantic Marine, given the structure of

 8     the venue statutes and the except as provided by

 9     law and the clear conflict between what a

10     contrary interpretation would lead to, that

11     venue in patent cases being governed by 1400

12     does not answer the question whether there is no

13     other role for 1391 to play in a case where

14     there is a special patent venue statute.  But I

15     think it's also fair to say that the patent

16     venue statute was enacted for a reason.  There's

17     a long history behind it.  It was set out in

18     Forco and then Stonite as to why it was passed.

19     And that's a legislative judgment I think the

20     Court could rightly respect.

21               THE COURT:  Why could it not be

22     the case that the addition for except as

23     otherwise provided by law at the beginning of

24     Section 1391 A was meant to in effect say of
```

1    course if there are more specific venue

2    statutes, those things can exist.  We hear in

3    Section 1391 are being talking go to be talking

4    about the venue to the extent it is not

5    otherwise addressed in another specific statute,

6    but then when you get to residency, and we're

7    talking about what it means to be a resident,

8    that that is kind of more particular, that the

9    just as was the state of affairs was at the time

10   of VE Holdings, what that section is saying now

11   as to residency as it relates to all venue

12   purposes, here's what that's going to mean.  Why

13   couldn't the impact of those two changes be

14   that?

15            MR. DABNEY:  Because the issue of

16   residency was the subject of very specific

17   history and case law decision making.  That was

18   the exact argument that was put to the Court in

19   the Forco case.  That was the exact argument,

20   whether or not the residency of a West Virginia

21   corporation should be deemed to be governed by

22   1391 C.  And the Supreme Court of the United

23   States specifically said, by long-standing

24   congressional action and interpretation the

```
1     residency of a corporation in 1400 B refers to

2     it's state of incorporation only.  So that was

3     the very conflict that came before the Court in

4     the Forco case.  So if you were to say -- if you

5     were to take that view as Your Honor just

6     suggested, you would completely nullify the

7     historical meaning of the residency definition

8     in 1400 B as interpreted by the courts.

9               THE COURT:  Okay.  You started to

10    talk a bit about the personal jurisdiction issue

11    that there's a relationship between the two

12    obviously, but more than you wanted to say about

13    the venue statute and -- is there anything

14    further you want to say?  I know I cut you off

15    with questions.

16               MR. DABNEY:  No.  I would just --

17    I've cited the Atlantic Marine case several

18    times, but I just think it bears, you know, just

19    bears your reading what Justice Oleto said in

20    footnote 2 of his opinion on page 5 of the Slip

21    opinion, quote, Section 1391, governs, quote,

22    venue generally, comma unquote.  That is, in

23    cases where a more specific venue provision does

24    not apply, CFEG section 1400, open paren,
```

1   identifying proper venue for copyright and

2   patent suits, closed paren.  It seems to me that

3   that is an entirely fair, sensible reading of

4   the plain meaning of the statute.  And so we

5   respectfully submit that as to the venue issue

6   which would make it unnecessary to reach either

7   the scope of C 2 in 1391 or the due process

8   issues that have been raised in this case, the

9   Court has -- should conclude that the 1400 B

10  applies.  It's a more specific statute.  And

11  under the amended version of Section 1391, it

12  controls and there's no argument on the other

13  side that the venue is proper under 1400 B, that

14  is undisputed.  So this is a holding that would

15  just return the law onto where it was from 1897

16  to 1990 and arguably never changed because the

17  VE Holdings case was never approved by the

18  Supreme Court of the United States.  It was the

19  Federal Circuit's interpretation of statutory

20  text that no longer exists.

21              THE COURT:  It would be binding on

22  the Court, but for some change in the law?

23              MR. DABNEY:  Yes.

24              THE COURT:  Rather than --

```
1              MR. DABNEY:  I certainly think

2    that it is -- the Court at the very least must

3    reconsider whether the statutory changes in 2011

4    warrant a different result.  We think that they

5    do and Atlantic Marine points the way to that.

6              THE COURT:  Last question on this.

7              MR. DABNEY:  Yes.

8              THE COURT:  And again, this

9    relates -- it's a question that relates back to

10   the prior version of Section 1391, but I

11   understand in part that the VE Holdings court in

12   focusing on what it was about, that statute, the

13   Section 1391 C at that time focused on the

14   additional language that we've been talking

15   about, now amended to for all venue purposes,

16   one could argue that the VE Holdings court was

17   focused on the addition of language in that

18   particular section which has now became broader,

19   but it still exists.  And, so -- in fact, in

20   only in a broader context.  And so that reality

21   is no different than -- I guess I'm really

22   asking a different version of the question I've

23   already asked.

24             MR. DABNEY:  Let me respond to it
```

1     directly then.  Even if the Court found that

2     Justice Oleto's characterization of the statute

3     wasn't dispositive here with regard to the

4     except as otherwise provided by law, the new C 2

5     has this language, the prepositional phrase with

6     respect to the civil action in question, which

7     was not in the 1988 version of that text as

8     quoted in footnote 3 of our brief on page 11.

9     And as we argued in our opening brief, in a

10    patent case it seems to me that in order for

11    this statutory text to apply, it's not just that

12    subject to sub A is for all venue purposes,

13    you'd have to actually meet that.  And so I

14    would -- I would argue that if you assume that

15    you have a suit in which a plaintiff is

16    asserting more than one claim, I'm asserting

17    damage because a product was sold in Wilmington

18    and I'm asserting damage because a product was

19    sold in Los Angeles, if there is no personal

20    jurisdiction over this sale in Los Angeles, then

21    you flunk this test as well.

22              THE COURT:  Now, that personal

23    jurisdiction based argument --

24              MR. DABNEY:  Yes.

```
 1              THE COURT:  That is -- would you
 2    conceive that that's antithetical to the holding
 3    in Beverly Hills Fan?  I know you suggested that
 4    things have changed since then, but the Fed
 5    Circuit in Beverly hills Fan wasn't implicit or
 6    explicit in what they were saying was that there
 7    are going to be some fans that end up in
 8    Virginia that relate to infringement
 9    allegations, some that end up in California, and
10    some that end up lots of other place.  It's okay
11    to go forward to Virginia.
12              MR. DABNEY:  There is no doubt
13    that if it had not been for the four Supreme
14    Court cases from 2011 and later years that we
15    cited in our brief, Beverly Hills Fan would
16    probably be the last word on this.
17              THE COURT:  And same question as
18    to the venue argument.  Are you aware of any
19    cases or instances in which it was argued in the
20    Federal Courts since Nicastro and some of the
21    other more recent Supreme Court cases that you
22    cite, including Walden, I suppose, where a party
23    has argued to the Court and only at maximum
24    those instances of accused products being
```

```
1     purposely sent into the district in question can

2     be litigated in a patent infringement action,

3     otherwise there's not personal jurisdiction as

4     to the other parts of the other claims.

5               MR. DABNEY:  My impression is that

6     as with the venue argument, this argument is not

7     being raised.  Indeed it seems as those

8     defendants in patent cases continue to litigate

9     within the Beverly hills Fan rubric and are not

10    making the argument that I'm trying to make,

11    Your Honor, here today.

12               THE COURT:  The same question

13    there is the current state of law in the Fed

14    circuit is that they have said I think most

15    recently that their decision in Beverly Hills

16    Fan is still the controlling word, because the

17    Fed Circuit has said they don't believe that

18    Supreme Court case law, including cases like

19    Nicastro and others that relate to due process

20    have changed the landscape.  Is that correct?

21    In other words, would I have to find that based

22    on Supreme Court juris prudence, that it has

23    changed?

24               MR. DABNEY:  I don't -- I'm aware
```

```
 1      of the cases Your Honor is talking about, I
 2      think, and certainly they are focused on the,
 3      you know, what does it mean for a person to
 4      purposefully avail themselves of a state's laws
 5      and the focus tends to be on the act of
 6      infringement within the foreign state.  And in
 7      our motion we're preparing to say the Court
 8      could assume for purposes of argument, although
 9      we don't think it's correct, but the Court could
10      assume for purposes of argument that the
11      delivery to a carrier in Indianapolis of a
12      product bound for the Wal-mart distribution
13      center in Smyrna, that they could sue in
14      Delaware to the extent that the people who
15      bought those products could be deemed to be
16      infringement.  So what we try to do on our
17      motion is say let's just take that off the
18      table, let's just assume that, because it seemed
19      to me that that's as far as the analysis tends
20      to go.  You find a single act of infringement
21      and then there's this leap to the conclusion
22      that that means that all other infringements
23      occurring everywhere else in the country are
24      litigatable in the action where a single act of
```

```
 1    infringement has occurred.  And I'm not aware of
 2    a case after Beverly Hills Fan that raises the
 3    question whether under the modern quartet of
 4    Supreme Court cases that we cite, that further
 5    assumption of jurisdiction is constitutional.
 6    If the -- and the closest case that we think
 7    that's analogous to this is Judge Lashum's
 8    decision in the Sears case, which we think shows
 9    the correct form of analysis.  In Sears you had
10    a single piece of IP, the name Sears, and you
11    had a defendant which was engaged in diverse
12    different acts of infringement, that were
13    selling ADR's in New York that had the name
14    Sears associated with them.  It was engaging in
15    business in Tennessee that had the name Sears
16    associated with it.  It was engaging in business
17    in Delaware that had the name Sears associated
18    with it.  And the question for the Court was in
19    order for the Delaware court, who admittedly has
20    jurisdiction over the Delaware infringement to
21    be able to hear the claim for the misuse of the
22    name Sears in Tennessee, you have to show that
23    the Tennessee infringement was set in motion by
24    something that happened in Delaware.  That's how
```

```
1     you establish the necessary arising from

2     Delaware conduct that gives rise to specific

3     jurisdiction.  So what the recent cases in the

4     Supreme Court have reinvigorated is the fact the

5     specific jurisdiction requires that a claim

6     be one that arises from incidents in the

7     jurisdiction.  So the question we would ask the

8     Court to ask our opponents is, how is it that a

9     sale of liquid water enhancer in California is

10    an act that arises from something occurring in

11    Delaware?  We would submit that it is not.  In

12    this case where their design, made,

13    manufactured, shipped from Indianapolis, there

14    is no connection between most of the

15    infringement claims and Delaware.  So if the

16    reasoning of the Sears case continues to be

17    valid, and you have to read, you know, review

18    the Beverly Hills Fan logic in light of the

19    reinvigorated arising from requirement, which no

20    one has ever disputed is a real requirement, you

21    then have to ask how is it that the Court has

22    personal jurisdiction with respect to the non

23    Delaware acts of infringement?  The Beverly

24    Hills Fan case relied on Keaton.  And Keaton is
```

1     a very important case to understand fully.

2     Keaton was a case in which the plaintiff was the

3     wife of the publisher of Penthouse magazine and

4     she lived in -- the erstwhile Penthouse

5     magazine, I guess.  And she lived in -- she

6     lives in New York and she allegedly was liabled

7     by certain issues of another skin magazine

8     published by Larry Flint that was sent into New

9     Hampshire.  And what made the case controversial

10    was not the fact that New Hampshire could award

11    relief for the liables allegedly committed in

12    New Hampshire.  What made the case important was

13    that New Hampshire was one of the many states

14    that had a single publication rule, so that as a

15    matter of substantive New Hampshire law, if Mrs.

16    Keaton could file suit in New Hampshire, the New

17    Hampshire court would award relief for all of

18    the liables committed everywhere in the nation

19    because of this single publication rule that's a

20    second restatement of torts.  So that's why

21    there was a constitutional question of whether

22    or not a defendant traditional motions of

23    fairplay and substantial justice for this New

24    York plaintiff to go to New Hampshire and ask a

```
1      New Hampshire court to award her recovery for

2      her losses in Illinois said.  And the court

3      relied very heavily on the single publication

4      rule, which was a, you know, a state tort law

5      doctrine that was very well established.  Said

6      well, because most states have the single

7      publication rule and this concentrates recovery

8      in the state, and since you are commercially,

9      you know, exploiting the New Hampshire market by

10     sending 15,000 copies of your magazine up there

11     every month, it does not offend traditional

12     motions of fairplay and substantial justice to

13     suppose you to suit in New Hampshire despite the

14     plaintiff's relatively minimal contact with New

15     Hampshire and despite the single publication

16     rule.  So, you try to translate that into the

17     patent context and the first thing you run into

18     is that patent law doesn't have a single

19     publication rule.  That is not in the statute.

20     It is all we have in the patent law is a civil

21     action for alleged infringement of the patent,

22     nothing in the patent act text says that if you

23     commit an act of infringement in a single state

24     and you can be sued in that state you are
```

```
 1      therefore exposed to liability for any other
 2      acts of infringement you may have committed
 3      anywhere.  So we don't have that in the
 4      substance of the law.  So we default, then, to
 5      the question of well, what does the due process
 6      juris prudence say?  Well, you have to ask, is
 7      the claim one that arises from conduct in the
 8      forum.  And as to the claims here, most of them
 9      simply don't.  This is why we emphasize the
10      Walden case and the Nicastro case and the
11      Goodyear case, because each of these are ones in
12      which the Court rigorously applied the
13      requirement that a right of action arised from
14      conduct in the forum that is subject to the
15      state's regulation.  We don't have that in the
16      patent field, so all this comes back to Your
17      Honor's question about new 1391 C 2 which
18      requires personal jurisdiction with respect to
19      the action as a whole.  We would say that if you
20      apply this with a view to where do the claims
21      arise, it actually dovetails nicely with 1400 B
22      because you would then have a, the definition of
23      where the venue is in 1391 being very similar to
24      what would be required if you insisted that
```

1      every claim made in a patent suit is one over

2      which there is personal jurisdiction.

3                  THE COURT:  Okay.  Your up against

4      your time.

5                  MR. DABNEY:  Okay.

6                  THE COURT:  Mr. Dabney, I'll let

7      you reserve five minutes for argument at least

8      in light of my questions.

9                  MR. DABNEY:  Thank you, Your

10     Honor.

11                 THE COURT:  Thank you.  Let's hear

12     from the Plaintiff's side, Mr. Combs.

13                 MR. COMBS:  Your Honor, I confess,

14     I believe your questions have anticipated much

15     of my argument, so I will try to move as quickly

16     as I can.  With respect to a specific question

17     you asked, the previous version of 1391 A, my

18     understanding is that it read, a civil action

19     wherein jurisdiction is founded only on

20     diversity of citizenship may, except as

21     otherwise provided by law, be brought only in

22     and went on to have specific definitions.  So I

23     would submit that the change in 1391 A is merely

24     a simplification of the prior 1391 A.  And I

1    will get further into why I don't think that

2    change has any material difference on this case

3    particularly.

4                THE COURT:  And remind me, Mr.

5    Combs, once we end argument, I'll certainly ask

6    at a minimum for the sides to provide me with

7    the version of Section 1391 that existed at the

8    time of the VE Holdings case and presumably I

9    think unless it changed up until the 2011

10    amendments that are at issue here, I may ask

11    them to comment on something else about the

12    statute.  But anyway, remind me if I don't say

13    it otherwise.  I want to address that for you.

14                MR. COMBS:  Thank you for having

15    us.  Eric Combs, Rob Zimmerman from Dinsmore in

16    Cincinnati, Mr. Cottrell, obviously joined here

17    on behalf of Kraft.  Funny my outline began with

18    the observation that this is not a case of first

19    impression in the sense that there are patent

20    cases that are pending right now, dozens of them

21    in the District of Delaware that present from a

22    personal jurisdiction and venue standpoint

23    precisely the same issues that have been

24    presented here.  Really the only thing novel

 1    about this case or the arguments that Defendants

 2    are making with respect to try to apply personal

 3    jurisdiction and venue decisions that have no

 4    bearing and are in absent to this case to a

 5    dismissal motion filed here.

 6              THE COURT:  Can I ask you the same

 7    question off the top I asked Mr. Dabney?  So far

 8    as you're aware, has there been a judicial

 9    opinion that addressed basically either one of

10    the two arguments that the Defendants are

11    making, ie, that venue as to patent cases

12    changed post the 2011 amendments to Section 1391

13    or that some combination of Walden and Dicastro

14    and other recent cases have, should have the

15    impact of altering Beverly Hills Fan in its

16    assessment of personal jurisdiction?

17              MR. COMBS:  That's a many part

18    question, so I will take venue first.

19              THE COURT:  Okay.

20              MR. COMBS:  Two comments about

21    that.  One, we think there have been cases and

22    two, we think that those cases don't have to

23    address the argument, because the argument --

24    well, let me get back to that, has specifically

```
 1        to do with the footnote 2 from Atlantic Marine.

 2        The first point is Your Honor has already quoted

 3        for the Debacor case in which obviously the

 4        party in that case asserted the changes to the

 5        2011 amendment to 1391 as a basis for arguing

 6        that it ought not to apply and the Court says

 7        the Court does not believe this amendment

 8        undermines the Federal Circuit's conclusion that

 9        a business entity defendant for the purposes of

10        1400 B resides in any judicial district in which

11        it is subject to personal jurisdiction.  That's

12        the Debacor case.  Of course the Graphics

13        Properties case was also decided subsequent to

14        the 2011 amendment and said the outcome of the

15        venue issue should be the same as the outcome of

16        the personal jurisdiction question.  It's a

17        direct quote, which suggests of course that 1391

18        C's definition of residence applies to 1400 B.

19        And this is an important point, because Mr.

20        Dabney seems to be couching the argument in

21        terms of that we're arguing that 1400 B does not

22        apply.  That's not the argument.  1400 B plainly

23        applies.  It is that begs the question that Mr.

24        Dabney is trying to raise, which is where does
```

```
 1      Heartland reside for the purposes of 1400 B.
 2      That's the entire basis of the VE Holdings case.
 3      And in fact, if you read VE Holdings carefully,
 4      it says just that, there is no conflict between
 5      1391 and 1400 B, because when you read 1400 B
 6      the obvious question is where does the defendant
 7      reside.  Well, how do you find that out?  You go
 8      read 1391 C.  That's the entirety of the import
 9      of the holding in VE Holdings to this case, and
10      nothing about the amendment changes that
11      analysis.  In fact, if you look at the change
12      that Mr. Dabney touts, the change to section A
13      that says except as otherwise provided by law,
14      and then that says what 1391 applies to.  Okay.
15      That doesn't help us with respect to the
16      question presented.  Then you look at 1391 C and
17      just as we pointed out in our brief and as Your
18      Honor has noted multiple times, adding the
19      language for all venue purposes actually makes
20      it clearer, that the subsequent -- the following
21      language which defines residency for all venue
22      purposes including 1400 B, includes Heartland.
23      It's that simple.  And to your point earlier
24      that the VE Holdings language that said if
```

```
 1        Congress intended for 1400 B to be excluded,
 2        they could have said it right in 1391 C, they
 3        could have said it in 2011 just as easily as
 4        they could have said it in 1988.  So the VE
 5        Holdings logic, the VE Holdings holding and all
 6        those cases subsequent to VE Holdings, and there
 7        have been many, that says that the venue
 8        question is answered by the personal
 9        jurisdiction question over a corporate defendant
10        are still applied, have not been changed.  The
11        footnote 2 from Atlantic Marine says nothing
12        more than 1400 B applies in patent cases, not
13        1391 generally.  That completely begs again how
14        you define residency under 1400 B.  Again we're
15        not arguing that 1400 B does not apply, we're
16        arguing that the 1391 C definition, residence,
17        informs the definition of reside under 1400 B.
18        That's what VE Holdings said.  That's what every
19        case after VE Holdings has said.  Atlantic
20        Marine doesn't change that answer.  The
21        amendment to the statute doesn't change that
22        answer and cases subsequent to the 2011
23        amendment have said that VE Holdings still
24        applies.
```

```
 1                    THE COURT:  And back to the

 2      original question.  You know what I'm asking,

 3      which is -- so if even in then Judge Sleet's

 4      case, do you think the parties were arguing hey,

 5      judge, look, there's some particular changes to

 6      the statute in 2011 like, for example, now

 7      section A leads off with the phrase except as

 8      otherwise provided by law and oh, by the way,

 9      there's a new addition in subsection 2 with

10      respect to the civil action question, we believe

11      that changed the landscape, what do you think?

12      That's one way to put the question to the Court.

13      The other -- another is just somehow it was

14      noted to the Court or the Court found it itself

15      that the statute's language had changed a bit,

16      but without the particular arguments being made

17      here, the Court nevertheless in its view it

18      didn't believe that had an impact.  Those are

19      two different scenarios.  I'm just trying to get

20      your knowledge as to whether or not -- as to

21      Chief Judge Sleet's opinion or the other couple

22      courts that have noted the change, do you think

23      that they were actually being presented with the

24      arguments we're being presented with here?
```

```
 1                    MR. COMBS:  I have no reason to
 2        believe that they wouldn't be perfectly candid
 3        with the court.  What I would note is thousands
 4        of defendants have been sued in Texas for patent
 5        infringement since 2011.  Dozens if not hundreds
 6        of non Delaware incorporated companies have
 7        likewise been sued in Delaware since 2011 and
 8        the fact that the argument has not been made
 9        prior to today suggests something very simple to
10        us, which is that the argument is not one that
11        has a valid basis.
12                    THE COURT:  Part of what you're
13        saying is if it was correct, the defense
14        argument would have an impact in hundreds and
15        hundreds and hundreds and hundreds of cases
16        throughout the United States, you're suggesting
17        that there's lots of opportunities to raise
18        this, the fact that it hasn't been raised
19        suggests that it's not a viable argument, is
20        that part of what you're suggesting?
21                    MR. COMBS:  That's part of what
22        I'm suggesting.
23                    THE COURT:  Is another part of
24        what you're suggesting that to the extent courts
```

```
 1    have looked at change in the language that

 2    begins with the beginning of Section 1391 C and

 3    found it to be broader and not to alter the

 4    status quo with respect to venue.  Sounds like

 5    what you're saying is look, I acknowledge that

 6    they may not have been presented with the exact

 7    argument the defendant is making, but they were

 8    confronted with this particular change and they

 9    thought it made the case for venue being strong.

10    That's part of what you are saying?

11              MR. COMBS:  Absolutely said that

12    on our brief and I agree with it.  The other

13    thing I would note, and following up on the

14    questions the Court had and it follows on what I

15    just said about the Texas and Delaware.  We did

16    look at the legislative history as best we

17    could.  We did not find anything definitive, but

18    of course that means something.  Nothing we saw

19    made any reference to an impact on patent venue.

20    In fact, nothing we saw said anything other than

21    it was just a simple simplification of the prior

22    language that made it clear that there are

23    specific venue statutes that apply in certain

24    situations as opposed to the general application
```

```
 1    venue statute.

 2              THE COURT:  Same question I asked

 3    Mr. Dabney, which is are there portions of the

 4    legislative history that say in effect, no,

 5    we're going to be adding some lines here, like

 6    with respect to the civil action in question, or

 7    we're going to start out Section 1391 A with

 8    except as otherwise provided by law or we're

 9    going to alter the beginning of Section 1391 C

10    so it now reads for all venue purposes; when

11    we're doing that, here's why we're doing it.  Is

12    there anything like that?

13              MR. COMBS:  I've seen nothing like

14    that, which again suggests to us that it was not

15    intended to be the C change that would be

16    suggested by the argument made by Mr. Dabney.

17    Further -- and I understand Mr. Dabney's point

18    that the 1988 amendment didn't have anything

19    like that either, so --

20              THE COURT:  It's clear enough and

21    this is from the change, that the impact it has

22    presumably you'd have re VE Holdings you'd have

23    to require there to be some specific --

24              MR. COMBS:  Fair enough, but that
```

```
 1     doesn't make this -- two wrongs don't make a

 2     right in a sense in that regard.  What I would

 3     suggest then is that had such a change been

 4     intended, one would think that the patent bar

 5     would have had si alese on this, there would be

 6     ABA presentations on the impact on patent venue,

 7     we would have heard a lot about this.  We've

 8     heard nothing.  And so for this two years hence

 9     to be the first time this is argued, suggests I

10     think more than fully, that this is a novel

11     argument not supported by the plain language and

12     language of the venue statutes, but by the

13     acknowledged creativity of defense counsel, but

14     no further.  There are certainly no cases that

15     endorse the position taken by Defendant, by

16     Defendants here with respect to the interplay

17     between 1391 C and 1400 B.  And we would submit

18     that there have been multiple cases subsequent

19     to the amendment and subsequent even to the

20     cases that they cite, that implicitly at least

21     reject the notion that the 2011 amendments

22     impact the way they claim it does.

23                 THE COURT:  And other than

24     Debacor, are there other cases you have in mind
```

1    that speak to the amendment in a patent context

2    that you think implicitly reject the argument

3    being made by the other side as to venue?  There

4    was reference to an eastern district, I think at

5    2014 Eastern District Michigan case which I

6    think is yes, T&R Industrial Doors, Inc., 2014

7    Westlaw 280 0750 --

8                    MR. COMBS:  I confess I'm not

9    familiar with that case, Your Honor, and I'm not

10   familiar with any others.

11                   THE COURT:  Okay.  Debacor was the

12   case you were focusing on.

13                   MR. COMBS:  And also Graphic

14   Products, which allowed for the fact that venue

15   and personal jurisdiction are one in the same

16   which implicitly acknowledges that the 1391 C

17   definition of residency informs 1400 B, so I

18   also was relying on graphic products.

19                   THE COURT:  Okay.  I think if I'm

20   right, those are portions of that opinion and I

21   think a few other of Chief Judge Stark's

22   opinions that cite to VE Holdings even very

23   recently like 2013 or 2014 cites, again admitted

24   not addressing these, but that's what you're

1    referring to.

2              MR. COMBS:  All correct, Your

3    Honor.  Thank you.  Unless Your Honor has more

4    for me with respect to the venue piece of

5    things, I'm happy to move onto personal

6    jurisdiction.

7              THE COURT:  And again, I'm

8    hampered by the fact that I don't have the prior

9    language of the old Section 1391 in front of me,

10   but it sounds like what you're suggesting is

11   that the prior version of that statute, when it

12   came to in the beginning of Section 1391, had

13   very similar language to the except as otherwise

14   provided by law language in it, and I want you

15   just to make your argument again as to why it is

16   that the fact that that was the case and the

17   fact that there is now this change, that it

18   leads off with except as otherwise provided by

19   law suggests that there's nothing different with

20   regard to the two statutes with regard to that

21   phraseology.

22             MR. COMBS:  I'll try and come at

23   this two ways, Your Honor.  I think -- once we

24   all see definitively what it was and that was

1       some quick research I did on my ipad right

2       there.

3                   THE COURT:  Okay.

4                   MR. COMBS:  But assuming is says

5       what I read, which is that it included the

6       except as otherwise by law in the previous

7       version, then the change that he cited, not only

8       is it change without a difference, it's not even

9       a change.  So if there was no legitimate change,

10      it was just a rewording of what it already said,

11      then obviously the argument fails ab niscio.

12      Our argument in our brief and what I've tried to

13      articulate so far is even if it were a change,

14      it would be meaning the 1391 A change to say

15      except as otherwise provided by law, 1391 only

16      governs venue when a specific statute doesn't

17      apply.  Still doesn't change VE Holdings because

18      what VE Holdings says is 1391 C defines what

19      1400 B means by residence.  So that's not

20      suggesting that 1400 B does not apply, which is

21      what 1391 A says.  It's you still have to look

22      at 1400 B and say how do you define residency?

23      And VE Holdings says, and nothing anywhere is

24      inconsistent with that, you look at 1391 C.

```
 1                    THE COURT:  So as a way of

 2     summarizing what you're saying is that when you

 3     know the part of VE Holdings Mr. Dabney pointed

 4     out where the Federal Circuit said Congress

 5     could have really added except for section 1400

 6     B, if that exception, which we can presume was

 7     well known to Congress was intended to be

 8     maintained, is what you're suggesting that what

 9     the Federal Circuit was saying was that we would

10     be looking to the section of Section 1391 as to

11     residency for that kind of specific statement

12     about excluding statutes like section 1400?

13                    MR. COMBS:  Correct.

14                    THE COURT:  To be made.  And that,

15     because that's not in that particular subsection

16     talking about residency and because there is

17     otherwise the language that starts off the

18     subsection, that's -- that's what's telling us

19     that as to residency this carries forward as to

20     other statutes, is that what you are arguing?

21                    MR. COMBS:  Yes.  Let me read

22     directly from VE holdings, which in which the

23     Defendant argued that 1400 B should trump the

24     application of the 1391 C definition.  The
```

```
1      argument is wrong for two reasons; first, in

2      this case the general statute, 1391 C, expressly

3      reads itself into the specific statute, 1400 B.

4      That's a reference to the language that said for

5      purposes of venue under this chapter, now that

6      that language that reads itself into the

7      specific statute reads for all venue purposes, I

8      would argue that that point made in VE holdings

9      is even stronger as we've already discussed.

10     Second, 1391 C only operates to define a term in

11     1400 B.  It neither alone governs patent venue

12     nor establishes a patent venue rule separate and

13     apart from that provided under 1400 B, nor does

14     it conflict with 1400 B.  The entire point of VE

15     Holdings, which is still as true today as it was

16     when it was handed down, is that 1391 C define

17     residency for the purposes of 1400 B, it does

18     not trump it.

19              THE COURT:  Okay.  And then

20     lastly, what do you believe, based on your sense

21     of legislative history or just literally reading

22     the language, was meant by the addition of the

23     phrase with respect to the civil action in

24     question in Section 1391 C 2?
```

```
 1              MR. COMBS: I think that is an

 2    corporate of specific jurisdiction standard into

 3    1391 C.  So that if you are considering specific

 4    personal jurisdiction and the civil action

 5    warrants jurisdiction over a defendant, then

 6    venue light up also.  I think that's a simple

 7    reading.  It does not say the entire civil

 8    action as Mr. Dabney said.  I think that's a

 9    plain reading of that, that essentially

10    incorporates the jurisdiction question just as

11    VE Holdings did.

12              THE COURT:  Okay.  Maybe that's a

13    good transition then to the personal

14    jurisdiction side of the arguments.

15              MR. COMBS:  Yes.  And so I would

16    submit that here the legal analysis is not all

17    that different either, because as Mr. Dabney

18    conceded, Beverly Hills Fan in the absence of

19    his interpretation of Supreme Court precedent

20    applied to it, still applies, still controls and

21    would still afford jurisdictional due process in

22    this case.  Now, as Your Honor pointed out, in

23    recent Federal Circuit case law, the Federal

24    Circuit considered whether Nicastro had an
```

```
 1    impact on the stream of commerce theory under

 2    Beverly Hills and concluded that Beverly Hills

 3    and the stream of commerce argument were still

 4    good law.  Given that the Goodyear case, the

 5    Bauman case and Nicastro -- both preceded the

 6    Nicastro case and the Federal Circuit and

 7    frankly this court has already considered the

 8    impact of Nicastro on Beverly Hills Fan and

 9    concluded that Beverly Hills Fan is still good

10    law.  Three of those Supreme Court cases we

11    believe have already been addressed in this

12    jurisdiction.

13              THE COURT:  So that would leave

14    Walden, I suppose?

15              MR. COMBS:  That would leave

16    Walden, which is, we believe in absent on its

17    plain facts, because what you had in that case

18    was an agent in Georgia conducting conduct in

19    Georgia that never touched Nevada other than the

20    injury claimed to be suffered by the Plaintiff.

21    Walden stands for nothing more than the

22    proposition that mere injury to the Plaintiff is

23    insufficient to establish jurisdiction over a

24    distant Defendant.  Here you have a defendant
```

```
 1      who is, as the record presents, sending product

 2      directly to Delaware, recovering revenue

 3      directly from the product it sends directly to

 4      Delaware and also placing other product into the

 5      stream of commerce through a national

 6      distribution with knowledge that it will be

 7      ultimately sold in Delaware.  And the scope of

 8      that not even Heartland knows, but we know it's

 9      happening because I showed the CEO of Heartland

10      five different pictures from five different

11      retail outlets here in Wilmington, Delaware,

12      that showed over 20 products made by Heartland

13      that have made their way onto Delaware shelves

14      for sale to Delaware customers through not --

15      they couldn't tell me whether that was shipped

16      to Delaware, they knew some of it was shipped to

17      Delaware, but the fact that they shipped it to

18      Bentonville, Arkansas, would acknowledge that it

19      might make its way to Delaware and did certainly

20      nothing to avoid it making its way to Delaware

21      suggests that under the stream of commerce

22      theory in Beverly Hills Fan, there is more than

23      sufficient basis to afford jurisdiction over

24      this Defendant.
```

```
 1                    THE COURT:  And on that, in terms

 2        of the additional sales, I'm not talking about

 3        the ones not directly shipped by the Defendant

 4        to Delaware at the request of, but sales of the

 5        kind you're referring to, which you would say is

 6        on top that --

 7                    MR. COMBS:  Correct.

 8                    THE COURT:  -- which are sales

 9        through which Defendant ships products to say

10        California and then the company to which it's

11        making that product for sends it to Delaware to

12        be sold, is there anything in the record that

13        tells us what -- I know you say I don't even

14        know the magnitude of that.  Is there anything

15        that tells us what the minimum magnitude of that

16        is?

17                    MR. COMBS:  I'm afraid not.  I

18        asked the question and they were not able to

19        identify it for me.  In fairness, we've had one

20        deposition and we would hope to find out more

21        about that and certainly plan to.  But while we

22        know that Beverly Hills Fan remains good law --

23        and so back to the Walden point.

24                    THE COURT:  Right.  Let's not
```

```
 1    leave Walden just for a second.  I think,

 2    particularly footnote 6, which says as quoted by

 3    them, specific or case length jurisdiction

 4    depends on an affiliation between the form and

 5    the underlying controversy, ie, an activity or

 6    occurrence that takes place in the forum state

 7    is therefore subject to the state's regulation.

 8    Therefore you're going to say look, there's

 9    nothing in Walden that can't be read in absolute

10    harmony with the Beverly Hills Fan case and any

11    case that goes after it, want you to explain how

12    you would take the quote that's prominently

13    cited by the other side and read it --

14               MR. COMBS:  Well, I think you

15    start right where Your Honor did in your

16    question, which is with Beverly Hills Fan, which

17    says in that case the forum obviously was

18    Virginia.  Virginia also has a substantial

19    interest in cooperating with other states to

20    provide a forum for efficiently litigating

21    Plaintiff's cause of action.  Beverly will be

22    able to seek redress in Virginia for sales of

23    the accused fan to consumers in these other

24    states.  Beverly is not precluded from bringing
```

```
 1      suit in Virginia just because the bulk of the

 2      harm, and it says barn, but I think they meant

 3      harm, inflicted on it may occur throug sales in

 4      these other states.  So Beverly Hills Fan

 5      expressly acknowledges the opportunity to do

 6      that.  The other thing I would say about that

 7      is, think of the results should the true rule of

 8      law be that for every single sale of an

 9      infringing product there is a separate personal

10      jurisdiction assessment with respect to the

11      ability of a plaintiff to redress that injury.

12      I mean, we're not talking about 50 claims, we're

13      talking about as many units as there are, that

14      many personal jurisdiction questions.  If you

15      read the deposition I took of Mr. -- and in the

16      context of a patent dispute, also think Mr.

17      Dabney spoke of the distinction he's trying to

18      draw between the Keaton case where you had a

19      liablous publication that caused, without

20      question, harm beyond and there was a specific

21      state statute that authorized collection for

22      that specific harm.  I ask Mr. Geloff, do you

23      make Delaware specific liquid water enhancer; in

24      other words, if we went to your Indiana
```

```
1      facility, are there 50 different assembly lines,

2      right, so that if the court in Delaware enjoins

3      you from infringing in Delaware that we can come

4      and stop the Delaware line and your other 49

5      lines can keep going and of course the answer

6      was no.  Of all the liquid water enhancer being

7      made in Indiana right now, we have no idea what

8      of that will end up on Delaware shelves

9      infringing on our patents in Delaware.  So the

10     absurdity of a brand new personal jurisdiction

11     inquiry with respect to every sale is manifest.

12     And so we believe that that interpretation is a

13     bridge too far.

14             THE COURT:  And do you want to

15     address Mr. Dabney's citation to Judge Lashney's

16     decision in the Sears case and how this might

17     relate to other kinds of infringement?  Why is

18     patent infringement different from what was at

19     issue?

20             MR. COMBS:  What you had in Sears

21     was the Defendant was fighting jurisdiction, it

22     was a foreign parent of multiple US

23     subsidiaries.  There was one of those

24     subsidiaries housed in Delaware, incorporated in
```

1    Delaware and it was not disputed in that case

2    that the action of those subsidiaries could be

3    attributed to the foreign parent for purposes of

4    personal jurisdiction.  In that case the

5    argument was made by the non Delaware

6    subsidiaries or by the parent of the non

7    Delaware subsidiaries, if you have by definition

8    non Delaware activity and you're trying to hold

9    the parent responsible for the conduct of the

10   subsidiaries, and by definition their conduct is

11   not in Delaware, that is insufficient to cover

12   those claims.  And so there you had, with

13   respect to those claims, no conduct by the

14   conduit, if you will, in Delaware, in addition

15   to no conduct by the Defendant.  So in that case

16   the Defendant who -- in short, in that case the

17   Defendant who ultimately got a dismissal on the

18   basis of lack of personal jurisdiction never did

19   anything in Delaware.  It was always attributed

20   to them through the acts of their subsidiaries

21   and only the Delaware based subsidiaries could

22   hook those into Delaware.  Here you have a

23   corporation in Heartland who is engaging in

24   Delaware activity by their own admission.

```
 1              THE COURT:  And the Defendants

 2    cited may or may not be making this argument

 3    because they have said kind of assume for

 4    purposes of the argument that sales regarding

 5    which we send a product into Delaware ourselves,

 6    put that aside, let's talk about the rest of it,

 7    but to the extent they are making the argument

 8    that look, even as to those, that two percent,

 9    you know, it's patent infringement if you sell

10    the product in the United States, but we don't

11    technically sell the product at issue in

12    Delaware, we sell it vis-a-vis a transaction

13    that occurs elsewhere and then they tell us

14    where to send it.  I guess there you would say

15    there's no difference between the law as to

16    purposeful availment in cases like Graphic

17    Properties interpreting things for case law,

18    whether you, you yourself engage in any

19    transaction by sending it to Delaware and

20    selling it that way, versus you're selling it

21    and are told to, and you do purposely send it to

22    Delaware?

23              MR. COMBS:  You've answered the

24    question in the sense that, you know, if you're
```

```
 1     saying well, I didn't sell it in Delaware

 2     because I -- you know, I sent it to Delaware and

 3     I got money from those sales in Delaware, but I

 4     didn't sell it, I didn't direct it to Delaware

 5     for purposes of the jurisdictional analysis, I

 6     think that's painting way too fine a line.  And

 7     the question I thought you were going to ask me

 8     is where does that leave us?  If, you know, Your

 9     Honor has jurisdiction over two percent of their

10     sales and we can proceed to a Markman hearing

11     and a subsequent trial with respect to two

12     percent of their sales, I suppose they would

13     argue that that limits the royalties or damages

14     or whatever we can get.  But from the standpoint

15     to use, for example, the Markman hearing, that

16     would presumably be definitive with respect to

17     the definition of the claims for the purposes of

18     determining patentability and all of that, so

19     I'm not sure where that leads.  And I think it's

20     just another example of the absurdity associated

21     with the ultimate outcome, if you play their

22     argument on personal jurisdiction limited to

23     each sale all the way out.  The one thing I

24     wanted to -- I don't know how I'm doing on time.
```

```
 1                    THE COURT:  You still have a few
 2      minutes left.
 3                    MR. COMBS:  Okay.  The one thing I
 4      wanted to point out was and I think Your Honor
 5      alluded to them with respect to personal
 6      jurisdiction are the very recent cases that have
 7      been handed down by this Court, including the
 8      Bosh versus Aubrey Products case that I know
 9      Your Honor is familiar with because you cited it
10      in an even more recent case, but in that case
11      there was no evidence that any of the defendants
12      had any offices, employees or manufactured
13      anything or attended trade shows or had any
14      sales people.  In fact, the case says there is
15      no evidence that any of the defendants have ever
16      directly transacted business or sold products in
17      Delaware.  The Defendant had offered for sale
18      and sold wiper blades in the United States to
19      retail stores which in turn sold them in
20      Delaware.  And ultimately there was one retail
21      chain, in fact Costco, that sold those products
22      in Delaware.  But the Court held that there was
23      personal jurisdiction over that defendant
24      because they purposefully shipped wiper blades
```

```
 1        through an established distribution channel into
 2        Delaware.  And that's precisely what we have
 3        here.  And to confirm the point that Beverly
 4        Hills Fan is still a law, it said here as in
 5        Beverly Hills Fan the allegations are the
 6        Defendants purposefully shipped the accused
 7        product to Delaware through an established
 8        distribution channel and the cause of action for
 9        patent infringement is alleged to arise out of
10        those activities.  That's absolutely true here.
11        Your Honor cited -- Your Honor cited the Bosh
12        case and others in connection with your decision
13        just last month in the LG Electronics versus
14        Toshiba case in which you acknowledge that
15        Delaware courts have found that a non resident
16        firm intends to serve the Delaware market when
17        it sells the products at issue to a reselling
18        distributing entity knowing that the reselling
19        distributor will in turn solicit sales from
20        customers throughout the United States with no
21        effort made to exclude sales in Delaware.
22        That's a quote from page 18 of your decision in
23        the LG Electronics case.  Absolutely the same is
24        true here.  So we submit that while we
```

1    acknowledge the creativity of defense counsel

2    with respect to these arguments, Beverly Hills

3    Fan is still the law of the Federal Circuit and

4    the law of this court with respect to personal

5    jurisdiction and supports jurisdiction over the

6    entire case and that nothing that was changed

7    about 1391 or footnote 2 of the Atlantic Marine

8    case changes the analysis under VE Holdings for

9    venue in this matter.

10              One last point.  I didn't hear Mr.

11   Dabney mention their request for transfer under

12   1404 A, the Chumerra standard.  They didn't

13   address in their reply.  I would point out for

14   the record that we were the only party to

15   address the various factors under 1404 A.  We

16   think it's very clear that those factors have

17   not been carried to meet Defendant's heavy

18   burden for transfer over the choice of forum by

19   Plaintiff in this matter.

20              THE COURT:  Okay.  Thank you.

21              MR. COMBS:  Thank you, Your Honor.

22              THE COURT:  Mr. Dabney, rebuttal?

23   And that was one of the questions I was going to

24   ask you, so maybe kind of start out by saying if

```
 1        the Court disagrees with you on the venue

 2        question and the personal jurisdiction question,

 3        are you still intending to make the argument

 4        that nevertheless while venued, the Court might

 5        say then you couldn't lend here or in Indiana,

 6        we petition to be transferred pursuant to

 7        section 1404 or not?

 8                   MR. DABNEY:  Well, we have not

 9        emphasized that in our argument, but we do

10        believe on the face of the record that the

11        Plaintiff is not identified any knowledgeable

12        witness here involved in the development of the

13        patent products.  Developers of the accused

14        products are in Indianapolis and in terms of the

15        convenience of witnesses, their headquarters is

16        in Chicago, not far from Indianapolis.  So we

17        would say, as I say, I hope we don't have to get

18        there.  Our emphasis is that venue is not proper

19        here.  But on this record, there's been no

20        showing.  We have put in evidence that all of

21        the relevant defendant witnesses are in

22        Indianapolis.  The Plaintiff has not identified

23        any relevant witness employed by them located

24        here and some of the witnesses we've identified
```

```
 1     are former employees of us, but candidly our

 2     emphasis is on other parts.  I'm not conceding

 3     that, but --

 4                THE COURT:  Yeah, again, I think

 5     their point would be as a threshold matter you

 6     haven't even done enough to, to really say you

 7     actually raised the issue on Chumerra.  You'd

 8     acknowledge that that is a subsidiary argument

 9     if it is one that can be made as a subsidiary to

10     the other two?

11                MR. DABNEY:  Yes, I acknowledge

12     that.  Your Honor, I think the question you put

13     to opposing counsel, I think I've said

14     everything I can say on 1391.  I think you can

15     either agree with us or -- but we do want to

16     submit the statutory text to you Your Honor

17     because I think that the -- even if the prior

18     venue provision with regard to diversity cases

19     had an exception in it, the current statute in

20     moving the inception as to a subtitle

21     applicability of section is a major shift and

22     cannot be dismissed as a restatement of what

23     existed in 1988, so I do think that the

24     statutory change is significant and I sometimes
```

```
 1    get faulted by opponents for making creative
 2    arguments.  They could have said the same thing
 3    about the KSR case.  Everybody was saying that
 4    the law of obviousness was settled before KSR,
 5    but somebody has to stand up and say what they
 6    believe is the correct law.  I did not hear a
 7    straight answer to Your Honor's question about
 8    footnote 6 in the Walden case.  Your Honor said
 9    how would you read the statute?  Again, by
10    unanimous Supreme Court, the specific
11    jurisdiction requires an activity or an
12    occurrence that takes place in the forum state
13    and therefore is subject to the state's
14    regulation.  That is the precise point on which
15    we believe that the dictum in Beverly Hills Fan
16    is open to question at this point, because no
17    one at this point is questioning whether if a
18    person purposefully avails themselves of a
19    state's law and commits an act of infringement
20    or induces an act of infringement in the forum
21    state that that is subject to the traditional
22    standard of specific jurisdiction.  The problem
23    we have here is that most of the claims in this
24    case, and they may say the result is absurd, but
```

       1        this is a result, is an artifact of the

       2        rebellion against 1400 B that we've been living

       3        under for 95 years now, that most of the alleged

       4        infringements in this case have no connection to

       5        Delaware at all.  And the Sears case, which our

       6        opponent also didn't really have a good answer

       7        for, well, there was a case in which the court

       8        had jurisdiction over part of the action.  There

       9        were multiple acts of infringement at issue in

      10        that case.  Yes, the parent was foreign, but

      11        that wasn't the basis of the decision.  The

      12        parent was held liable for infringements that

      13        were committed in Delaware through its

      14        subsidiary, but the Court held that the

      15        existence of jurisdiction over some acts of

      16        infringement did not provide a constitutional

      17        basis for asserting jurisdiction over

      18        infringements of the same IP in another state.

      19        It just wasn't.  There was jurisdiction only as

      20        to those which were in the Walden case arising

      21        from activity in the forum state.  And Judge

      22        Lashum said out of state infringements could

      23        meet that definition if they had been set in

      24        motion by something that happened in Delaware,

```
1        but that's not what's alleged to have happened

2        here.  The undisputed facts here are that

3        Heartland is a relatively small company

4        headquartered in Indianapolis and the products

5        are all made there and sold and shipped from

6        there.  And I would say under the reasoning of

7        the Nicastro case, both under the plurality and

8        the descending judges, the conduct of the

9        Defendant in that case that made the metal

10       cutting machinery that caused serious injury to

11       a Plaintiff in New Jersey, that Defendant, even

12       though the injury was sustained in the state and

13       it set in motion the machine that caused injure

14       in that state, nevertheless because it hadn't

15       marketed, it hadn't solicited, it hadn't done

16       things to take advantage of the protection of

17       the laws of the state, it was held not to have

18       purposefully availed itself of the privilege of

19       doing business in New Jersey.  So I would say,

20       again, I hope the Court doesn't need to reach

21       this.  We think that this case should be decided

22       on venue grounds, but the, the Beverly Hills Fan

23       case reason by analogy to Keaton which was

24       grounded totally in the single publication rule,
```

1    and because you had the single publication rule

2    of liable to rely on, you didn't get into this

3    question about well, where does the claim arise,

4    because in Keaton case the claim was deemed to

5    have arisen in the forum state, so you didn't

6    get the issue that we have now.  What we have

7    now is a case in which more than 98 percent, if

8    you look at the exhibit they put in, the

9    quantity of the sales at issue in this case is

10   very, very small that is delivered to Delaware.

11   So the question that is raised here, which we

12   think is supported by our interpretation of the

13   venue statute, is what is the justification for

14   an Indiana defendant to defend in Delaware

15   whether or not conduct that occurred in, you

16   know, Illinois, Wyoming, et cetera, did or did

17   not infringe the patent?  And we think the

18   answer to that question is the reinvigorated

19   requirement that a claim arise from activity in

20   the forum state.

21           THE COURT:  And the last question

22   I have there, is in their brief the Plaintiff

23   said under Heartland's theory, that it would be

24   forced to a nationwide infringement or alleged

```
 1      infringement up to 50 separate times in 50

 2      separate jurisdictions or the alternative,

 3      patent in suit infringement in its home district

 4      once.  Is that a fair -- is that a fair read of

 5      the practical reality that would flow from your

 6      argument?

 7                  MR. DABNEY:  No, because my

 8      argument is one that leads to the application of

 9      1400 B.  Which says you can sue in the state of

10      incorporation or in a place where an act of

11      infringement has been committed and there is an

12      effective and established place of business, so

13      under 1400 B, which was the norm for so long,

14      that's where you would sue.

15                  THE COURT:  It's only Indiana,

16      Indiana or nothing?  This case is only properly

17      venued in Indiana?  That's the impact of the

18      venue argument as to this case, right?

19                  MR. DABNEY:  As to this case,

20      because there is no other real and effective

21      place of business of this particular defendant,

22      that's true.  For a larger defendant that had

23      installations around the country, that would not

24      be true.  But I would say the idea that you have
```

```
 1          to bring lots and lots of actions, that's never

 2          been the case.  This is -- we're basically

 3          arguing that the 2011 statute restored the law

 4          to what it was when Judge Lashum decided the

 5          Sears case in 1990 and during all the years when

 6          1400 B prevented things like, you know, large

 7          scale patent litigations and jurisdictions in

 8          remote places like East Texas that have no

 9          connection to the industrial activities of the

10          companies involved.  So we believe that the

11          position that we're advocating for, far from

12          being controversial, the fact is way

13          conservative and would simply restore the status

14          quo as it existed for most of the 20th century.

15                    THE COURT:  Okay.  Thank you, Mr.

16          Dabney.  Let me just address two procedural

17          issues.  One is I'll do this by short oral order

18          after our argument is closed today and you may

19          be seated.

20                    MR. DABNEY:  Okay.

21                    THE COURT:  Which is that I'll

22          issue a short oral order that's going to require

23          a little bit of additional supplementation of

24          the record.  I'll just tell you the import of
```

```
 1      what I'm thinking is kind of two-fold.  One is I
 2      want the parties to be able to cite to me what
 3      the text of Section 1391 was at the time of the
 4      VE Holdings case and because we've heard
 5      argument about what it was and how it relates to
 6      the arguments that are being made here today, so
 7      I want to give the parties the opportunity to
 8      tell me what that is and also to explain to me
 9      why that particular text does or doesn't support
10      the arguments that are being made in a little
11      bit more detail than we've had ability to do it
12      here.  And then secondly, the related issue that
13      has come up a little bit today, but not really
14      touched on in the briefs was what exactly does
15      the legislative history say with regard to the
16      2011 amendments as to these particular changes
17      that are in question and how does what that
18      legislative history says impact the arguments
19      that are being made here?  I'm anticipating it's
20      going to be a relatively short letter, but that
21      will touch on those issues.  And I should say
22      when the letter asks about what was the statutes
23      text in at the time of the VE Holdings case, I'm
24      assuming unless you tell me otherwise, that it
```

```
 1    was one thing then and did not change until

 2    2011, but if it turns out it did change in the

 3    meantime, I'd like to know that too.  Okay.  So

 4    that's -- but in terms of the particular

 5    wording, let's ask for, we'll put a short oral

 6    order on docket.  I realize I'm doing this the

 7    week of Christmas and New Year's, so I guess I

 8    should ask you all to just tell me when you

 9    think is right or fair in terms of when I should

10    require a submission from you?  Let's say it's

11    going to be a couple page letter submission.  I

12    just don't want to interfere with your holidays,

13    et cetera, so would you tell me, what would you

14    like in terms -- Ms. Graham?

15                MS. GRAHAM:  Certainly after the

16    first of the year I would appreciate, but I

17    don't know what you guys want.

18                MR. COMBS:  We're the Plaintiffs,

19    so we're as interested in as rapid a resolution

20    as possible understanding in sharing your

21    interest in not impeding on anybody's holiday

22    unnecessarily, what is the --

23                THE COURT:  Like first week of

24    January?
```

```
 1                      MR. COMBS:  That's what I was

 2        thinking, Your Honor, something like that.

 3                      THE COURT:  That will lead to my

 4        second question, which is I understand there is

 5        a dispute about whether the case should proceed

 6        here in Delaware for the reason we talked about,

 7        but if this case were filed after July 1st,

 8        based on Chief Judge Stark's requirements, there

 9        would have been, even with the pending motion,

10        there would have been a schedule asked to be

11        proposed and an oral 16 issue.  And I notice

12        from the docket that the parties seemed to have

13        been beginning one, maybe the discovery dep that

14        was referenced on the docket was the one with

15        respect to these issues.

16                      MR. COMBS:  It was.

17                      THE COURT:  Is there a reason why

18        I guess a schedule shouldn't be set here if even

19        if the case doesn't stay here, because it's

20        going to have to go forward somewhere, and you

21        don't want to be inefficient about these things,

22        from the Plaintiffs perspective?

23                      MR. COMBS:  We would very much

24        like to set a schedule as soon as we can to get
```

```
 1      going.
 2                  THE COURT:  So from the
 3      Defendant's perspective, do you have a view
 4      about that?  I don't have authority over that
 5      issue, but it struck me looking at the docket
 6      here.
 7                  MR. DABNEY:  Candidly, Your Honor,
 8      there is, I believe the procedures in Indiana
 9      are quite different than the procedures in this
10      court for the handling of patent cases.  And we
11      would be -- we would like to preferably have the
12      venue jurisdictional issue resolved before we
13      get into what is going to be a very, very costly
14      pretrial process in this case.
15                  THE COURT:  All right.  Well, I
16      have only authority over this particular motion.
17      I will take it under advisement after I get the
18      additional submissions from the parties and
19      endeavor to resolve it as soon as I can.
20      Obviously Chief Judge Stark is aware of the
21      procedural posture of this case.  If he
22      determines in the interval to do something with
23      respect to the schedule, that's something you'll
24      hear from him, I'm sure.  If he doesn't, then
```

1    you won't.  But other than letting his chambers

2    know that I have this motion in front of me,

3    that's all I'll do at this stage and let the

4    chief judge just decide what he wants to do with

5    regard to the schedule.  Ms. Graham.

6              MS. GRAHAM:  Your Honor, you

7    probably noticed the efforts to email back to

8    our office and get information.  And well

9    obviously I want to triple check this when I can

10   be back in my office, but I think we have a copy

11   of the 1990 version of the statute in which I'll

12   hand to Plaintiff's counsel and copy for you.

13   And I think -- it would be good to have us

14   verify this as an attachment to -- two copes,

15   the letters that you're going to order, but so

16   you have this now.

17             THE COURT:  Okay.  So I now have

18   something handed up to me as Defendant's

19   Demonstrative Exhibit B.  If this is, in fact,

20   turns out both sides agree that the text in the

21   statute of the VE Holdings case you can simply

22   confirm that for me in your letters.  Again, if

23   there's some change in the statute between then

24   and 2011, let me know of that too.  All right.

1      Anything further we can take up with regard to

2      the motion, Mr. Cottrell?

3                  MR. COTTRELL:  Your Honor, I have

4      one procedural question.  Should we, as the

5      Plaintiff, notify the chief judge that we

6      believe this is ready for a Rule 16 or is that

7      something you would communicate with chambers?

8                  THE COURT:  You can always do

9      that.  And if you wish to, if you think it is

10     the case that it should proceed, you should.  If

11     you don't, you shouldn't.  I'm saying to

12     Defendant, you should oppose it if it should be

13     opposed.  I simply leave that to you.  I just

14     asked because I was looking at the docket, I saw

15     some discovery related activity, I didn't know

16     what it was about.  The only thing I'm going to

17     do is simply to let, as I would in any case, to

18     let the chief judge know that I have a motion

19     pending in the case and that there's no schedule

20     in the case.  Other than that I simply leave it

21     to you to ask the Court for whatever relief or

22     to not order whatever relief you think is

23     appropriate.

24                  MR. COTTRELL:  Thank you, Your

1    Honor.

2              THE COURT:  Okay.  Anything

3    further from the Defendant's side?  All right.

4    To our out of town folks, I wish you safe

5    travels.  Everybody I wish you very happy

6    holidays.  The court will stand in recess for

7    the motion and take it under advisement.

8              (End at 3:10 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1  State of Delaware )
                    )
2  New Castle County )

3

4

5              CERTIFICATE OF REPORTER

6

7        I, Stacy M. Ingram, Certified Court Reporter

8  and Notary Public, do hereby certify that the

9  foregoing record, Pages 1 to 85 inclusive, is a true

10  and accurate transcript of my stenographic notes

11  taken on December 22, 2014, in the above-captioned

12  matter.

13

14        IN WITNESS WHEREOF, I have hereunto set my

15  hand and seal this 22nd day of December 2014, at

16  Wilmington.

17

18

19              /s/ Stacy M. Ingram

20            Stacy M. Ingram, CCR

21

22

23

24

/

/s [1] - 85:19

0

0750 [1] - 52:7

1

1 [2] - 5:15, 85:9
11 [2] - 8:24, 32:8
125 [1] - 16:23
1300 [1] - 11:23
1391 [77] - 6:13, 8:19,
9:5, 9:9, 9:10, 9:15,
12:21, 12:23, 15:13,
15:21, 16:2, 16:7,
16:11, 16:18, 18:11,
19:10, 19:15, 19:16,
20:22, 21:16, 21:21,
21:23, 22:2, 23:1,
25:18, 26:9, 26:11,
26:23, 27:2, 27:13,
27:24, 28:3, 28:22,
29:21, 30:7, 30:11,
31:10, 31:13, 40:17,
40:23, 41:17, 41:23,
41:24, 42:7, 43:12,
44:5, 44:17, 45:5,
45:8, 45:14, 45:16,
46:2, 46:13, 46:16,
49:2, 50:7, 50:9,
51:17, 52:16, 53:9,
53:12, 54:14, 54:15,
54:18, 54:21, 54:24,
55:10, 55:24, 56:2,
56:10, 56:16, 56:24,
57:3, 69:7, 71:14,
78:3
14-28-LPS [1] - 3:6
1400 [49] - 6:17, 7:3,
7:7, 7:21, 12:21,
13:23, 21:8, 21:14,
22:19, 23:8, 23:15,
26:21, 27:11, 29:1,
29:8, 29:24, 30:9,
30:13, 40:21, 44:10,
44:18, 44:21, 44:22,
45:1, 45:5, 45:22,
46:1, 46:12, 46:14,
46:15, 46:17, 51:17,
52:17, 54:19, 54:20,
54:22, 55:5, 55:12,
55:23, 56:3, 56:11,
56:13, 56:14, 56:17,
73:2, 76:9, 76:13,

77:6
1404 [3] - 69:12,
69:15, 70:7
1491 [1] - 11:24
14cv-28-LPS [1] - 1:5
15,000 [1] - 39:10
1579 [3] - 7:7, 7:15,
7:24
16 [2] - 80:11, 83:6
18 [1] - 68:22
1897 [3] - 6:2, 8:8,
30:15
1942 [1] - 6:8
1957 [2] - 6:8, 12:9
1988 [11] - 6:12, 6:21,
10:6, 14:7, 24:17,
24:20, 25:6, 32:7,
46:4, 50:18, 71:23
1990 [6] - 6:9, 7:10,
24:15, 30:16, 77:5,
82:11
1:33 [1] - 1:14
1st [1] - 80:7

2

2 [12] - 17:6, 18:11,
22:8, 29:20, 30:7,
32:4, 40:17, 44:1,
46:11, 47:9, 56:24,
69:7
20 [2] - 7:10, 59:12
2011 [25] - 5:6, 5:9,
8:14, 10:20, 12:9,
13:4, 14:3, 15:4,
19:18, 31:3, 33:14,
42:9, 43:12, 44:5,
44:14, 46:3, 46:22,
47:6, 48:5, 48:7,
51:21, 77:3, 78:16,
79:2, 82:24
2013 [2] - 16:5, 52:23
2014 [6] - 1:14, 52:5,
52:6, 52:23, 85:11,
85:15
20th [3] - 5:17, 26:4,
77:14
22 [2] - 1:14, 85:11
22nd [1] - 85:15
28 [2] - 6:13, 6:17
280 [1] - 52:7
2B [1] - 1:15
2nd [1] - 7:7

3

3 [2] - 8:24, 32:8

3:10 [1] - 84:8

4

45 [1] - 4:12
486 [1] - 16:5
49 [1] - 63:4

5

5 [1] - 29:20
50 [4] - 62:12, 63:1,
76:1

6

6 [2] - 61:2, 72:8
638 [1] - 16:5

7

763 [1] - 16:23

8

844 [1] - 1:17
85 [1] - 85:9

9

90 [1] - 6:16
917 [1] - 7:7
95 [1] - 73:3
98 [1] - 75:7

A

A's [1] - 21:21
ab [1] - 54:11
ABA [1] - 51:6
ability [2] - 62:11,
78:11
able [4] - 36:21,
60:18, 61:22, 78:2
above-captioned [1] -
85:11
abrogate [1] - 25:7
absence [2] - 19:15,
57:18
absent [2] - 43:4,
58:16
absolute [1] - 61:9
absolutely [4] - 9:19,
49:11, 68:10, 68:23

absurd [1] - 72:24
absurdity [2] - 63:10,
66:20
academic [1] - 13:15
access [1] - 10:6
accident [1] - 24:17
according [1] - 12:18
accurate [1] - 85:10
accused [4] - 33:24,
61:23, 68:6, 70:13
acknowledge [7] -
22:23, 49:5, 59:18,
68:14, 69:1, 71:8,
71:11
acknowledged [3] -
15:11, 24:16, 51:13
acknowledges [2] -
52:16, 62:5
act [16] - 5:24, 8:11,
10:20, 12:10, 20:19,
23:12, 23:16, 35:5,
35:20, 35:24, 37:10,
39:22, 39:23, 72:19,
72:20, 76:10
Act [3] - 5:6, 8:14,
14:3
action [25] - 3:6,
15:23, 17:8, 17:9,
18:18, 19:13, 22:10,
22:17, 28:24, 32:6,
34:2, 35:24, 39:21,
40:13, 40:19, 41:18,
47:10, 50:6, 56:23,
57:4, 57:8, 61:21,
64:2, 68:8, 73:8
actions [1] - 77:1
activities [2] - 68:10,
77:9
activity [7] - 61:5,
64:8, 64:24, 72:11,
73:21, 75:19, 83:15
acts [8] - 18:6, 18:19,
36:12, 37:23, 40:2,
64:20, 73:9, 73:15
added [2] - 7:20,
21:15, 55:5
adding [1] - 45:18,
50:5
addition [10] - 19:12,
19:14, 21:15, 21:20,
21:23, 27:22, 31:17,
47:9, 56:22, 64:14
additional [6] - 4:18,
21:17, 31:14, 60:2,
77:23, 81:18
address [7] - 19:1,
42:13, 43:23, 63:15,
69:13, 69:15, 77:16
addressed [3] - 28:5,

43:9, 58:11
addressing [2] -
15:18, 52:24
adjudication [1] -
18:5
admission [1] - 64:24
admitted [1] - 52:23
admittedly [2] - 15:10,
36:19
adopted [2] - 6:2, 18:5
ADR's [1] - 36:13
advantage [1] - 74:16
advisement [2] -
81:17, 84:7
advocating [1] - 77:11
affairs [1] - 28:9
affiliation [1] - 61:4
afford [2] - 57:21,
59:23
afraid [1] - 60:17
afternoon [2] - 3:15,
4:2
agent [1] - 58:18
agree [3] - 49:12,
71:15, 82:20
akin [1] - 18:3
al [1] - 3:5
Alaska [1] - 18:2
alese [1] - 51:5
allegations [2] - 33:9,
68:5
alleged [7] - 17:17,
17:18, 39:21, 68:9,
73:3, 74:1, 75:24
allegedly [3] - 6:5,
38:6, 38:11
allocated [1] - 4:12
allotted [1] - 4:17
allowed [1] - 52:14
alluded [1] - 67:5
almost [1] - 6:16
alone [1] - 56:11
alter [2] - 49:3, 50:9
altering [1] - 43:15
alternative [2] - 17:12,
76:2
amended [2] - 30:11,
31:15
amending [1] - 24:6
amendment [12] -
14:7, 24:18, 24:21,
44:5, 44:7, 44:14,
45:10, 46:21, 46:23,
50:18, 51:19, 52:1
amendments [4] -
42:10, 43:12, 51:21,
78:16
amount [1] - 4:15

2

**analogous** [1] - 36:7
**analogy** [1] - 74:23
**analysis** [7] - 19:8, 35:19, 36:9, 45:11, 57:16, 66:5, 69:8
**Angeles** [2] - 32:19, 32:20
**answer** [8] - 20:12, 27:12, 46:20, 46:22, 63:5, 72:7, 73:6, 75:18
**answered** [2] - 46:8, 65:23
**anticipated** [1] - 41:14
**anticipating** [1] - 78:19
**antithetical** [1] - 33:2
**anyway** [1] - 42:12
**apart** [1] - 56:13
**apologize** [1] - 10:4
**APPEARANCES** [1] - 2:1
**appellate** [1] - 25:7
**applicability** [3] - 16:22, 17:1, 71:21
**applicable** [1] - 22:3
**application** [3] - 49:24, 55:24, 76:8
**applied** [5] - 13:23, 18:9, 40:12, 46:10, 57:20
**applies** [7] - 30:10, 44:18, 44:23, 45:14, 46:12, 46:24, 57:20
**apply** [16] - 12:12, 12:23, 17:3, 22:1, 24:4, 25:13, 29:24, 32:11, 40:20, 43:2, 44:6, 44:22, 46:15, 49:23, 54:17, 54:20
**appreciate** [1] - 79:16
**appropriate** [1] - 83:23
**approved** [1] - 30:17
**arguable** [1] - 18:16
**arguably** [2] - 22:6, 30:16
**argue** [7] - 17:12, 18:10, 21:18, 31:16, 32:14, 56:8, 66:13
**argued** [2] - 32:9, 33:19, 33:23, 51:9, 55:23
**arguing** [7] - 44:5, 44:21, 46:15, 46:16, 47:4, 55:20, 77:3
**argument** [68] - 3:3, 3:7, 3:20, 4:6, 4:13,

9:8, 10:16, 10:19, 10:23, 10:24, 11:11, 13:2, 13:3, 13:14, 13:19, 14:10, 15:10, 15:18, 21:12, 21:15, 21:17, 21:20, 21:22, 22:24, 24:3, 28:18, 28:19, 30:12, 32:23, 33:18, 34:6, 34:10, 35:8, 35:10, 41:7, 41:15, 42:5, 43:23, 44:20, 44:22, 48:8, 48:10, 48:14, 48:19, 49:7, 50:16, 51:11, 52:2, 53:15, 54:11, 54:12, 56:1, 58:3, 64:5, 65:2, 65:4, 65:7, 66:22, 70:3, 70:9, 71:8, 76:6, 76:8, 76:18, 77:18, 78:5
**arguments** [10] - 43:11, 43:10, 47:16, 47:24, 57:14, 69:2, 72:2, 78:6, 78:10, 78:18
**arise** [4] - 40:21, 68:9, 75:3, 75:19
**arised** [1] - 40:13
**arisen** [1] - 75:5
**arises** [3] - 37:6, 37:10, 40:7
**arising** [3] - 37:1, 37:19, 73:20
**Arkansas** [1] - 59:18
**ARSHT** [1] - 2:9
**articulate** [1] - 54:13
**artifact** [1] - 73:1
**aside** [1] - 65:6
**aspect** [1] - 26:11
**assembly** [1] - 63:1
**asserted** [1] - 44:4
**asserting** [4] - 32:16, 32:18, 73:17
**assessment** [2] - 43:16, 62:10
**associate** [1] - 4:6
**associated** [4] - 36:14, 36:16, 36:17, 66:20
**assume** [5] - 32:14, 35:8, 35:10, 35:18, 65:3
**assuming** [2] - 54:4, 78:24
**assumption** [1] - 36:5
**Atlantic** [13] - 11:4, 11:8, 11:19, 12:10, 17:4, 22:4, 27:7, 29:17, 31:5, 44:1,

46:11, 46:19, 69:7
**ATM** [1] - 8:11
**attachment** [1] - 82:14
**attended** [1] - 67:13
**attributed** [2] - 64:3, 64:19
**Aubrey** [1] - 67:8
**augment** [1] - 21:12
**authority** [3] - 24:22, 81:4, 81:16
**authorized** [1] - 62:21
**avail** [1] - 35:4
**availed** [1] - 74:18
**availment** [3] - 17:23, 18:20, 65:16
**avails** [1] - 72:18
**avoid** [1] - 59:20
**award** [3] - 38:10, 38:17, 39:1
**aware** [11] - 10:23, 13:4, 13:9, 15:2, 15:19, 16:15, 33:18, 34:24, 36:1, 43:8, 81:20
**ax** [1] - 12:14

## B

**background** [1] - 8:12
**banned** [1] - 13:15
**bar** [1] - 51:4
**barn** [1] - 62:2
**based** [6] - 6:19, 32:23, 34:21, 56:20, 64:21, 80:8
**basic** [1] - 13:2
**basis** [9] - 5:7, 18:12, 44:5, 45:2, 48:11, 59:23, 64:18, 73:11, 73:17
**Bauman** [1] - 58:5
**bearing** [1] - 43:4
**bears** [3] - 6:11, 29:18, 29:19
**became** [1] - 31:18
**BEFORE** [1] - 1:20
**began** [3] - 9:18, 20:22, 42:17
**begin** [1] - 4:22
**beginning** [12] - 9:10, 15:21, 16:1, 16:6, 16:8, 16:10, 19:16, 27:23, 49:2, 50:9, 53:12, 80:13
**begins** [2] - 16:24, 49:2
**begs** [2] - 44:23, 46:13

**behalf** [2] - 4:4, 42:17
**behind** [1] - 27:17
**Bentonville** [1] - 59:18
**best** [2] - 25:14, 49:16
**better** [1] - 20:1
**between** [10] - 6:8, 27:9, 29:11, 37:14, 45:4, 51:17, 61:4, 62:18, 65:15, 82:23
**Beverly** [26] - 33:3, 33:5, 33:15, 34:9, 34:15, 36:2, 37:18, 37:23, 43:15, 57:18, 58:2, 58:8, 58:9, 59:22, 60:22, 61:10, 61:16, 61:21, 61:24, 62:4, 68:3, 68:5, 69:2, 72:15, 74:22
**beyond** [1] - 62:20
**Bill** [1] - 4:7
**billions** [2] - 24:9
**binding** [1] - 30:21
**bit** [5] - 29:10, 47:15, 77:23, 78:11, 78:13
**blades** [2] - 67:18, 67:24
**Bosh** [2] - 67:8, 68:11
**bought** [1] - 35:15
**bound** [1] - 35:12
**brand** [1] - 63:10
**Brands** [2] - 3:4, 3:13
**BRANDS** [1] - 1:4
**bridge** [1] - 63:13
**brief** [10] - 8:23, 9:1, 32:8, 32:9, 33:15, 45:17, 49:12, 54:12, 75:22
**briefs** [1] - 78:14
**bring** [2] - 24:24, 77:1
**bringing** [1] - 61:24
**broadened** [1] - 16:1
**broadens** [1] - 16:10
**broader** [6] - 16:11, 21:9, 22:7, 31:18, 31:20, 49:3
**broadly** [1] - 18:10
**brought** [4] - 8:9, 10:18, 15:23, 41:21
**bulk** [1] - 62:1
**burden** [1] - 69:18
**BURKE** [1] - 1:20
**business** [12] - 6:1, 23:7, 23:13, 23:21, 36:15, 36:16, 44:9, 67:16, 74:19, 76:12, 76:21
**BY** [7] - 2:3, 2:6, 2:6,

2:10, 2:10, 2:13, 2:15

## C

**C's** [1] - 44:18
**C.A** [1] - 1:5
**calculus** [1] - 16:14
**California** [6] - 17:18, 18:2, 18:16, 33:9, 37:9, 60:10
**candid** [1] - 48:2
**candidly** [2] - 24:16, 71:1
**Candidly** [3] - 13:18, 19:22, 81:7
**cannot** [1] - 71:22
**captioned** [1] - 85:11
**careful** [1] - 6:11
**carefully** [1] - 45:3
**carried** [1] - 69:17
**carrier** [1] - 35:11
**carries** [1] - 55:19
**case** [122] - 6:10, 6:11, 8:8, 11:4, 11:8, 12:8, 12:15, 13:23, 13:24, 14:10, 15:5, 16:4, 18:8, 18:13, 20:17, 20:18, 22:10, 22:13, 23:16, 23:24, 25:3, 25:16, 27:13, 27:22, 28:17, 28:19, 29:4, 29:17, 30:8, 30:17, 32:10, 34:18, 36:2, 36:6, 36:8, 37:12, 37:16, 37:24, 38:1, 38:2, 38:9, 38:12, 40:10, 40:11, 42:2, 42:8, 42:18, 43:1, 43:4, 44:3, 44:4, 44:12, 44:13, 45:2, 45:9, 46:19, 47:4, 49:9, 52:5, 52:9, 52:12, 53:16, 56:2, 57:22, 57:23, 58:4, 58:5, 58:6, 58:17, 61:3, 61:10, 61:11, 61:17, 62:18, 63:16, 64:1, 64:4, 64:15, 64:16, 65:17, 67:8, 67:10, 67:14, 68:12, 68:14, 68:23, 69:6, 69:8, 72:3, 72:8, 72:24, 73:4, 73:5, 73:7, 73:10, 73:20, 74:7, 74:9, 74:21, 74:23, 75:4, 75:7, 75:9, 76:16,

76:18, 76:19, 77:2, 77:5, 78:4, 78:23, 80:5, 80:7, 80:19, 81:14, 81:21, 82:21, 83:10, 83:17, 83:19, 83:20
**cases** [53] - 5:19, 5:23, 6:17, 7:4, 11:23, 15:3, 16:15, 17:14, 17:24, 18:9, 19:4, 20:7, 20:16, 22:3, 22:18, 22:21, 23:2, 23:3, 24:8, 25:23, 25:24, 26:23, 27:1, 27:11, 29:23, 33:14, 33:19, 33:21, 34:8, 34:18, 35:1, 36:4, 37:3, 42:20, 43:11, 43:14, 43:21, 43:22, 46:6, 46:12, 46:22, 48:15, 51:14, 51:18, 51:20, 51:24, 58:10, 65:16, 67:6, 71:18, 81:10
**Castle** [1] - 85:2
**categorical** [1] - 26:17
**caused** [3] - 62:19, 74:10, 74:13
**CCR** [1] - 85:20
**center** [1] - 35:13
**century** [1] - 77:14
**Century** [2] - 5:17, 26:5
**CEO** [1] - 59:9
**certain** [3] - 27:3, 38:7, 49:23
**certainly** [14] - 10:2, 12:13, 14:9, 19:11, 20:17, 21:11, 22:6, 31:1, 35:2, 42:5, 51:14, 59:19, 60:21, 79:15
**CERTIFICATE** [1] - 85:5
**Certified** [1] - 85:7
**certify** [1] - 85:8
**cetera** [4] - 11:12, 24:12, 75:16, 79:13
**CFEG** [1] - 29:24
**chain** [1] - 67:21
**challenged** [1] - 7:10
**chambers** [2] - 82:1, 83:7
**change** [44] - 6:12, 10:20, 15:21, 15:22, 15:24, 16:6, 16:7, 16:9, 16:13, 16:17, 17:10, 19:11, 23:1, 24:7, 24:21, 24:24,

25:6, 25:9, 30:22, 41:23, 42:2, 45:11, 45:12, 46:20, 46:21, 47:22, 49:1, 49:8, 50:15, 50:21, 51:3, 53:17, 54:7, 54:8, 54:9, 54:13, 54:14, 54:17, 71:24, 79:1, 79:2, 82:23
**changed** [12] - 15:12, 19:2, 30:16, 33:4, 34:20, 34:23, 42:9, 43:12, 46:10, 47:11, 47:15, 69:6
**changes** [12] - 19:11, 19:18, 19:19, 19:20, 20:19, 28:13, 31:3, 44:4, 45:10, 47:5, 69:8, 78:16
**channel** [1] - 68:1, 68:8
**chapter** [8] - 6:23, 21:1, 21:2, 21:3, 21:6, 21:14, 22:8, 56:5
**characterization** [1] - 32:2
**check** [1] - 82:9
**Chicago** [1] - 70:16
**Chief** [7] - 15:7, 16:4, 20:17, 47:21, 52:21, 80:8, 81:20
**chief** [3] - 82:4, 83:5, 83:18
**choice** [1] - 69:18
**Christmas** [1] - 79:7
**CHRISTOPHER** [1] - 1:20
**Chumerra** [2] - 69:12, 71:7
**Cincinnati** [2] - 3:17, 42:16
**circuit** [1] - 34:14
**Circuit** [10] - 6:10, 7:10, 33:5, 34:17, 55:4, 55:9, 57:23, 57:24, 58:6, 69:3
**Circuit's** [3] - 8:5, 30:19, 44:8
**citation** [1] - 63:15
**cite** [5] - 33:22, 36:4, 51:20, 52:22, 78:2
**cited** [13] - 19:1, 19:10, 19:14, 19:15, 27:1, 29:17, 33:15, 54:7, 61:13, 65:2, 67:9, 68:11
**cites** [1] - 52:23
**citing** [2] - 7:15, 7:17

**citizenship** [1] - 41:20
**civil** [15] - 3:5, 15:23, 17:7, 17:9, 19:13, 22:10, 25:23, 32:6, 39:20, 41:18, 47:10, 50:6, 56:23, 57:4, 57:7
**claim** [9] - 32:16, 36:21, 37:5, 40:7, 41:1, 51:22, 75:3, 75:4, 75:19
**claimed** [1] - 58:20
**claims** [9] - 34:4, 37:15, 40:8, 40:20, 62:12, 64:12, 64:13, 66:17, 72:23
**Clarification** [3] - 5:6, 8:14, 14:3
**clause** [1] - 12:16
**clear** [4] - 27:9, 49:22, 50:20, 69:16
**clearer** [1] - 45:20
**clearly** [1] - 22:14
**client** [1] - 13:16
**closed** [2] - 30:2, 77:18
**closest** [1] - 36:6
**code** [1] - 10:7
**collection** [1] - 62:21
**column** [2] - 7:18, 7:24
**combination** [1] - 43:13
**COMBS** [31] - 2:6, 41:13, 42:14, 43:17, 43:20, 48:1, 48:21, 49:11, 50:13, 50:24, 52:8, 52:13, 53:2, 53:22, 54:4, 55:13, 55:21, 57:1, 57:15, 58:15, 60:7, 60:17, 61:14, 63:20, 65:23, 67:3, 69:21, 79:18, 80:1, 80:16, 80:23
**Combs** [5] - 3:18, 3:19, 41:12, 42:5, 42:15
**coming** [1] - 22:1
**comma** [2] - 7:21, 29:22
**comment** [1] - 42:11
**commentary** [2] - 14:5, 14:20
**commentators** [1] - 14:15
**commented** [4] - 13:6, 13:12, 16:9, 20:19
**comments** [1] - 43:20

**commerce** [4] - 58:1, 58:3, 59:5, 59:21
**commercially** [1] - 39:8
**commit** [1] - 39:23
**commits** [1] - 72:19
**committed** [10] - 5:24, 17:16, 17:18, 17:19, 18:6, 38:11, 38:18, 40:2, 73:13, 76:11
**communicate** [1] - 83:7
**community** [2] - 13:15, 14:4
**companies** [2] - 48:6, 77:10
**company** [2] - 60:10, 74:3
**Company** [1] - 24:1
**completely** [2] - 29:6, 46:13
**conceded** [1] - 57:18
**conceding** [1] - 71:22
**conceive** [1] - 33:2
**concentrated** [1] - 22:14
**concentrates** [1] - 39:7
**concerned** [1] - 14:24
**conclude** [1] - 30:9
**concluded** [2] - 58:2, 58:9
**conclusion** [2] - 35:21, 44:8
**conduct** [10] - 37:2, 40:7, 40:14, 58:18, 64:9, 64:10, 64:13, 64:15, 74:8, 75:15
**conducting** [1] - 58:18
**conduit** [1] - 64:14
**confess** [2] - 41:13, 52:8
**confirm** [2] - 68:3, 82:22
**conflict** [4] - 27:9, 29:3, 45:4, 56:14
**confronted** [1] - 49:8
**Congress** [11] - 6:21, 7:2, 7:19, 7:20, 7:23, 12:11, 19:19, 24:6, 46:1, 55:4, 55:7
**congress** [2] - 25:11, 26:1
**Congress'** [1] - 25:14
**congressional** [1] - 28:24

**connection** [5] - 18:16, 37:14, 68:12, 73:4, 77:9
**conservative** [1] - 77:13
**considered** [2] - 57:24, 58:7
**considering** [1] - 57:3
**constituted** [1] - 18:20
**constitutional** [3] - 36:5, 38:21, 73:16
**consumers** [1] - 61:23
**contact** [1] - 39:14
**context** [5] - 14:6, 31:20, 39:17, 52:1, 62:16
**continue** [1] - 34:8
**continues** [1] - 37:16
**contract** [1] - 12:17
**contrary** [3] - 14:20, 14:21, 27:10
**controlling** [2] - 20:3, 34:16
**controls** [2] - 30:12, 57:20
**controversial** [2] - 38:9, 77:12
**controversy** [1] - 61:5
**convenience** [1] - 70:15
**convenient** [1] - 10:13
**cooperating** [1] - 61:19
**copes** [1] - 82:14
**copies** [3] - 5:9, 5:11, 39:10
**copy** [3] - 8:19, 82:10, 82:12
**copyright** [1] - 30:1
**Corp** [1] - 21:11
**corporate** [2] - 46:9, 57:2
**CORPORATION** [1] - 1:10
**corporation** [6] - 6:23, 13:21, 23:6, 28:21, 29:1, 64:23
**corporations** [1] - 5:22
**correct** [17] - 9:20, 10:21, 11:2, 11:21, 16:18, 22:24, 23:11, 23:17, 23:23, 34:20, 35:9, 36:9, 48:13, 53:2, 55:13, 60:7, 72:6
**correctly** [1] - 23:18

**Costco** [1] - 67:21
**costly** [1] - 81:13
**Cottrell** [4] - 3:13, 3:16, 42:16, 83:2
**COTTRELL** [5] - 2:3, 3:14, 3:22, 83:3, 83:24
**couching** [1] - 44:20
**Counsel** [2] - 2:7, 2:16
**counsel** [12] - 3:10, 3:11, 3:12, 3:24, 4:1, 4:8, 4:11, 5:11, 51:13, 69:1, 71:13, 82:12
**country** [5] - 18:7, 22:16, 24:3, 35:23, 76:23
**County** [1] - 85:2
**couple** [5] - 15:3, 16:3, 19:11, 47:21, 79:11
**coupled** [2] - 12:10
**course** [5] - 28:1, 44:12, 44:17, 49:18, 63:5
**court** [19] - 3:6, 4:13, 4:18, 13:6, 21:7, 25:7, 31:11, 31:16, 36:19, 38:17, 39:1, 39:2, 48:3, 58:7, 63:2, 69:4, 73:7, 81:10, 84:6
**COURT** [92] - 1:1, 3:1, 3:21, 3:23, 4:9, 4:11, 5:1, 5:12, 7:11, 7:14, 8:3, 8:16, 9:2, 9:7, 9:12, 9:21, 9:24, 10:8, 10:11, 10:14, 10:22, 11:7, 11:14, 11:18, 12:5, 12:24, 13:11, 14:8, 15:2, 15:15, 19:3, 19:9, 20:5, 20:15, 21:2, 21:4, 22:23, 23:14, 24:5, 26:6, 27:21, 29:9, 30:21, 30:24, 31:6, 31:8, 32:22, 33:1, 33:17, 34:12, 41:3, 41:6, 41:11, 42:4, 43:6, 43:19, 47:1, 48:12, 48:23, 50:2, 50:20, 51:23, 52:11, 52:19, 53:7, 54:3, 55:1, 55:14, 56:19, 57:12, 58:13, 60:1, 60:8, 60:24, 63:14, 65:1, 67:1, 69:20,

69:22, 71:4, 75:21, 76:15, 77:15, 77:21, 79:23, 80:3, 80:17, 81:2, 81:15, 82:17, 83:8, 84:2
**Court** [64] - 1:20, 4:12, 5:4, 5:10, 6:7, 7:2, 8:15, 10:3, 10:4, 10:24, 11:4, 11:9, 11:10, 12:19, 13:5, 14:1, 15:3, 15:7, 17:13, 17:20, 17:24, 20:16, 24:19, 26:20, 27:20, 28:18, 28:22, 29:3, 30:9, 30:18, 30:22, 31:2, 32:1, 33:14, 33:21, 33:23, 34:18, 34:22, 35:7, 35:9, 36:4, 36:18, 37:4, 37:8, 37:21, 40:12, 44:6, 44:7, 47:12, 47:14, 47:17, 49:14, 57:19, 58:10, 67:7, 67:22, 70:1, 70:4, 72:10, 73:14, 74:20, 83:21, 85:7
**Court's** [6] - 5:5, 8:13, 12:8, 14:2, 14:12, 15:4
**Courtroom** [1] - 1:15
**Courts** [2] - 24:20, 33:20
**courts** [8] - 15:20, 16:3, 20:18, 21:4, 29:8, 47:22, 48:24, 68:15
**cover** [2] - 21:7, 64:11
**creation** [1] - 25:1
**creative** [1] - 72:1
**creativity** [2] - 51:13, 69:1
**crucial** [1] - 8:4
**current** [3] - 24:15, 34:13, 71:19
**Curry** [1] - 4:7
**CURRY** [1] - 2:10
**customer's** [1] - 18:22
**customers** [2] - 59:14, 68:20
**cut** [1] - 29:14
**cutting** [1] - 74:10

**D**

**d/b/a** [1] - 1:7
**DABNEY** [54] - 2:13, 4:23, 5:2, 5:16, 7:13, 7:16, 8:4,

8:21, 9:3, 9:11, 9:19, 9:22, 10:1, 10:9, 10:12, 10:21, 11:3, 11:13, 11:16, 12:3, 12:6, 13:8, 13:18, 14:18, 15:14, 16:19, 19:5, 19:22, 20:11, 20:24, 21:3, 21:22, 23:8, 23:23, 24:14, 26:16, 28:15, 29:16, 30:23, 31:1, 31:7, 31:24, 32:24, 33:12, 34:5, 34:24, 41:5, 41:9, 70:8, 71:11, 76:7, 76:19, 77:20, 81:7
**Dabney** [20] - 4:5, 4:22, 5:2, 5:15, 7:11, 8:16, 41:6, 43:7, 44:20, 44:24, 45:12, 50:3, 50:16, 55:3, 57:8, 57:17, 62:17, 69:11, 69:22, 77:16
**Dabney's** [2] - 50:17, 63:15
**damage** [2] - 32:17, 32:18
**damages** [2] - 18:14, 66:13
**dates** [1] - 24:15
**dealing** [1] - 14:23
**Debacor** [6] - 15:6, 16:4, 44:3, 44:12, 51:24, 52:11
**December** [3] - 1:14, 85:11, 85:15
**decide** [2] - 27:5, 82:4
**decided** [5] - 6:10, 9:16, 44:13, 74:21, 77:4
**decision** [8] - 11:2, 28:17, 34:15, 36:8, 63:16, 68:12, 68:22, 73:11
**decisions** [2] - 26:20, 43:3
**deemed** [4] - 6:24, 28:21, 35:15, 75:4
**default** [1] - 40:4
**defend** [1] - 75:14
**defendant** [14] - 24:4, 36:11, 38:22, 44:9, 45:6, 46:9, 49:7, 57:5, 58:24, 67:23, 70:21, 75:14, 76:21, 76:22
**Defendant** [20] - 4:4, 5:21, 5:23, 23:17,

23:19, 27:1, 51:15, 55:23, 58:24, 59:24, 60:3, 60:9, 63:21, 64:15, 64:16, 64:17, 67:17, 74:9, 74:11, 83:12
**Defendant's** [5] - 5:14, 69:17, 81:3, 82:18, 84:3
**defendant's** [2] - 23:6, 23:7
**Defendants** [11] - 1:11, 2:16, 3:8, 3:24, 4:21, 5:3, 43:1, 43:10, 51:16, 65:1, 68:6
**defendants** [5] - 22:21, 34:8, 48:4, 67:11, 67:15
**defense** [4] - 48:13, 51:13, 69:1
**define** [5] - 26:12, 46:14, 54:22, 56:10, 56:16
**defines** [2] - 45:21, 54:18
**definition** [11] - 29:7, 40:22, 44:18, 46:16, 46:17, 52:17, 55:24, 64:7, 64:10, 66:17, 73:23
**definitions** [1] - 41:22
**definitive** [2] - 49:17, 66:16
**definitively** [1] - 53:24
**degree** [1] - 12:4
**DELAWARE** [1] - 1:1
**Delaware** [7] - 1:17, 3:10, 3:24, 5:17, 5:22, 5:23, 13:21, 13:22, 17:19, 18:17, 18:21, 18:22, 35:14, 36:17, 36:19, 36:20, 36:24, 37:2, 37:11, 37:15, 37:23, 42:21, 48:6, 48:7, 49:15, 59:2, 59:4, 59:7, 59:11, 59:13, 59:14, 59:16, 59:17, 59:19, 59:20, 60:4, 60:11, 62:23, 63:2, 63:3, 63:4, 63:8, 63:9, 63:24, 64:1, 64:5, 64:7, 64:8, 64:11, 64:14, 64:19, 64:22, 64:22, 64:24, 65:5, 65:12, 65:19, 65:22, 66:1, 66:2, 66:3, 66:4, 67:17, 67:20,

67:22, 68:2, 68:7, 68:15, 68:16, 68:21, 73:5, 73:13, 73:24, 75:10, 75:14, 80:6, 85:1
**delivered** [1] - 75:10
**delivery** [1] - 35:11
**Demonstrative** [2] - 5:14, 82:19
**dep** [1] - 80:13
**deposition** [2] - 60:20, 62:15
**descending** [1] - 74:8
**described** [1] - 20:12
**design** [1] - 37:12
**despite** [2] - 39:13, 39:15
**detail** [1] - 78:11
**determines** [1] - 81:22
**determining** [1] - 66:18
**developers** [1] - 70:13
**development** [1] - 70:12
**Dicastro** [1] - 43:13
**dictum** [1] - 72:15
**difference** [6] - 15:20, 16:17, 19:7, 42:2, 54:8, 65:15
**different** [12] - 31:4, 31:21, 31:22, 36:12, 47:19, 53:19, 57:17, 59:10, 63:1, 63:18, 81:9
**DINSMORE** [1] - 2:5
**Dinsmore** [2] - 3:18, 42:15
**direct** [2] - 44:17, 66:4
**directions** [1] - 19:24
**directly** [7] - 32:1, 55:22, 59:2, 59:3, 60:3, 67:16
**disagrees** [1] - 70:1
**discovery** [2] - 80:13, 83:15
**discussed** [1] - 56:9
**discussion** [2] - 19:6, 24:23
**dismiss** [1] - 3:8
**dismissal** [3] - 5:7, 43:5, 64:17
**dismissed** [1] - 71:22
**dispositive** [2] - 13:24, 32:3
**dispute** [2] - 62:16, 80:5
**disputed** [2] - 37:20, 64:1

**distant** [1] - 58:24
**distinction** [1] - 62:17
**distributing** [1] - 68:18
**distribution** [4] - 35:12, 59:6, 68:1, 68:8
**distributor** [1] - 68:19
**district** [5] - 5:20, 34:1, 44:10, 52:4, 76:3
**DISTRICT** [2] - 1:1, 1:1
**District** [8] - 1:20, 13:6, 15:3, 15:4, 20:16, 24:20, 42:21, 52:5
**districts** [1] - 5:20
**diverse** [1] - 36:11
**diversity** [2] - 41:20, 71:18
**docket** [5] - 79:6, 80:12, 80:14, 81:5, 83:14
**doctrine** [1] - 39:5
**document** [1] - 16:23
**dollars** [1] - 24:9
**done** [4] - 6:15, 25:10, 71:6, 74:15
**Doors** [1] - 52:6
**doubt** [1] - 33:12
**dovetails** [1] - 40:21
**down** [2] - 56:16, 67:7
**dozens** [2] - 42:20, 48:5
**draw** [1] - 62:18
**due** [4] - 30:7, 34:19, 40:5, 57:21
**during** [2] - 26:4, 77:5

## E

**easily** [1] - 46:3
**East** [2] - 25:1, 77:8
**eastern** [1] - 52:4
**Eastern** [1] - 52:5
**easy** [1] - 9:13
**economy** [1] - 24:10
**effect** [4] - 15:16, 23:1, 27:24, 50:4
**effective** [4] - 23:12, 24:2, 76:12, 76:20
**effects** [1] - 18:10
**efficiently** [1] - 61:20
**effort** [1] - 68:21
**efforts** [1] - 82:7
**either** [8] - 8:22, 14:23, 23:5, 30:6,

43:9, 50:19, 57:17, 71:15
**election** [1] - 12:16
**electronically** [1] - 9:14
**Electronics** [2] - 68:13, 68:23
**elsewhere** [1] - 65:13
**email** [1] - 82:7
**emphasis** [2] - 70:18, 71:2
**emphasize** [1] - 40:9
**emphasized** [1] - 70:9
**employed** [1] - 70:23
**employees** [2] - 67:12, 71:1
**enacted** [1] - 27:16
**end** [6] - 13:24, 33:7, 33:9, 33:10, 42:5, 63:8
**End** [1] - 84:8
**endeavor** [1] - 81:19
**endorse** [1] - 51:15
**engage** [1] - 65:18
**engaged** [1] - 36:11
**engaging** [3] - 36:14, 36:16, 64:23
**enhancer** [1] - 37:9, 62:23, 63:6
**enjoins** [1] - 63:2
**entire** [5] - 22:10, 45:2, 56:14, 57:7, 69:6
**entirely** [1] - 30:3
**entirety** [1] - 45:8
**entity** [2] - 44:9, 68:18
**Eric** [2] - 3:18, 42:15
**ERIC** [1] - 2:6
**erstwhile** [1] - 38:4
**ESQ** [7] - 2:3, 2:6, 2:6, 2:10, 2:10, 2:13, 2:15
**essentially** [1] - 57:9
**establish** [2] - 37:1, 58:23
**established** [8] - 6:1, 23:21, 24:2, 26:19, 39:5, 68:1, 68:7, 76:12
**establishes** [1] - 56:12
**et** [5] - 3:5, 11:12, 24:12, 75:16, 79:13
**events** [2] - 18:14, 22:16
**everywhere** [2] - 35:23, 38:18
**evidence** [3] - 67:11,

67:15, 70:20
**exact** [3] - 28:18, 28:19, 49:6
**exactly** [6] - 7:9, 9:11, 11:5, 16:20, 25:9, 78:14
**example** [6] - 17:14, 17:15, 23:17, 47:6, 66:15, 66:20
**except** [21] - 7:5, 7:6, 7:20, 9:18, 11:3, 12:11, 25:17, 26:7, 26:14, 27:8, 27:22, 32:4, 41:20, 45:13, 47:7, 50:8, 53:13, 53:18, 54:6, 54:15, 55:5
**exception** [8] - 7:22, 25:10, 25:11, 25:12, 25:19, 26:1, 55:6, 71:19
**exclude** [1] - 68:21
**excluded** [1] - 46:1
**excluding** [1] - 55:12
**exclusive** [1] - 26:22
**exhibit** [1] - 75:8
**Exhibit** [2] - 5:15, 82:19
**exist** [1] - 28:2
**existed** [3] - 42:7, 71:23, 77:14
**existence** [1] - 73:15
**existing** [1] - 25:8
**exists** [2] - 30:20, 31:19
**expected** [1] - 24:11
**explain** [2] - 61:11, 78:8
**explains** [1] - 22:19
**explanation** [1] - 25:20
**explicit** [1] - 33:6
**exploiting** [1] - 39:9
**exposed** [1] - 40:1
**expressly** [2] - 56:2, 62:5
**extent** [7] - 4:17, 20:18, 21:10, 28:4, 35:14, 48:24, 65:7

## F

**face** [1] - 70:10
**facility** [1] - 63:1
**fact** [19] - 11:18, 25:3, 31:19, 37:4, 38:10, 45:3, 45:11, 48:8, 48:18, 49:20, 52:14,

53:8, 53:16, 53:17, 59:17, 67:14, 67:21, 77:12, 82:19
**factors** [2] - 69:15, 69:16
**facts** [2] - 58:17, 74:2
**fails** [1] - 54:11
**fair** [6] - 27:15, 30:3, 50:24, 76:4, 79:9
**fairness** [1] - 60:19
**fairplay** [2] - 38:23, 39:12
**falls** [1] - 17:22
**familiar** [3] - 52:9, 52:10, 67:9
**fan** [1] - 61:23
**Fan** [22] - 33:3, 33:5, 33:15, 34:9, 34:16, 36:2, 37:18, 37:24, 43:15, 57:18, 58:8, 58:9, 59:22, 60:22, 61:10, 61:16, 62:4, 68:4, 68:5, 69:3, 72:15, 74:22
**fans** [1] - 33:7
**far** [11] - 10:22, 11:2, 13:4, 14:23, 17:21, 35:19, 43:7, 54:13, 63:13, 70:16, 77:11
**faulted** [1] - 54:11
**Fed** [3] - 33:4, 34:13, 34:17
**Federal** [20] - 5:5, 6:10, 7:7, 7:9, 8:5, 8:13, 10:24, 11:1, 13:5, 13:6, 14:2, 30:19, 33:20, 44:8, 55:4, 55:9, 57:23, 58:6, 69:3
**few** [3] - 3:2, 52:21, 67:1
**field** [1] - 40:16
**fighting** [1] - 63:21
**file** [1] - 38:16
**filed** [3] - 3:8, 43:5, 80:7
**fine** [1] - 66:6
**FINGER** [1] - 2:3
**firm** [2] - 3:18, 68:16
**first** [17] - 3:3, 4:20, 5:5, 10:18, 14:24, 15:5, 16:20, 17:5, 24:19, 39:17, 42:18, 43:18, 44:2, 51:9, 56:1, 79:16, 79:23
**five** [4] - 4:15, 41:7, 59:10
**fixture** [1] - 26:3
**Flint** [1] - 38:8

**flow** [1] - 76:5
**flunk** [1] - 32:21
**focus** [1] - 35:5
**focused** [3] - 31:13, 31:17, 35:2
**focusing** [2] - 31:12, 52:12
**fold** [2] - 21:23, 78:1
**folks** [1] - 84:4
**follow** [1] - 26:21
**followed** [2] - 18:15, 18:21
**following** [4] - 15:8, 17:20, 45:20, 49:13
**follows** [1] - 49:14
**FOOD** [1] - 1:7
**Food** [2] - 3:4, 3:13
**FOODS** [1] - 1:3
**Foods** [1] - 3:17
**footnote** [11] - 8:24, 11:9, 15:5, 22:4, 29:20, 32:8, 44:1, 46:11, 61:2, 69:7, 72:8
**FOR** [1] - 1:1
**forced** [1] - 75:24
**Forco** [4] - 12:8, 27:18, 28:19, 29:4
**Ford** [1] - 24:1
**foregoing** [1] - 85:9
**foreign** [4] - 35:6, 63:22, 64:3, 73:10
**forgive** [1] - 20:20
**form** [2] - 36:9, 61:4
**former** [1] - 71:1
**forth** [1] - 10:18
**forum** [13] - 18:6, 18:7, 40:8, 40:14, 61:6, 61:17, 61:20, 69:18, 72:12, 72:20, 73:21, 75:5, 75:20
**forum's** [1] - 12:16
**forward** [4] - 3:4, 33:11, 55:19, 80:20
**founded** [1] - 41:19
**four** [1] - 33:13
**frankly** [1] - 58:7
**Fred** [1] - 3:15
**FREDERICK** [1] - 2:3
**front** [3] - 20:21, 53:9, 82:2
**full** [3] - 9:4, 9:5, 14:14
**fullness** [1] - 25:4
**fully** [3] - 14:11, 38:1, 51:10
**funny** [1] - 42:17

# G

**Geloff** [1] - 62:22
**general** [10] - 4:8, 6:13, 11:15, 11:17, 11:24, 12:7, 15:11, 26:2, 49:24, 56:2
**generally** [3] - 20:10, 29:22, 46:13
**Georgia** [2] - 58:18, 58:19
**given** [4] - 25:20, 27:6, 27:7, 58:4
**Goodyear** [2] - 40:11, 58:4
**governed** [2] - 27:11, 28:21
**governs** [3] - 29:21, 54:16, 56:11
**Graham** [4] - 4:1, 4:3, 79:14, 82:5
**GRAHAM** [5] - 2:10, 4:2, 4:10, 79:15, 82:6
**Graphic** [2] - 52:13, 65:16
**graphic** [1] - 52:18
**Graphics** [1] - 44:12
**grind** [1] - 12:15
**grounded** [1] - 74:24
**grounds** [1] - 74:22
**Group** [2] - 3:4, 3:13
**GROUP** [2] - 1:3, 1:8
**guess** [5] - 31:21, 38:5, 65:14, 79:7, 80:18
**guys** [1] - 79:17

# H

**hampered** [1] - 53:8
**Hampshire** [12] - 38:9, 38:10, 38:12, 38:13, 38:15, 38:16, 38:17, 38:24, 39:1, 39:9, 39:13, 39:15
**hand** [4] - 5:9, 7:18, 82:12, 85:15
**handed** [4] - 8:14, 56:16, 67:7, 82:18
**handle** [1] - 14:14
**handling** [1] - 81:10
**happy** [2] - 53:5, 84:5
**harm** [4] - 62:2, 62:3, 62:20, 62:22
**harmony** [1] - 61:10
**head** [1] - 5:12

**headed** [1] - 16:21
**headquartered** [1] - 74:4
**headquarters** [1] - 70:15
**hear** [6] - 28:2, 36:21, 41:11, 69:10, 72:6, 81:24
**heard** [3] - 51:7, 51:8, 78:4
**hearing** [2] - 66:10, 66:15
**hEARTLAND** [1] - 2:15
**HEARTLAND** [1] - 1:7, 1:7, 1:10
**Heartland** [11] - 3:5, 4:4, 4:8, 18:21, 45:1, 45:22, 59:8, 59:9, 59:12, 64:23, 74:3
**Heartland's** [1] - 75:23
**heavily** [1] - 39:3
**heavy** [1] - 69:17
**Heine** [1] - 10:6
**held** [10] - 6:12, 16:23, 25:5, 25:6, 26:21, 27:2, 67:22, 73:12, 73:14, 74:17
**help** [1] - 45:15
**helpful** [2] - 5:10, 9:12
**hence** [1] - 14:8
**hereby** [1] - 85:8
**hereunto** [1] - 85:14
**Hills** [22] - 33:3, 33:15, 34:15, 36:2, 37:18, 37:24, 43:15, 57:18, 58:2, 58:8, 58:9, 59:22, 60:22, 61:10, 61:16, 62:4, 68:4, 68:5, 69:2, 72:15, 74:22
**hills** [2] - 33:5, 34:9
**historical** [1] - 29:7
**historically** [1] - 27:4
**history** [13] - 19:17, 19:23, 20:4, 20:7, 20:14, 22:20, 27:17, 28:17, 49:16, 50:4, 56:21, 78:15, 78:18
**hold** [1] - 64:8
**holding** [5] - 18:12, 30:14, 33:2, 45:9, 46:5
**holdings** [2] - 55:22, 56:8
**Holdings** [46] - 6:9,

6:11, 6:18, 7:1, 7:9, 8:6, 8:20, 9:16, 11:21, 12:2, 12:11, 16:12, 19:1, 19:8, 21:7, 21:11, 25:3, 25:10, 25:13, 28:10, 30:17, 31:11, 31:16, 42:8, 45:2, 45:3, 45:9, 45:24, 46:5, 46:6, 46:18, 46:19, 46:23, 50:22, 52:22, 54:17, 54:18, 54:23, 55:3, 56:15, 57:11, 69:8, 78:4, 78:23, 82:21
**Holdings'** [1] - 24:16
**holiday** [1] - 79:21
**holidays** [2] - 79:12, 84:6
**home** [1] - 76:3
**honestly** [1] - 20:12
**Honor** [38] - 3:15, 4:3, 7:17, 8:1, 9:4, 13:9, 14:19, 19:22, 20:13, 23:11, 27:5, 29:5, 34:11, 35:1, 41:10, 41:13, 44:2, 45:18, 52:9, 53:3, 53:23, 57:22, 61:15, 66:9, 67:4, 67:9, 68:11, 69:21, 71:12, 71:16, 72:8, 80:2, 81:7, 82:6, 83:3, 84:1
**honor** [1] - 4:24
**Honor's** [3] - 3:19, 40:17, 72:7
**HONORABLE** [1] - 1:20
**hook** [1] - 64:22
**hope** [3] - 60:20, 70:17, 74:20
**housed** [1] - 63:24
**HUBBARD** [1] - 2:12
**Hubbard** [2] - 4:5, 5:3
**huge** [1] - 24:7
**Hughes** [2] - 4:5, 5:3
**HUGHES** [1] - 2:12
**hundreds** [2] - 48:5, 48:14, 48:15

# I

**idea** [2] - 63:7, 76:24
**identified** [3] - 70:11, 70:22, 70:24
**identify** [3] - 3:11, 5:13, 60:19
**identifying** [1] - 30:1

**III** [1] - 2:3
**Illinois** [2] - 39:2, 75:16
**impact** [17] - 15:17, 19:20, 26:6, 26:10, 26:12, 28:13, 43:15, 47:18, 48:14, 49:19, 50:21, 51:6, 51:22, 58:1, 58:8, 76:17, 78:18
**impeding** [1] - 79:21
**implicit** [1] - 33:5
**implicitly** [1] - 51:20, 52:2, 52:16
**import** [2] - 45:8, 77:24
**important** [6] - 6:18, 20:9, 26:3, 38:1, 38:12, 44:19
**impression** [3] - 15:1, 34:5, 42:19
**improper** [2] - 5:8, 12:17
**IN** [2] - 1:1, 85:14
**Inc** [1] - 52:6
**inception** [1] - 71:20
**incidents** [1] - 37:6
**included** [1] - 54:5
**includes** [2] - 17:6, 45:22
**including** [9] - 15:4, 16:3, 20:17, 21:8, 26:13, 33:22, 34:18, 45:22, 67:7
**inclusive** [2] - 20:9, 85:9
**inconclusive** [1] - 20:4
**inconsistent** [1] - 54:24
**incorporated** [5] - 5:21, 5:22, 23:19, 48:6, 63:24
**incorporates** [1] - 57:10
**incorporation** [3] - 23:10, 29:2, 76:10
**indeed** [1] - 34:7
**independent** [1] - 18:12
**Indiana** [12] - 13:20, 17:17, 18:15, 23:22, 62:24, 63:7, 70:5, 75:14, 76:15, 76:16, 76:17, 81:8
**Indianapolis** [6] - 35:11, 37:13, 70:14, 70:16, 70:22, 74:4

**induces** [1] - 72:20
**industrial** [1] - 77:9
**Industrial** [1] - 52:6
**inefficient** [1] - 80:21
**inflicted** [1] - 62:3
**information** [1] - 82:8
**informs** [2] - 46:17, 52:17
**infringe** [1] - 75:17
**infringement** [33] - 5:24, 6:5, 8:11, 22:22, 23:12, 23:16, 33:8, 34:2, 35:6, 35:16, 35:20, 36:1, 36:12, 36:20, 36:23, 37:15, 37:23, 39:21, 39:23, 40:2, 48:5, 63:17, 63:18, 65:9, 68:9, 72:19, 72:20, 73:9, 73:16, 75:24, 76:1, 76:3, 76:11
**infringements** [8] - 17:16, 17:17, 17:18, 35:22, 73:4, 73:12, 73:18, 73:22
**infringing** [4] - 6:6, 62:9, 63:3, 63:9
**Ingram** [3] - 85:7, 85:19, 85:20
**injure** [1] - 74:13
**injury** [7] - 22:13, 22:14, 58:20, 58:22, 62:11, 74:10, 74:12
**inquiry** [1] - 63:11
**insisted** [1] - 40:24
**installations** [1] - 76:23
**instances** [2] - 33:19, 33:24
**instructions** [1] - 18:22
**insufficient** [2] - 58:23, 64:11
**intended** [6] - 7:2, 7:23, 46:1, 50:15, 51:4, 55:7
**intending** [2] - 24:7, 70:3
**intends** [1] - 68:16
**intent** [1] - 25:14
**intentionally** [1] - 6:14
**interacted** [1] - 14:15
**interest** [2] - 61:19, 79:21
**interested** [1] - 79:19
**interfere** [1] - 79:12
**intermediate** [1] -

25:7
**interplay** [1] - 51:16
**interpretation** [6] - 27:10, 28:24, 30:19, 57:19, 63:12, 75:12
**interpreted** [2] - 11:6, 29:8
**interpreting** [1] - 65:17
**interprets** [1] - 11:5
**interval** [1] - 81:22
**introduction** [1] - 12:21
**introductory** [1] - 9:17
**involved** [2] - 70:12, 77:10
**IP** [4] - 14:4, 22:18, 36:10, 73:18
**ipad** [1] - 54:1
**issue** [23] - 10:19, 13:9, 13:11, 14:16, 14:24, 15:9, 28:15, 29:10, 30:5, 42:10, 44:15, 63:19, 65:11, 68:17, 71:7, 73:9, 75:6, 75:9, 77:22, 78:12, 80:11, 81:5, 81:12
**issues** [6] - 30:8, 38:7, 42:23, 77:17, 78:21, 80:15
**itself** [4] - 47:14, 56:3, 56:6, 74:18

## J

**James** [1] - 5:2
**JAMES** [1] - 2:13
**January** [1] - 79:24
**Jersey** [2] - 74:11, 74:19
**Jim** [1] - 4:5
**joined** [1] - 42:16
**judge** [4] - 47:5, 82:4, 83:5, 83:18
**Judge** [17] - 1:20, 7:8, 15:4, 15:7, 16:4, 18:24, 20:18, 22:3, 36:7, 47:3, 47:21, 52:21, 63:15, 73:21, 77:4, 80:8, 81:20
**judges** [1] - 74:8
**judgment** [2] - 23:10, 27:19
**judicial** [4] - 14:21, 14:22, 43:8, 44:10
**Judicial** [1] - 11:1
**July** [1] - 80:7

**juris** [2] - 34:22, 40:6
**Jurisdiction** [3] - 5:6, 8:13, 14:2
**jurisdiction** [55] - 7:1, 17:7, 18:1, 18:17, 18:19, 22:9, 29:10, 32:20, 32:23, 34:3, 36:5, 36:20, 37:3, 37:5, 37:7, 37:22, 40:18, 41:2, 41:19, 42:22, 43:3, 43:16, 44:11, 44:16, 46:9, 52:15, 53:6, 57:2, 57:4, 57:5, 57:10, 57:14, 58:12, 58:23, 59:23, 61:3, 62:10, 62:14, 63:10, 63:21, 64:4, 64:18, 66:9, 66:22, 67:6, 67:23, 69:5, 70:2, 72:11, 72:22, 73:8, 73:15, 73:17, 73:19
**jurisdictional** [3] - 57:21, 66:5, 81:12
**jurisdictions** [2] - 76:2, 77:7
**jurists** [1] - 14:14
**justice** [2] - 38:23, 39:12
**Justice** [5] - 12:13, 25:19, 27:6, 29:19, 32:2
**justification** [1] - 75:13

## K

**Keaton** [8] - 18:8, 37:24, 38:2, 38:16, 62:18, 74:23, 75:4
**keep** [2] - 4:13, 63:5
**kind** [6] - 28:8, 55:11, 60:5, 65:3, 69:24, 78:1
**kinds** [1] - 63:17
**King** [1] - 1:17
**knowing** [1] - 68:18
**knowledge** [5] - 10:17, 13:8, 14:4, 47:20, 59:6
**knowledgeable** [1] - 70:11
**known** [2] - 7:22, 55:7
**knows** [1] - 59:8
**Kraft** [5] - 3:4, 3:13, 3:17, 3:20, 42:17
**KRAFT** [1] - 1:3
**KSR** [2] - 72:3, 72:4

## L

**lack** [1] - 64:18
**landscape** [2] - 34:20, 47:11
**language** [33] - 15:12, 16:1, 16:10, 17:6, 17:9, 18:11, 19:14, 19:16, 20:10, 20:21, 21:21, 22:8, 22:12, 25:12, 25:13, 31:14, 31:17, 32:5, 45:19, 45:21, 45:24, 47:15, 49:1, 49:22, 51:11, 51:12, 53:9, 53:13, 53:14, 55:17, 56:4, 56:6, 56:22
**large** [1] - 77:6
**larger** [1] - 76:22
**Larry** [1] - 38:8
**Lashney's** [1] - 63:15
**Lashum** [2] - 73:22, 77:4
**Lashum's** [1] - 36:7
**last** [6] - 10:14, 31:6, 33:16, 68:13, 69:10, 75:21
**lastly** [1] - 56:20
**law** [47] - 5:18, 6:21, 7:6, 9:18, 12:12, 14:5, 18:2, 18:21, 25:15, 25:17, 26:8, 26:15, 27:9, 27:23, 28:17, 30:15, 30:22, 32:4, 34:13, 34:18, 38:15, 39:4, 39:18, 39:20, 40:4, 41:21, 45:13, 47:8, 50:8, 53:14, 53:19, 54:6, 54:15, 57:23, 58:4, 58:10, 60:22, 62:8, 65:15, 65:17, 68:4, 69:3, 69:4, 72:4, 72:6, 72:19, 77:3
**laws** [2] - 35:4, 74:17
**lawsuits** [1] - 8:9
**LAYTON** [1] - 2:3
**Layton** [1] - 3:16
**lead** [2] - 27:10, 80:3
**leading** [1] - 3:10
**leads** [4] - 47:7, 53:18, 66:19, 76:8
**leap** [1] - 35:21
**least** [3] - 31:2, 41:7, 51:20
**leave** [6] - 58:13, 58:15, 61:1, 66:8, 83:13, 83:20

**led** [1] - 8:7
**left** [1] - 67:2
**legal** [2] - 6:15, 57:16
**legislative** [13] - 19:17, 19:23, 20:3, 20:7, 20:14, 23:9, 25:9, 27:19, 49:16, 50:4, 56:21, 78:15, 78:18
**legitimate** [1] - 54:9
**lend** [1] - 70:5
**length** [1] - 61:3
**letter** [3] - 78:20, 78:22, 79:11
**letters** [2] - 82:15, 82:22
**letting** [1] - 82:1
**LG** [2] - 68:13, 68:23
**liability** [1] - 40:1
**liable** [3] - 18:9, 73:12, 75:2
**liabled** [1] - 38:6
**liables** [2] - 38:11, 38:18
**liablous** [1] - 62:19
**life** [1] - 26:2
**light** [4] - 19:18, 37:18, 41:8, 57:6
**likewise** [1] - 48:7
**limit** [1] - 7:3
**limited** [1] - 66:22
**limits** [1] - 66:13
**line** [6] - 7:19, 8:1, 10:6, 24:13, 63:4, 66:6
**lines** [3] - 50:5, 63:1, 63:5
**liquid** [2] - 37:9, 62:23, 63:6
**literally** [1] - 56:21
**litigatable** [1] - 35:24
**litigate** [1] - 34:8
**litigated** [2] - 22:17, 34:2
**litigating** [1] - 61:20
**litigation** [1] - 26:4
**litigations** [1] - 77:7
**lived** [2] - 38:4, 38:5
**lives** [1] - 38:6
**living** [1] - 73:2
**LLC** [5] - 1:4, 1:7, 3:4, 3:5, 3:13
**LLP** [3] - 2:5, 2:9, 2:12
**located** [1] - 70:23
**logic** [2] - 37:18, 46:5
**long-standing** [1] - 28:23
**look** [15] - 9:8, 9:9,

21:15, 21:24, 25:16, 45:11, 45:16, 47:5, 49:5, 49:16, 54:21, 54:24, 61:8, 65:8, 75:8
**looked** [2] - 8:19, 49:1
**looking** [4] - 21:10, 55:10, 81:5, 83:14
**Los** [2] - 32:19, 32:20
**losses** [1] - 39:2
**lynch** [2] - 18:8

## M

**machine** [2] - 8:11, 74:13
**machinery** [1] - 74:10
**magazine** [4] - 38:3, 38:5, 38:7, 39:10
**magnitude** [2] - 60:14, 60:15
**maintain** [2] - 7:3, 25:11
**maintained** [3] - 5:24, 7:23, 55:8
**major** [1] - 71:21
**manifest** [1] - 63:11
**manufacture** [1] - 18:15
**manufactured** [2] - 37:13, 67:12
**Marine** [13] - 11:4, 11:8, 11:19, 12:10, 17:4, 22:4, 27:7, 29:17, 31:5, 44:1, 46:11, 46:20, 69:7
**mark** [1] - 5:14
**market** [2] - 39:9, 68:16
**marketed** [1] - 74:15
**Markman** [2] - 66:10, 66:15
**Marshall** [1] - 8:10
**mart** [1] - 35:12
**Mary** [1] - 4:3
**MARY** [1] - 2:10
**material** [1] - 42:2
**matter** [6] - 3:4, 38:15, 69:9, 69:19, 71:5, 85:12
**maximum** [1] - 33:23
**mean** [5] - 26:8, 26:23, 28:12, 35:3, 62:12
**meaning** [4] - 17:23, 29:7, 30:4, 54:14
**means** [9] - 10:22, 16:7, 21:23, 23:1,

25:8, 28:7, 35:22, 49:18, 54:19
**meant** [5] - 19:19, 21:13, 27:24, 56:22, 62:2
**meantime** [1] - 79:3
**meet** [3] - 32:13, 69:17, 73:23
**mention** [1] - 69:11
**mentioned** [2] - 16:5, 19:12
**mere** [1] - 58:22
**merely** [1] - 41:23
**met** [1] - 22:11
**metal** [1] - 74:9
**Michigan** [3] - 18:24, 20:17, 52:5
**might** [7] - 5:10, 8:10, 19:20, 26:12, 59:19, 63:16, 70:4
**mind** [1] - 51:24
**minimal** [1] - 39:14
**minimum** [2] - 42:6, 60:15
**minutes** [3] - 4:15, 41:7, 67:2
**misuse** [1] - 36:21
**modern** [2] - 17:24, 36:3
**Monday** [1] - 1:14
**money** [1] - 66:3
**month** [2] - 39:11, 68:13
**MORRIS** [1] - 2:9
**Morris** [1] - 4:3
**most** [11] - 5:16, 5:21, 18:18, 26:4, 34:14, 37:14, 39:6, 40:8, 72:23, 73:3, 77:14
**motion** [16] - 3:7, 4:21, 5:4, 27:6, 35:7, 35:17, 36:23, 43:5, 73:24, 74:13, 80:9, 81:16, 82:2, 83:2, 83:18, 84:7
**motions** [2] - 38:22, 39:12
**Motor** [1] - 24:1
**move** [2] - 41:15, 53:5
**moving** [1] - 71:20
**MR** [86] - 3:14, 3:22, 4:23, 5:2, 5:16, 7:13, 7:16, 8:4, 8:21, 9:3, 9:11, 9:19, 9:22, 10:1, 10:9, 10:21, 11:3, 11:13, 11:16, 12:3, 12:6, 13:8, 13:18,

14:18, 15:14, 16:19, 19:5, 19:22, 20:11, 20:24, 21:3, 21:22, 23:8, 23:23, 24:14, 26:16, 28:15, 29:16, 30:23, 31:1, 31:7, 31:24, 32:24, 33:12, 34:5, 34:24, 41:5, 41:9, 41:13, 42:14, 43:17, 43:20, 48:1, 48:21, 49:11, 50:13, 50:24, 52:8, 52:13, 53:2, 53:22, 54:4, 55:13, 55:21, 57:1, 57:15, 58:15, 60:7, 60:17, 61:14, 63:20, 65:23, 67:3, 69:21, 70:8, 71:11, 76:7, 76:19, 77:20, 79:18, 80:1, 80:16, 80:23, 81:7, 83:3, 83:24
**MS** [5] - 4:2, 4:10, 10:12, 79:15, 82:6
**multiple** [4] - 45:18, 51:18, 63:22, 73:9
**must** [1] - 31:2

# N

**name** [6] - 15:5, 36:10, 36:13, 36:15, 36:17, 36:22
**narrower** [2] - 21:20, 22:6
**narrowing** [1] - 17:10
**nation** [1] - 38:18
**national** [1] - 59:5
**nationwide** [1] - 75:24
**natural** [1] - 12:18
**nature** [1] - 22:18
**necessarily** [2] - 26:21, 26:23
**necessary** [1] - 37:1
**need** [1] - 74:20
**needs** [1] - 17:13
**Nevada** [1] - 58:19
**never** [7] - 10:23, 11:1, 30:16, 30:17, 58:19, 64:18, 77:1
**nevertheless** [3] - 47:17, 70:4, 74:14
**new** [11] - 12:21, 17:6, 18:11, 21:8, 22:8, 25:1, 32:4, 40:17, 47:9, 63:10
**New** [19] - 36:13, 38:6, 38:8, 38:10, 38:12, 38:13, 38:15, 38:16,

38:23, 38:24, 39:1, 39:9, 39:13, 39:14, 74:11, 74:19, 79:7, 85:2
**Nicastro** [8] - 33:20, 34:19, 40:10, 57:24, 58:5, 58:6, 58:8, 74:7
**nicely** [1] - 40:21
**Nichols** [1] - 4:3
**NICHOLS** [1] - 2:9
**niscio** [1] - 54:11
**non** [7] - 18:21, 37:22, 48:6, 64:5, 64:6, 64:8, 68:15
**nonetheless** [1] - 12:17
**norm** [1] - 76:13
**Notary** [1] - 85:8
**note** [2] - 48:3, 49:13
**noted** [7] - 15:20, 16:6, 17:6, 24:12, 45:18, 47:14, 47:22
**notes** [1] - 85:10
**nothing** [15] - 19:2, 39:22, 45:10, 46:11, 49:18, 49:20, 50:13, 51:8, 53:19, 54:23, 58:21, 59:20, 61:9, 69:6, 76:16
**notice** [1] - 80:11
**noticed** [1] - 82:7
**notify** [1] - 83:5
**notion** [1] - 51:21
**novel** [2] - 42:24, 51:10
**nullify** [1] - 29:6
**number** [2] - 3:6, 18:19

# O

**O'Connor** [1] - 4:7
**O'CONNOR** [1] - 2:15
**observation** [1] - 42:18
**obvious** [1] - 45:6
**obviously** [8] - 14:12, 29:12, 42:16, 44:3, 54:11, 61:17, 81:20, 82:9
**obviousness** [1] - 72:4
**occur** [1] - 62:3
**occurred** [2] - 36:1, 75:15
**occurrence** [2] - 61:6, 72:12

**occurring** [2] - 35:23, 37:10
**occurs** [1] - 65:13
**OF** [2] - 1:1, 85:5
**offend** [1] - 39:11
**offered** [1] - 67:17
**office** [3] - 13:19, 82:8, 82:10
**offices** [1] - 67:12
**Ohio** [1] - 3:17
**old** [1] - 53:9
**Oleto** [5] - 12:14, 22:3, 25:20, 27:6, 29:19
**Oleto's** [1] - 32:2
**once** [4] - 26:21, 42:5, 53:23, 76:4
**one** [38] - 8:18, 13:14, 13:16, 15:6, 15:7, 17:14, 19:3, 19:10, 20:19, 31:16, 32:16, 37:6, 37:20, 38:13, 40:7, 41:1, 43:9, 43:21, 47:12, 48:10, 51:4, 52:15, 60:19, 63:23, 66:23, 67:3, 67:20, 69:10, 69:23, 71:9, 72:17, 76:8, 77:17, 78:1, 79:1, 80:13, 80:14, 83:4
**ones** [2] - 40:11, 60:3
**open** [2] - 29:24, 72:16
**opening** [3] - 8:23, 9:1, 32:9
**operates** [1] - 56:10
**opinion** [8] - 7:9, 13:6, 18:24, 29:20, 29:21, 43:9, 47:21, 52:20
**opinions** [3] - 14:21, 14:22, 52:22
**opponent** [1] - 73:6
**opponents** [2] - 37:8, 72:1
**opportunities** [1] - 48:17
**opportunity** [2] - 62:5, 78:7
**oppose** [1] - 83:12
**opposed** [2] - 49:24, 83:13
**opposing** [2] - 5:11, 71:13
**opposite** [1] - 19:24
**oral** [7] - 3:3, 3:7, 4:12, 77:17, 77:22, 79:5, 80:11
**order** [7] - 32:10,

36:19, 77:17, 77:22, 79:6, 82:15, 83:22
**orders** [1] - 17:21
**original** [1] - 47:2
**originated** [1] - 13:19
**originating** [1] - 14:10
**otherwise** [24] - 3:9, 7:5, 7:6, 9:18, 12:12, 13:7, 25:17, 26:8, 26:14, 27:23, 28:5, 32:4, 34:3, 41:21, 42:13, 45:13, 47:8, 50:8, 53:13, 53:18, 54:6, 54:15, 55:17, 78:24
**ought** [1] - 44:6
**ourselves** [1] - 65:5
**outcome** [3] - 44:14, 44:15, 66:21
**outlets** [1] - 59:11
**outline** [1] - 42:17
**outside** [1] - 17:19
**own** [1] - 64:24

# P

**p.m** [2] - 1:14, 84:8
**PA** [1] - 2:3
**PACKAGING** [1] - 1:10
**page** [9] - 7:7, 7:18, 7:24, 8:24, 16:22, 29:20, 32:8, 68:22, 79:11
**Pages** [1] - 85:9
**painting** [1] - 66:6
**panel** [1] - 24:16
**paren** [2] - 29:24, 30:2
**parent** [6] - 63:22, 64:3, 64:6, 64:9, 73:10, 73:12
**part** [16] - 7:14, 7:16, 7:17, 8:5, 9:7, 23:15, 26:9, 31:11, 43:17, 48:12, 48:20, 48:21, 48:23, 49:10, 55:3, 73:8
**particular** [16] - 12:15, 15:18, 22:15, 23:24, 26:12, 28:8, 31:18, 47:5, 47:16, 49:8, 55:15, 76:21, 78:9, 78:16, 79:4, 81:16
**particularly** [2] - 42:3, 61:2
**parties** [6] - 15:6, 47:4, 78:2, 78:7, 80:12, 81:18

**parts** [2] - 34:4, 71:2
**party** [3] - 33:22, 44:4, 69:14
**passed** [4] - 5:9, 6:21, 14:3, 27:18
**patent** [60] - 5:18, 5:19, 6:4, 6:17, 7:4, 11:11, 11:23, 11:24, 14:6, 16:14, 17:11, 17:14, 17:16, 19:21, 20:7, 22:3, 22:21, 23:2, 23:3, 24:8, 25:1, 25:22, 26:4, 26:13, 26:18, 26:22, 27:11, 27:14, 27:15, 30:2, 32:10, 34:2, 34:8, 39:17, 39:18, 39:20, 39:21, 39:22, 40:16, 41:1, 42:19, 43:11, 46:12, 48:4, 49:19, 51:4, 51:6, 52:1, 56:11, 56:12, 62:16, 63:18, 65:9, 68:9, 70:13, 75:17, 76:3, 77:7, 81:10
**patentability** [1] - 66:18
**patents** [2] - 18:3, 63:9
**peculiar** [1] - 22:18
**pending** [3] - 42:20, 80:9, 83:19
**Penthouse** [2] - 38:3, 38:4
**people** [2] - 35:14, 67:14
**per** [2] - 4:12, 22:3
**percent** [4] - 65:8, 66:9, 66:12, 75:7
**perfectly** [1] - 48:2
**permission** [1] - 3:20
**permit** [2] - 8:9, 18:5
**permitted** [1] - 27:2
**person** [3] - 6:4, 35:3, 72:18
**personal** [31] - 7:1, 17:7, 22:9, 22:12, 29:10, 32:19, 32:22, 34:3, 37:22, 40:18, 41:2, 42:22, 43:2, 43:16, 44:11, 44:16, 46:8, 52:15, 53:5, 57:4, 57:13, 62:9, 62:14, 63:10, 64:4, 64:18, 66:22, 67:5, 67:23, 69:4, 70:2
**perspective** [4] - 14:13, 14:17, 80:22, 81:3

**petition** [1] - 70:6
**phrase** [10] - 9:17, 19:13, 21:5, 21:8, 21:11, 21:19, 26:7, 32:5, 47:7, 56:23
**phraseology** [1] - 53:21
**pictures** [1] - 59:10
**piece** [2] - 36:10, 53:4
**pin** [2] - 18:8, 18:9
**place** [16] - 6:1, 10:13, 23:5, 23:6, 23:7, 23:10, 23:11, 23:13, 23:20, 23:21, 33:10, 61:6, 72:12, 76:10, 76:12, 76:21
**places** [2] - 24:3, 77:8
**placing** [1] - 59:4
**Plager** [1] - 7:8
**plain** [5] - 8:6, 30:4, 51:11, 57:9, 58:17
**plainly** [1] - 44:22
**Plaintiff** [14] - 1:5, 2:7, 3:12, 3:16, 17:15, 18:13, 58:20, 58:22, 69:19, 70:11, 70:22, 74:11, 75:22, 83:5
**plaintiff** [4] - 32:15, 38:2, 38:24, 62:11
**plaintiff's** [1] - 39:14
**Plaintiff's** [3] - 41:12, 61:21, 82:12
**Plaintiffs** [2] - 79:18, 80:22
**plan** [1] - 60:21
**play** [2] - 27:13, 66:21
**plurality** [1] - 74:7
**point** [17] - 17:5, 44:2, 44:19, 45:23, 50:17, 56:8, 56:14, 60:23, 67:4, 68:3, 69:10, 69:13, 71:5, 72:14, 72:16, 72:17
**pointed** [4] - 21:5, 45:17, 55:3, 57:22
**points** [2] - 19:24, 31:5
**portions** [2] - 50:3, 52:20
**position** [3] - 20:2, 51:15, 77:11
**possible** [1] - 79:20
**post** [1] - 43:12
**posture** [1] - 81:21
**potentially** [1] - 24:17
**practical** [1] - 76:5
**practice** [1] - 6:4
**practicing** [1] - 24:18

**pre** [1] - 8:8
**preamble** [1] - 16:21
**preceded** [1] - 58:5
**precedence** [1] - 12:7
**precedent** [2] - 25:8, 57:19
**precise** [1] - 72:14
**precisely** [2] - 42:23, 68:2
**precluded** [1] - 61:24
**preferably** [1] - 81:11
**premise** [1] - 10:19
**prepared** [1] - 20:1
**preparing** [1] - 35:7
**prepositional** [1] - 32:5
**prescribes** [2] - 12:21, 23:9
**presence** [1] - 13:21
**present** [2] - 3:20, 42:21
**presentations** [1] - 51:6
**presented** [6] - 11:10, 42:24, 45:16, 47:23, 47:24, 49:6
**presents** [1] - 59:1
**president** [1] - 4:7
**presumably** [3] - 42:8, 50:22, 66:16
**presume** [4] - 7:22, 9:14, 16:16, 55:6
**pretrial** [1] - 81:14
**prevented** [1] - 77:6
**previous** [2] - 41:17, 54:6
**principle** [3] - 5:17, 6:8, 23:20
**privilege** [1] - 74:18
**problem** [2] - 22:15, 72:22
**procedural** [3] - 77:16, 81:21, 83:4
**procedures** [2] - 81:8, 81:9
**proceed** [3] - 66:10, 80:5, 83:10
**process** [5] - 30:7, 34:19, 40:5, 57:21, 81:14
**product** [15] - 6:6, 17:21, 25:2, 32:17, 32:18, 35:12, 59:1, 59:3, 59:4, 60:11, 62:9, 65:5, 65:10, 65:11, 68:7
**products** [11] - 33:24, 35:15, 52:18, 59:12,

60:9, 67:16, 67:21, 68:17, 70:13, 70:14, 74:4
**Products** [2] - 52:14, 67:8
**PRODUCTS** [1] - 1:7
**prominently** [1] - 61:12
**proper** [5] - 5:19, 12:13, 30:1, 30:13, 70:18
**properly** [1] - 76:16
**Properties** [2] - 44:13, 65:17
**proposed** [1] - 80:11
**proposition** [1] - 58:22
**protection** [1] - 74:16
**provide** [6] - 10:2, 26:1, 26:8, 42:6, 61:20, 73:16
**provided** [17] - 7:5, 7:6, 9:18, 12:12, 25:17, 26:14, 27:8, 27:23, 32:4, 41:21, 45:13, 47:8, 50:8, 53:14, 53:18, 54:15, 56:13
**provides** [1] - 18:11
**provision** [2] - 29:23, 71:18
**prudence** [2] - 34:22, 40:6
**Public** [1] - 85:8
**publication** [10] - 18:4, 38:14, 38:19, 39:3, 39:7, 39:15, 39:19, 62:19, 74:24, 75:1
**publications** [1] - 13:12
**published** [2] - 14:15, 38:8
**publisher** [1] - 38:3
**pull** [1] - 21:13
**purposeful** [3] - 17:23, 18:20, 65:16
**purposefully** [5] - 35:4, 67:24, 68:6, 72:18, 74:18
**purposely** [2] - 34:1, 65:21
**purposes** [26] - 6:22, 16:8, 20:23, 20:24, 21:5, 21:9, 21:19, 22:5, 22:7, 28:12, 31:15, 32:12, 35:8, 35:10, 44:9, 45:1, 45:19, 45:22, 50:10,

56:5, 56:7, 56:17, 64:3, 65:4, 66:5, 66:17
**pursuant** [1] - 70:6
**put** [8] - 25:12, 28:18, 47:12, 65:6, 70:20, 71:12, 75:8, 79:5
**putting** [1] - 13:13

## Q

**quantity** [1] - 75:9
**quartet** [2] - 17:24, 36:3
**questioning** [1] - 72:17
**questions** [9] - 4:19, 8:17, 19:9, 29:15, 41:8, 41:14, 49:14, 62:14, 69:23
**quick** [1] - 54:1
**quickly** [1] - 41:15
**quite** [1] - 81:9
**quo** [4] - 24:8, 24:15, 49:4, 77:14
**quote** [6] - 7:20, 29:21, 44:17, 61:12, 68:22
**quoted** [6] - 8:21, 8:22, 8:24, 32:8, 44:2, 61:2

## R

**raise** [2] - 44:24, 48:17
**raised** [7] - 5:7, 13:10, 30:8, 34:7, 48:18, 71:7, 75:11
**raises** [1] - 36:2
**raising** [1] - 20:13
**rapid** [1] - 79:19
**rather** [1] - 30:24
**re** [1] - 50:22
**reach** [3] - 17:13, 30:6, 74:20
**reached** [1] - 8:7
**read** [14] - 12:14, 18:23, 37:17, 41:18, 45:3, 45:5, 45:8, 54:5, 55:21, 61:9, 61:13, 62:15, 72:9, 76:4
**readily** [1] - 7:20
**reading** [7] - 6:12, 12:18, 29:19, 30:3, 56:21, 57:7, 57:9

**reads** [6] - 15:22, 20:23, 50:10, 56:3, 56:6, 56:7
**ready** [1] - 83:6
**real** [4] - 23:12, 24:2, 37:20, 76:20
**reality** [2] - 31:20, 76:5
**realize** [1] - 79:6
**really** [8] - 20:9, 23:3, 31:21, 42:24, 55:5, 71:6, 73:6, 78:13
**reason** [7] - 12:6, 16:13, 27:16, 48:1, 74:23, 80:6, 80:17
**reasoning** [5] - 6:18, 8:5, 12:8, 37:16, 74:6
**reasons** [1] - 56:1
**rebellion** [1] - 73:2
**rebuttal** [1] - 69:22
**recent** [6] - 33:21, 37:3, 43:14, 57:23, 67:6, 67:10
**recently** [2] - 34:15, 52:23
**recess** [1] - 84:6
**recognize** [1] - 15:9
**recognized** [1] - 6:9
**reconsider** [1] - 31:3
**record** [10] - 3:2, 3:11, 5:13, 59:1, 60:12, 69:14, 70:10, 70:19, 77:24, 85:9
**recovering** [1] - 59:2
**recovery** [2] - 39:1, 39:7
**redress** [2] - 61:22, 62:11
**Reed** [1] - 5:3
**REED** [1] - 2:12
**reference** [4] - 20:6, 49:19, 52:4, 56:4
**referenced** [2] - 11:1, 80:14
**referring** [3] - 20:8, 53:1, 60:5
**refers** [1] - 29:1
**regard** [9] - 20:15, 32:3, 51:2, 53:20, 71:18, 78:15, 82:5, 83:1
**regarding** [2] - 10:19, 65:4
**regime** [4] - 6:2, 6:6, 6:15, 8:9
**register** [1] - 14:4
**regular** [1] - 6:1

**regulation** [3] - 40:15, 61:7, 72:14
**reinvigorated** [3] - 37:4, 37:19, 75:18
**reject** [2] - 51:21, 52:2
**relate** [3] - 33:8, 34:19, 63:17
**related** [3] - 13:3, 78:12, 83:15
**relates** [6] - 11:11, 11:23, 28:11, 31:9, 78:5
**relationship** [1] - 29:11
**relatively** [3] - 39:14, 74:3, 78:20
**relevant** [2] - 70:21, 70:23
**relied** [2] - 37:24, 39:3
**relief** [5] - 18:14, 38:11, 38:17, 83:21, 83:22
**rely** [1] - 75:2
**relying** [1] - 52:18
**remains** [1] - 60:22
**remembering** [1] - 23:18
**remind** [2] - 42:4, 42:12
**remote** [1] - 77:8
**rendered** [1] - 12:17
**reply** [2] - 8:23, 69:13
**REPORTER** [1] - 85:5
**Reporter** [1] - 85:7
**represent** [1] - 24:9
**request** [2] - 60:4, 69:11
**require** [4] - 23:16, 50:23, 77:22, 79:10
**required** [1] - 40:24
**requirement** [5] - 22:11, 37:19, 37:20, 40:13, 75:19
**requirements** [1] - 80:8
**requires** [4] - 22:8, 37:5, 40:18, 72:11
**research** [1] - 54:1
**researched** [1] - 14:19
**reselling** [2] - 68:17, 68:18
**reserve** [1] - 41:7
**reside** [3] - 45:1, 45:7, 46:17
**residence** [3] - 44:18, 46:16, 54:19
**residency** [14] - 28:6, 28:11, 28:16, 28:20,

29:1, 29:7, 45:21, 46:14, 52:17, 54:22, 55:11, 55:16, 55:19, 56:17
**resident** [2] - 28:7, 68:15
**residents** [1] - 6:23
**resides** [1] - 44:10
**resolution** [1] - 79:19
**resolve** [1] - 81:19
**resolved** [1] - 81:12
**respect** [31] - 10:16, 15:12, 16:14, 17:7, 17:9, 18:14, 19:12, 22:9, 27:20, 32:6, 37:22, 40:18, 41:16, 43:2, 45:15, 47:10, 49:4, 50:6, 51:16, 53:4, 56:23, 62:10, 63:11, 64:13, 66:11, 66:16, 67:5, 69:2, 69:4, 80:15, 81:23
**respectfully** [1] - 30:5
**respond** [1] - 31:24
**response** [3] - 16:20, 24:13, 24:14
**responsible** [1] - 64:9
**rest** [1] - 65:6
**restatement** [2] - 38:20, 71:22
**restore** [1] - 77:13
**restored** [1] - 77:3
**restrict** [1] - 22:21
**restricted** [1] - 6:16
**result** [5] - 8:7, 24:24, 31:4, 72:24, 73:1
**results** [1] - 62:7
**retail** [3] - 59:11, 67:19, 67:20
**return** [1] - 30:15
**revenue** [1] - 59:2
**reverse** [1] - 6:3
**review** [1] - 37:17
**rewording** [1] - 54:10
**Richards** [1] - 3:16
**RICHARDS** [1] - 2:3
**right-hand** [1] - 7:18
**rightly** [1] - 27:20
**rights** [1] - 25:23
**rigorously** [1] - 40:12
**rise** [1] - 37:2
**Rob** [2] - 3:18, 42:15
**ROBERT** [1] - 2:6
**role** [1] - 27:13
**royalties** [1] - 66:13
**rubric** [1] - 34:9
**rule** [12] - 18:4, 26:22, 38:14, 38:19, 39:4,

39:7, 39:16, 39:19, 56:12, 62:7, 74:24, 75:1
**Rule** [1] - 83:6
**run** [2] - 12:24, 39:17

## S

**safe** [1] - 84:4
**sale** [8] - 18:15, 32:20, 37:9, 59:14, 62:8, 63:11, 66:23, 67:17
**sales** [15] - 18:1, 18:2, 60:2, 60:4, 60:8, 61:22, 62:3, 65:4, 66:3, 66:10, 66:12, 67:14, 68:19, 68:21, 75:9
**saw** [3] - 49:18, 49:20, 83:14
**scale** [1] - 77:7
**scenarios** [1] - 47:19
**schedule** [6] - 80:10, 80:18, 80:24, 81:23, 82:5, 83:19
**scope** [2] - 30:7, 59:7
**seal** [1] - 85:15
**Sears** [12] - 36:8, 36:9, 36:10, 36:14, 36:15, 36:17, 36:22, 37:16, 63:16, 63:20, 73:5, 77:5
**seated** [1] - 77:19
**second** [9] - 7:24, 8:1, 17:5, 18:12, 23:15, 38:20, 56:10, 61:1, 80:4
**secondly** [2] - 22:4, 78:12
**section** [25] - 7:6, 9:15, 11:23, 11:24, 15:12, 15:21, 16:2, 16:8, 16:18, 16:22, 17:1, 19:14, 19:16, 21:16, 21:21, 28:10, 29:24, 31:18, 45:12, 47:7, 55:5, 55:10, 55:12, 70:7, 71:21
**Section** [32] - 6:13, 6:17, 7:21, 8:19, 12:23, 13:4, 16:7, 16:11, 19:10, 20:22, 21:8, 21:14, 22:1, 23:1, 26:9, 26:11, 27:24, 28:3, 29:21, 30:11, 31:10, 31:13, 42:7, 43:12, 49:2, 50:7, 50:9, 53:9,

53:12, 55:10, 56:24, 78:3
**see** [3] - 19:5, 21:24, 53:24
**seek** [1] - 61:22
**seeking** [2] - 5:7, 18:13
**sell** [5] - 65:9, 65:11, 65:12, 66:1, 66:4
**selling** [3] - 36:13, 65:20
**sells** [1] - 68:17
**send** [3] - 65:5, 65:14, 65:21
**sending** [3] - 39:10, 59:1, 65:19
**sends** [2] - 59:3, 60:11
**sense** [7] - 17:11, 22:12, 26:1, 42:19, 51:2, 56:20, 65:24
**sensible** [1] - 30:3
**sent** [4] - 17:22, 34:1, 38:8, 66:2
**separate** [5] - 7:3, 36:12, 62:9, 76:1, 76:2
**serious** [1] - 74:10
**serve** [1] - 68:16
**set** [7] - 27:17, 36:23, 73:23, 74:13, 80:18, 80:24, 85:14
**settled** [1] - 72:4
**several** [1] - 29:17
**shall** [2] - 6:23, 12:12
**sharing** [1] - 79:20
**shed** [1] - 19:18
**shelves** [2] - 59:13, 63:8
**shift** [1] - 71:21
**shipped** [8] - 37:13, 59:15, 59:16, 59:17, 60:3, 67:24, 68:6, 74:5
**shipping** [1] - 18:22
**ships** [1] - 60:9
**Shohl** [1] - 3:18
**SHOHL** [1] - 2:5
**short** [5] - 64:16, 77:17, 77:22, 78:20, 79:5
**shorthanding** [1] - 23:14
**show** [1] - 36:22
**showed** [2] - 59:9, 59:12
**showing** [1] - 70:20
**shown** [1] - 25:14

**shows** [2] - 36:8, 67:13
**si** [1] - 51:5
**side** [9] - 3:10, 4:12, 4:20, 30:13, 41:12, 52:3, 57:14, 61:13, 84:3
**sides** [2] - 42:6, 82:20
**significant** [2] - 12:9, 71:24
**similar** [3] - 25:8, 40:23, 53:13
**simple** [4] - 45:23, 48:9, 49:21, 57:6
**simplification** [2] - 41:24, 49:21
**simply** [11] - 9:8, 15:10, 20:8, 21:10, 21:20, 40:9, 77:13, 82:21, 83:13, 83:17, 83:20
**single** [17] - 18:4, 18:5, 18:7, 22:17, 35:20, 35:24, 36:10, 38:14, 38:19, 39:3, 39:6, 39:15, 39:18, 39:23, 62:8, 74:24, 75:1
**situation** [2] - 13:20, 13:22
**situations** [1] - 49:24
**skin** [1] - 38:7
**Sleet** [3] - 15:5, 15:7, 16:4
**Sleet's** [3] - 20:18, 47:3, 47:21
**Slip** [1] - 29:20
**small** [4] - 18:19, 25:5, 74:3, 75:10
**Smyrna** [1] - 35:13
**sold** [9] - 32:17, 32:19, 59:7, 60:12, 67:16, 67:18, 67:19, 67:21, 74:5
**solicit** [1] - 68:19
**solicited** [1] - 74:15
**sometimes** [1] - 71:24
**somewhere** [2] - 8:12, 80:20
**soon** [2] - 80:24, 81:19
**sorry** [1] - 16:2
**sought** [1] - 22:16
**sounds** [2] - 49:4, 53:10
**special** [4] - 7:3, 25:23, 27:3, 27:14
**specific** [34] - 5:18, 11:22, 12:7, 12:20, 12:22, 17:3, 20:6, 21:24, 23:9, 25:21, 26:10, 28:1, 28:5, 28:16, 29:23, 30:10, 37:2, 37:5, 41:16, 41:22, 49:23, 50:23, 54:16, 55:11, 56:3, 56:7, 57:2, 57:3, 61:3, 62:20, 62:22, 62:23, 72:10, 72:22
**specifically** [5] - 6:3, 7:8, 22:20, 28:23, 43:24
**split** [1] - 24:22
**Stacy** [3] - 85:7, 85:19, 85:20
**stage** [1] - 82:3
**stand** [2] - 72:5, 84:6
**standard** [3] - 57:2, 69:12, 72:22
**standing** [1] - 28:23
**standpoint** [2] - 42:22, 66:14
**stands** [1] - 58:21
**Stark** [1] - 81:20
**Stark's** [2] - 52:21, 80:8
**start** [6] - 3:9, 3:12, 4:20, 50:7, 61:15, 69:24
**started** [2] - 3:1, 29:9
**starting** [3] - 3:24, 7:19, 7:24
**starts** [1] - 55:17
**Stat** [1] - 16:23
**state** [21] - 28:9, 29:2, 34:13, 35:6, 39:4, 39:8, 39:23, 39:24, 61:6, 62:21, 72:12, 72:21, 73:18, 73:21, 73:22, 74:12, 74:14, 74:17, 75:5, 75:20, 76:9
**State** [2] - 17:19, 85:1
**state's** [5] - 35:4, 40:15, 61:7, 72:13, 72:19
**statement** [5] - 11:15, 11:17, 12:1, 26:17, 55:11
**states** [7] - 7:17, 18:4, 38:13, 39:6, 61:19, 61:24, 62:4
**STATES** [1] - 1:1
**States** [10] - 1:20, 10:7, 12:19, 24:10, 28:23, 30:18, 48:16, 65:10, 67:18, 68:20
**statue** [1] - 10:17
**status** [4] - 24:8, 24:15, 49:4, 77:13
**statute** [50] - 5:8, 6:13, 8:6, 11:5, 11:22, 12:14, 12:18, 12:20, 12:22, 13:3, 17:2, 17:4, 17:11, 20:3, 22:1, 22:2, 24:6, 25:16, 26:2, 26:10, 26:13, 26:18, 27:14, 27:16, 28:5, 29:13, 30:4, 30:10, 31:12, 32:2, 39:19, 42:12, 46:21, 47:6, 50:1, 53:11, 54:16, 56:2, 56:3, 56:7, 62:21, 71:19, 72:9, 75:13, 77:3, 82:11, 82:21, 82:23
**statute's** [2] - 15:11, 47:15
**statutes** [15] - 21:7, 21:13, 25:21, 25:22, 25:23, 26:24, 27:3, 27:8, 28:2, 49:23, 51:12, 53:20, 55:12, 55:20, 78:22
**statutory** [8] - 6:20, 20:10, 25:6, 30:19, 31:3, 32:11, 71:16, 71:24
**stay** [1] - 80:19
**stenographic** [1] - 85:10
**step** [1] - 16:2
**still** [16] - 31:19, 34:16, 46:10, 46:23, 54:17, 54:21, 56:15, 57:20, 57:21, 58:3, 58:9, 67:1, 68:4, 69:3, 70:3
**Stonite** [1] - 27:18
**stop** [1] - 63:4
**stores** [1] - 67:19
**straight** [1] - 72:7
**stream** [4] - 58:1, 58:3, 59:5, 59:21
**Street** [1] - 1:17
**strength** [1] - 12:4
**strong** [1] - 49:9
**stronger** [1] - 56:9
**struck** [1] - 81:5
**structure** [1] - 27:7
**study** [1] - 6:19
**sub** [1] - 32:12
**subject** [9] - 6:24, 26:19, 28:16, 32:12, 40:14, 44:11, 61:7, 72:13, 72:21
**submission** [2] - 79:10, 79:11
**submissions** [1] - 81:18
**submit** [7] - 30:5, 37:11, 41:23, 51:17, 57:16, 68:24, 71:16
**subsection** [6] - 9:17, 9:23, 16:24, 47:9, 55:15, 55:18
**subsequent** [7] - 44:13, 45:20, 46:6, 46:22, 51:18, 51:19, 66:11
**subsidiaries** [8] - 63:23, 63:24, 64:2, 64:6, 64:7, 64:10, 64:20, 64:21
**subsidiary** [3] - 71:8, 71:9, 73:14
**substance** [1] - 40:4
**substantial** [3] - 38:23, 39:12, 61:18
**substantive** [1] - 38:15
**subtitle** [1] - 71:20
**successful** [1] - 14:11
**sue** [3] - 35:13, 76:9, 76:14
**sued** [6] - 6:4, 13:21, 22:22, 39:24, 48:4, 48:7
**suffered** [1] - 58:20
**sufficient** [1] - 59:23
**suggest** [1] - 51:3
**suggested** [4] - 16:13, 29:6, 33:3, 50:16
**suggesting** [9] - 9:15, 26:7, 48:16, 48:20, 48:22, 48:24, 53:10, 54:20, 55:8
**suggests** [7] - 44:17, 48:9, 48:19, 50:14, 51:9, 53:19, 59:21
**suing** [1] - 17:15
**suit** [8] - 5:8, 23:4, 32:15, 38:16, 39:13, 41:1, 62:1, 76:3
**suits** [2] - 5:18, 30:2
**summarizing** [1] - 55:2
**supplement** [2] - 26:24, 27:3
**supplementation** [1] - 77:23
**support** [1] - 78:9
**supported** [2] - 51:11, 75:12
**supports** [1] - 69:5
**suppose** [5] - 23:3, 33:22, 39:13, 58:14, 66:12
**Supreme** [19] - 6:7, 11:4, 11:9, 11:10, 12:8, 12:19, 17:24, 26:20, 28:22, 30:18, 33:13, 33:21, 34:18, 34:22, 36:4, 37:4, 57:19, 58:10, 72:10
**sustained** [1] - 74:12
**sweeping** [1] - 26:17

## T

**T&R** [1] - 52:6
**table** [1] - 35:18
**TC** [2] - 1:7, 3:5
**technically** [1] - 65:11
**tends** [2] - 35:5, 35:19
**Tennessee** [3] - 36:15, 36:22, 36:23
**term** [2] - 26:12, 56:10
**terms** [6] - 44:21, 60:1, 70:14, 79:4, 79:9, 79:14
**test** [1] - 32:21
**tests** [1] - 18:10
**Texas** [5] - 8:10, 25:2, 48:4, 49:15, 77:8
**text** [20] - 6:12, 6:20, 7:5, 8:6, 9:5, 10:7, 10:13, 19:7, 20:2, 25:15, 30:20, 32:7, 32:11, 39:22, 71:16, 78:3, 78:9, 78:23, 82:20
**textural** [1] - 25:13
**THE** [94] - 1:1, 1:1, 1:20, 3:1, 3:21, 3:23, 4:9, 4:11, 5:1, 5:12, 7:11, 7:14, 8:3, 8:16, 9:2, 9:7, 9:12, 9:21, 9:24, 10:8, 10:11, 10:14, 10:22, 11:7, 11:14, 11:18, 12:5, 12:24, 13:11, 14:8, 15:2, 15:15, 19:3, 19:9, 20:5, 20:15, 21:2, 21:4, 22:23, 23:14, 24:5, 26:6, 27:21, 29:9, 30:21, 30:24, 31:6, 31:8, 32:22, 33:1, 33:17, 34:12, 41:3, 41:6, 41:11,

42:4, 43:6, 43:19, 47:1, 48:12, 48:23, 50:2, 50:20, 51:23, 52:11, 52:19, 53:7, 54:3, 55:1, 55:14, 56:19, 57:12, 58:13, 60:1, 60:8, 60:24, 63:14, 65:1, 67:1, 69:20, 69:22, 71:4, 75:21, 76:15, 77:15, 77:21, 79:23, 80:3, 80:17, 81:2, 81:15, 82:17, 83:8, 84:2
**themselves** [4] - 3:11, 24:8, 35:4, 72:18
**theory** [3] - 58:1, 59:22, 75:23
**therefore** [4] - 40:1, 61:7, 61:8, 72:13
**thinking** [3] - 24:13, 78:1, 80:2
**third** [1] - 7:19
**THOMAS** [1] - 2:10
**thousands** [1] - 48:3
**three** [3] - 15:8, 19:4, 58:10
**threshold** [1] - 71:5
**throug** [1] - 62:3
**throughout** [2] - 48:16, 68:20
**today** [8] - 3:3, 4:5, 34:11, 48:9, 56:15, 77:18, 78:6, 78:13
**Tom** [1] - 4:6
**took** [1] - 62:15
**top** [4] - 7:18, 21:16, 43:7, 60:6
**tort** [1] - 39:4
**torts** [1] - 38:20
**Toshiba** [1] - 68:14
**total** [1] - 4:17
**totally** [1] - 74:24
**touch** [1] - 78:21
**touched** [2] - 58:19, 78:14
**touts** [1] - 45:12
**town** [1] - 84:4
**track** [1] - 4:14
**trade** [1] - 67:13
**traditional** [3] - 38:22, 39:11, 72:21
**transacted** [1] - 67:16
**transaction** [2] - 65:12, 65:19
**transcript** [1] - 85:10
**transfer** [2] - 69:11, 69:18
**transferred** [1] - 70:6

**transition** [1] - 57:13
**translate** [1] - 39:16
**travels** [1] - 84:5
**trial** [1] - 66:11
**tried** [1] - 54:12
**triple** [1] - 82:9
**true** [8] - 23:24, 56:15, 62:7, 68:10, 68:24, 76:22, 76:24, 85:9
**trump** [2] - 55:23, 56:18
**try** [5] - 35:16, 39:16, 41:15, 43:2, 53:22
**trying** [5] - 34:10, 44:24, 47:19, 62:17, 64:8
**TUNNELL** [1] - 2:9
**turn** [2] - 67:19, 68:19
**turns** [1] - 79:2, 82:20
**two** [24] - 5:20, 8:17, 16:19, 19:9, 21:23, 23:3, 28:13, 29:11, 43:10, 43:20, 43:22, 47:19, 51:1, 51:8, 53:20, 53:23, 56:1, 65:8, 66:9, 66:11, 71:10, 77:16, 78:1, 82:14
**two-fold** [2] - 21:23, 78:1

## U

**ultimate** [1] - 66:21
**ultimately** [4] - 25:2, 59:7, 64:17, 67:20
**unanimous** [2] - 12:19, 72:10
**under** [26] - 6:17, 6:22, 21:1, 21:2, 21:3, 21:6, 22:7, 30:11, 30:13, 36:3, 46:14, 46:17, 56:5, 56:13, 58:1, 59:21, 69:8, 69:11, 69:15, 73:3, 74:6, 74:7, 75:23, 76:13, 81:17, 84:7
**underlying** [1] - 61:5
**undermines** [1] - 44:8
**undisputed** [2] - 30:14, 74:2
**undisputedly** [1] - 23:20
**unintentionally** [1] - 6:14
**UNITED** [1] - 1:1
**United** [10] - 1:20,

10:7, 12:19, 24:10, 28:22, 30:18, 48:16, 65:10, 67:18, 68:20
**units** [1] - 62:13
**unless** [3] - 42:9, 53:3, 78:24
**unnecessarily** [1] - 79:22
**unnecessary** [1] - 30:6
**unquote** [2] - 7:21, 29:22
**unusual** [1] - 13:20
**up** [20] - 5:9, 6:9, 8:14, 13:14, 13:16, 16:24, 33:7, 33:9, 33:10, 39:10, 41:3, 42:9, 49:13, 57:6, 63:8, 72:5, 76:1, 78:13, 82:18, 83:1
**US** [1] - 63:22
**USC** [2] - 6:13, 6:17

## V

**valid** [2] - 37:17, 48:11
**various** [1] - 69:15
**VE** [49] - 6:9, 6:11, 6:18, 7:1, 7:8, 8:5, 8:20, 9:16, 11:21, 12:2, 12:11, 16:12, 19:1, 19:7, 21:6, 21:11, 24:16, 25:2, 25:9, 25:12, 28:10, 30:17, 31:11, 31:16, 42:8, 45:2, 45:3, 45:9, 45:24, 46:4, 46:5, 46:6, 46:18, 46:19, 46:23, 50:22, 52:22, 54:17, 54:18, 54:23, 55:3, 55:22, 56:8, 56:14, 57:11, 69:8, 78:4, 78:23, 82:21
**Venue** [3] - 5:6, 8:13, 14:2
**venue** [102] - 5:8, 5:17, 5:19, 6:2, 6:13, 6:16, 6:22, 7:4, 10:16, 10:19, 10:20, 11:12, 11:22, 11:24, 12:12, 12:17, 12:22, 13:2, 13:3, 14:6, 15:9, 15:10, 15:17, 16:8, 16:14, 17:3, 17:11, 19:21, 20:23, 21:1, 21:6,

21:7, 21:9, 21:13, 21:19, 22:1, 22:5, 22:7, 22:15, 24:7, 25:1, 25:18, 25:21, 25:22, 25:23, 26:2, 26:10, 26:13, 26:18, 26:22, 27:3, 27:8, 27:11, 27:14, 27:16, 28:1, 28:4, 28:11, 29:13, 29:22, 29:23, 30:1, 30:5, 30:13, 31:15, 32:12, 33:18, 34:6, 40:23, 42:22, 43:3, 43:11, 43:18, 44:15, 45:19, 45:21, 46:7, 49:4, 49:9, 49:19, 49:23, 50:1, 50:10, 51:6, 51:12, 52:3, 52:14, 53:4, 54:16, 56:5, 56:7, 56:11, 56:12, 57:6, 69:9, 70:1, 70:18, 71:18, 74:22, 75:13, 76:18, 81:12
**venued** [2] - 70:4, 76:17
**venues** [1] - 23:4
**verify** [1] - 82:14
**version** [11] - 9:15, 10:6, 30:11, 31:10, 31:22, 32:7, 41:17, 42:7, 53:11, 54:7, 82:11
**versus** [4] - 3:5, 65:20, 67:8, 68:13
**viable** [1] - 48:19
**vice** [1] - 4:7
**view** [5] - 15:24, 29:5, 40:20, 47:17, 81:3
**Virginia** [7] - 28:20, 33:8, 33:11, 61:18, 61:22, 62:1
**vis** [2] - 65:12
**vis-a-vis** [1] - 65:12

## W

**Wal** [1] - 35:12
**Wal-mart** [1] - 35:12
**Walden** [1] - 33:22, 40:10, 43:13, 58:14, 58:16, 58:21, 60:23, 61:1, 61:9, 72:8, 73:20
**Walmart's** [1] - 17:21
**wants** [1] - 82:4
**warrant** [1] - 31:4
**warrants** [1] - 57:5

**water** [3] - 37:9, 62:23, 63:6
**ways** [1] - 53:23
**week** [2] - 79:7, 79:23
**West** [1] - 28:20
**Westlaw** [2] - 16:5, 52:7
**whereas** [1] - 18:13
**wherein** [1] - 41:19
**WHEREOF** [1] - 85:14
**whole** [3] - 18:18, 25:1, 40:19
**wife** [1] - 38:3
**WILLIAM** [1] - 2:15
**Wilmington** [4] - 1:17, 32:17, 59:11, 85:16
**window** [1] - 25:5
**wiper** [2] - 67:18, 67:24
**wish** [3] - 83:9, 84:4, 84:5
**witness** [2] - 70:12, 70:23
**WITNESS** [1] - 85:14
**witnesses** [3] - 70:15, 70:21, 70:24
**word** [2] - 33:16, 34:16
**wording** [1] - 79:5
**words** [3] - 26:11, 34:21, 62:24
**written** [1] - 7:4
**wrongful** [1] - 18:6
**wrongs** [1] - 51:1
**Wyoming** [1] - 75:16

## Y

**year** [1] - 79:16
**Year's** [1] - 79:7
**years** [6] - 6:16, 24:19, 33:14, 51:8, 73:3, 77:5
**yesterday** [1] - 18:23
**York** [3] - 36:13, 38:6, 38:24
**yourself** [1] - 65:18

## Z

**Zatcoff** [1] - 18:24
**Zimmerman** [2] - 3:19, 42:15
**ZIMMERMAN** [1] - 2:6