IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KRAFT FOODS GROUP BRANDS LLC, )
            )
   Plaintiff,      )
            )
  v.          )  Civil Action No. 14-28-LPS
            )
TC HEARTLAND, LLC d/b/a   )
HEARTLAND FOOD PRODUCTS )
GROUP and HEARTLAND    )
PACKAGING CORPORATION,  )
            )
   Defendants.     )

## REPORT AND RECOMMENDATION

Presently pending before the Court in this patent infringement suit is Defendants TC

Heartland, LLC ("TC Heartland") and Heartland Packaging Corporation's ("HPC") (collectively,

"Defendants") Motion to Dismiss Claims for Lack of Personal Jurisdiction and for Transfer of

Venue to the Southern District of Indiana (the "Motion"). (D.I. 7)  Defendants seek dismissal of

Plaintiff Kraft Foods Group Brands LLC's ("Plaintiff") Complaint according to Federal Rule of

Civil Procedure 12(b)(2) for lack of personal jurisdiction. (*Id.*; D.I. 8 at 4-10)  Defendants

further ask the Court to transfer venue of this action to the Southern District of Indiana, pursuant

to 28 U.S.C. §§ 1404 and 1406.  (D.I. 7)  For the reasons set forth below, the Court recommends

that Defendants' Motion be DENIED.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a corporation organized and existing under the laws of the State of Delaware,

and maintains its principal place of business in Northfield, Illinois. (D.I. 1 at ¶ 1)  Plaintiff

alleges that it does business in Delaware "through manufacturing facilities and products sold." (*Id.*)

Defendant TC Heartland is a limited liability company organized and existing under the laws of the State of Indiana; it maintains its headquarters in Carmel, Indiana. (D.I. 9 at ¶ 3) TC Heartland develops, tests and manufactures the accused "liquid water enhancer products" (the "accused products") at facilities in both Carmel and Indianapolis, Indiana. (*Id.*) TC Heartland alleges, and Plaintiff does not contest, that it "is not registered to do business in Delaware and has no office, property, employees, agents, distributors, bank accounts, or other local presence in Delaware." (D.I. 8 at 3; *see* D.I. 9 at ¶¶ 4-18) TC Heartland also claims that it has not entered into any supply contracts in Delaware and that it does not call on any accounts in Delaware to solicit sales. (D.I. 9 at ¶¶ 13, 17) TC Heartland admits, however, that it does ship orders of the accused products directly to Delaware under contracts with "two national accounts" that are headquartered outside of Delaware. (*Id.* at ¶ 19) In 2013, these shipments by TC Heartland amounted to approximately 2% of TC Heartland's total sales of the accused products. (*Id.* at ¶ 20 (stating that, in 2013, "more than 98% of TC Heartland's liquid water enhancer sales were shipped to destinations outside of Delaware."))[1]

Defendant HPC is incorporated in the State of Indiana, and Plaintiff alleges that HPC's principal place of business is in Carmel, Indiana. (D.I. 1 at ¶ 3) Defendants contend that HPC

---

[1]     In their opening brief, Defendants stated that these orders amount to "approximately 2% of TC Heartland's liquid water enhancer sales volume[.]" (D.I. 8 at 13) In their reply brief, Defendants framed those orders as accounting for "less than 2%" of TC Heartland's allegedly infringing sales. (D.I. 26 at 7 n.1)

ceased doing business years ago and has never sold the accused products.[2]  (D.I. 8 at 3 n.1; *see also* D.I. 9 at ¶ 2)

### B.      Procedural History

Plaintiff commenced this action on January 14, 2014, alleging infringement of the three patents-in-suit.  (D.I. 1 at 3-4)  Defendants' Motion was filed on June 23, 2014, (D.I. 7), and it was referred to the Court for resolution by Chief Judge Leonard P. Stark on July 15, 2014, (D.I. 13).  The Motion was not fully briefed, however, until October 14, 2014.  (D.I. 26)

At both parties' request, (D.I. 27, 29), the Court held oral argument on the Motion on December 22, 2014.  Following oral argument, the parties filed supplemental letter briefs regarding the legislative history of 28 U.S.C. § 1391 ("Section 1391")—a statute that was addressed in the parties' briefs and at oral argument.  The Court received those supplemental letter briefs on January 7, 2015.  (D.I. 34, 35)

## II.     DISCUSSION

### A.      Personal Jurisdiction

#### 1.       Legal Standard

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  As an initial matter, if a jurisdictional defense is raised by way of a Rule 12(b)(2) motion, then the plaintiff bears the burden of showing the basis for jurisdiction.  *Eastman Chem. Co. v. AlphaPet Inc.*, Civ. Action No. 09-971-LPS-CJB, 2011 WL 6004079, at *3 (D. Del. Nov. 4, 2011).  To satisfy its burden at this stage of the litigation, in a

---

[2]      Because Defendants do not move to dismiss on that basis, the Court will not further address herein Defendants' assertions regarding HPC's activities.

case where the district court has not held an evidentiary hearing, the plaintiff need only establish

a *prima facie* case of personal jurisdiction. *Metcalfe v. Renaissance Marine Inc.*, 566 F.3d 324,

330 (3d Cir. 2009); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365,

369 (D. Del. 2008); *see also Celgard, LLC v. SK Innovation Co.*, — F. 3d —, No. 2014-1807,

2015 WL 4068810, at *4 (Fed. Cir. July 6, 2015) (holding that the *prima facie* standard applies

where "jurisdictional discovery [has been] conducted and the district court did not conduct a

jurisdictional hearing," if the parties have not agreed that there are no facts in dispute).  All

factual inferences to be drawn from the pleadings, affidavits and exhibits must be drawn in the

plaintiff's favor at this stage. *Eastman Chem. Co.*, 2011 WL 6004079, at *3; *Power*

*Integrations, Inc.*, 547 F. Supp. 2d at 369.

The Supreme Court of the United States has recognized two classifications of personal

jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011) (internal quotation marks and

citations omitted).  The Supreme Court distinguished between these concepts in *International*

*Shoe Co. v. Washington*, 326 U.S. 310 (1945), which remains the "'canonical opinion'" in the

area of personal jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citation

omitted).  "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[] to

the defendant's contacts with the forum.'" *Goodyear*, 131 S. Ct. at 2853 (quoting *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  "General jurisdiction"

encompasses complaints arising from dealings that are distinct from the defendant's activities in

the state. *Goodyear*, 131 S. Ct. at 2853-54 (citing *International Shoe*, 326 U.S. at 318); *see also*

*Daimler*, 134 S. Ct. at 754.  A court may exercise general jurisdiction over a foreign corporation

4

only when the corporation's "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear*, 131 S. Ct. at 2851).

"To establish personal jurisdiction, the plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional." *Eastman Chem. Co.*, 2011 WL 6004079, at *3. The Court must first consider whether the defendant's actions fall within the scope of Delaware's long-arm statute, 10 Del. C. § 3104(c). *Id.*; *Power Integrations, Inc.*, 547 F. Supp. 2d at 369. Second, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Eastman Chem. Co.*, 2011 WL 6004079, at *3 (citing *Int'l Shoe Co.*, 326 U.S. at 316); *Power Integrations, Inc.*, 547 F. Supp. 2d at 369. Due process is satisfied if the Court finds that "'minimum contacts'" exist between the non-resident defendant and the forum state, "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Power Integrations, Inc.*, 547 F. Supp. 2d at 369 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

### 2.   Claims Relating to the Accused Products That Are Shipped Directly to Delaware

Defendants first appear to assert that the Court lacks specific jurisdiction under the Due Process Clause[3] regarding alleged infringement by the approximately 2% of accused products that Defendants ship directly to Delaware for sale in Delaware. (D.I. 26 at 7-8)[4] In considering

---

[3]   Defendants do not contest jurisdiction under Delaware's long-arm statute. (D.I. 20 at 4)

[4]   In their Motion and in their opening brief, Defendants did not clearly move to dismiss Plaintiff's Complaint as to products shipped directly to Delaware. (*See* D.I. 7 at 1 (seeking dismissal only of claims relating to infringement occurring "outside of Delaware"); D.I.

whether the due process requirement for specific personal jurisdiction is met, the Court assesses:

"(1) whether the defendant purposefully directed its activities at residents of the forum state, (2)

whether the claim arises out of or relates to the defendant's activities with the forum state, and

(3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard*, 2015 WL

4068810 at *3.[5]  Plaintiff bears the burden of establishing the first two factors above, and if it

does so, the burden shifts to Defendants to show that personal jurisdiction is unreasonable or

unfair. *Id.*  "The first two factors correspond with the 'minimum contacts' prong of *International*

*Shoe*, and the third factor corresponds with the 'fair play and substantial justice' prong." *Id.*

(internal quotation marks and citation omitted).

In this case, Plaintiff asserts jurisdiction based on a stream-of-commerce theory.  (D.I. 20

at 1)  The Supreme Court set forth in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

297 (1980), that a "forum State does not exceed its powers under the Due Process Clause if it

asserts personal jurisdiction over a corporation that delivers its products into the stream of

commerce with the expectation that they will be purchased by consumers in the forum State."

When the Supreme Court next addressed the issue, however, its opinions were split as to whether

a court may assert jurisdiction over a defendant who was merely "aware that the final product is

---

8 at 4 (stating that "*some* of the claims asserted by Kraft might arise from activities or
occurrences in Delaware and *might arguably* be ones that TC Heartland could lawfully be
required to defend in Delaware.") (emphasis in original))  In their reply brief, Defendants seemed
to suggest that they *are* seeking dismissal as to claims relating to these products. (D.I. 26 at 7-8)
Defendants' argument in that regard is improper, because it was not clearly raised in their
opening brief.  Regardless, the Court will address the issue here, because it is helpful to resolve it
before reaching Defendants' other arguments.  This course of action does not prejudice Plaintiff,
because the Court ultimately resolves this issue in Plaintiff's favor.

[5]        The law of the Federal Circuit applies to the due process analysis for questions of
specific jurisdiction. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

being marketed in the forum State[,]" *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480

U.S. 102, 117 (1987) (Brennan, J., concurring in part), or whether such an assertion requires "an

action of the defendant purposefully directed toward the forum State[,]" *id.* at 113 (O'Connor, J.)

(emphasis omitted). *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed. Cir.

2012) (per curiam) (noting that "[b]ecause neither Justice Brennan's nor Justice O'Connor's

[stream-of-commerce] test garnered a majority of the votes in *Asahi*, neither test prevailed as the

applicable precedent"). The Supreme Court addressed the issue again in *J. McIntyre Machinery,

Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011), but did not resolve the split. *AFTG-TG*, 689 F.3d at

1363 (stating that the Supreme Court "declined to resolve the *Asahi* split in *McIntyre*").

　　　The United States Court of Appeals for the Federal Circuit has also addressed the stream-

of-commerce theory. Applying Supreme Court precedent, it held in *Beverly Hills Fan Co. v.

Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994) that where the "defendants

purposefully shipped the accused [product] into [the forum state] through an established

distribution channel," and the alleged patent infringement arose out of those activities, "[n]o

more is usually required to establish specific jurisdiction." *See also AFTG-TG*, 689 F.3d at

1363-64 (holding that *Beverly Hills Fan* is still the controlling precedent following the Supreme

Court's plurality opinion in *J. McIntyre*). This standard has been applied in several recent cases

in this District. *See Graphics Properties Holdings, Inc. v. ASUS Computer Int'l*, 70 F. Supp. 3d

654, 662-64 (D. Del. 2014) (holding that foreign defendants' sale of accused products to a

California-based subsidiary, knowing that the subsidiary would then sell the products to three

physical resale outlets in Delaware, was sufficient to meet the test set forth in *Beverly Hills Fan*);

*Robert Bosch LLC v. Alberee Products, Inc.*, 70 F. Supp. 3d 665, 678 (D. Del. 2014) (holding

7

that a defendant had "target[ed] the Delaware market" by "sell[ing] the accused product to the nationwide reseller Costco with the expectation that Costco will sell the accused product in all parts of the United States, including Delaware").

Here, Defendants admit that they knowingly and intentionally shipped approximately 2% of the accused products from their Indiana manufacturing facility to two of their customers' distribution facilities in Delaware. (D.I. 8 at 13; D.I. 9 at ¶ 19; D.I. 20, ex. 1 at 33; D.I. 26 at 7) In 2013, for example, Defendants sent 44,707 cases of their products to Delaware, some subset of which included accused products; the accused products that were shipped to Delaware in that year generated at least $331,000 in sales revenue. (D.I. 20, ex. A at 25-26) Defendants also do not dispute that Plaintiff's claims arise out of or relate to these shipments. However, Defendants claim that these shipments were "initiated" by their customers—not by them. (D.I. 26 at 8 ("[A]ll Heartland shipments of [accused] products to Delaware were *initiated* by Customer, under purchase orders submitted to Heartland in Indiana . . .") (emphasis added)) Citing to the Federal Circuit's decision in *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358 (Fed. Cir. 2012) (per curiam), Defendants assert that because they did not originate the idea to ship the products to Delaware, then their actions thus do not amount to "purposeful" conduct directed toward Delaware. (*Id.*)

But *AFTG-TG*—a case in which the Federal Circuit affirmed a district court's finding of the lack of personal jurisdiction—did not appear to turn on whether or not the defendants were the party who *initiated* or *first encouraged* the shipment of the accused products to the forum state. *AFTG-TG*, 689 F.3d at 1365. Instead, the *AFTG-TG* Court seemed to focus its decision on the following facts: (1) that at most, one of the defendants had made an "isolated" number of

8

shipments of products to the forum state; (2) the cause of action for patent infringement in the

case did not arise out of those isolated shipments (which were not shown to include infringing

products); and (3) there was no evidence that the forum was part of the defendants' regular and

established distribution channels. *Id.* at 1361-62, 1365. Although the *AFTG-TG* Court did note

that the limited shipments to the forum state were made "at the request of third parties[,]" that

fact does not appear to have played a significant role in the Court's ultimate decision. *Id.* And

other cases from this District have made clear that shipments to Delaware may demonstrate

purposeful availment, even when those shipments are initiated by a customer (and not by the

defendant). *See, e.g., Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F.

Supp. 2d 320, 326-27 (D. Del. 2013) (holding that "[the defendant's] activities were 'purposeful'

because [it] knowingly and intentionally shipped the accused products to two separate customers

in Delaware" in satisfaction of customer warranty obligations).

Defendants also cite to the plurality opinion in *J. McIntyre*, (D.I. 26 at 8), but that case is

distinguishable. In that case, the plaintiff alleged only: (1) that the foreign defendant had a

relationship with a distributor to sell the relevant products in the United States, (2) that the

foreign defendant had attended trade shows in the United States, but not in the forum, and (3)

that at least one (and no more than four) of the products ended up in the forum, having been

shipped there by the distributor. *J. McIntyre*, 131 S. Ct. at 2782, 2786, 2790; *see also id.* at 2791

(Breyer, J., concurring). Here, in contrast, Defendants themselves knowingly and intentionally

shipped a significant number of accused products directly to Delaware. As such, they

"purposefully avail[ed themselves] of the privilege of conducting activities within [Delaware],

9

thus invoking the benefits and protections of its laws." *J. McIntyre*, 131 S.Ct. at 2788 (internal quotation marks and citation omitted).

In light of the above, the Court holds that Plaintiff has set forth a *prima facie* case of specific jurisdiction as to claims regarding the products, described above, that were shipped to Delaware.

### 3.    Claims Relating to the Remaining 98% of Accused Products

As to the approximately 98% of the products made, used, offered for sale or sold outside of Delaware, Defendants present a novel jurisdictional theory that, if adopted, would result in sweeping changes to the way that patent litigation proceeds in the United States. Defendants assert that: (1) each act of patent infringement is a separate cause of action; (2) Defendants could not have purposefully directed their activities to the forum regarding the 98% of their products referenced above, nor would infringement claims as to those products "arise from" or "relate to" contact with the forum; and (3) the Supreme Court in *Walden v. Fiore*, 134 S. Ct. 1115 (2014) overruled the Federal Circuit's longstanding rule, set forth in *Beverly Hills Fan*, regarding how the court system should address such out-of-state infringement. (D.I. 8 at 4-10)

By way of background, in *Beverly Hills Fan*, the Federal Circuit held that if the defendant has minimum contacts with the forum state—sufficient to establish specific jurisdiction as to sales of a product within that state—then the plaintiff "will be able to seek redress [there] for sales of the accused [product] to consumers in . . . other states[,]" even if "the bulk of the harm inflicted on [the plaintiff] may occur through sales in these other states." *Beverly Hills Fan*, 21 F.3d at 1568 & n.21. This outcome was said to comport with notions of fair play and substantial justice inherent in a due process inquiry, because the forum state not only has an interest in

10

discouraging in-state patent infringement-related injuries, but also has a "substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action." *Id.* at 1568. The *Beverly Hills Fan* Court noted that this outcome would ensure that "[t]he [non-forum] states will . . . be spared the burden of providing a forum for [the plaintiff] to seek redress for these sales" and that it would also protect defendants "from harassment resulting from multiple suits" in many different states. *Id.*

In coming to this conclusion, the Federal Circuit relied on the Supreme Court's holding in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). *Keeton* addressed the question of whether a court in New Hampshire had specific jurisdiction to hear a multistate libel action, where most of the damages had occurred in other states, and where the statute of limitations for bringing a libel action in those states had expired. *Id.* at 772-74, 780. Plaintiff there sought redress under the "'single publication rule'" for libel actions, which states that plaintiffs in such actions may be compensated for "'damages caused in *all* states' . . . even though the bulk of petitioner's alleged injuries had been sustained outside [the forum state]." *Id.* at 773 (emphasis in original). But the Court of Appeals had held that it would be "'unfair'" for the New Hampshire court to apply this rule and to assert jurisdiction over these out-of-state injuries. *Id.*

The Supreme Court reversed. It determined that a state "has a substantial interest in cooperating with other States, through the 'single publication rule,' to provide a forum for efficiently litigating all issues and damage claims arising out of a libel in a unitary proceeding." *Id.* at 777. The Court noted that addressing all instances of libel in a single proceeding, even if those instances occurred outside of the forum, "reduces the potential serious drain of libel cases on judicial resources" and serves to protect defendants from harassment resulting from multiple

11

suits. *Id.* It held that "since respondent can be charged with knowledge of the 'single publication rule,' it must anticipate that such a suit will seek nationwide damages." *Id.* at 781. Because the defendant "produce[d] a national publication aimed at a nationwide audience[,]" the Court held that "[t]here [was] no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." *Id.*

Turning back to Defendants' arguments here, they first assert that "'each act of patent infringement gives rise to a separate cause of action[,]'" and that jurisdiction over some of those causes of action (those associated with the use or sale of the 2% of accused products shipped to Delaware) does not lead to jurisdiction over others (those relating to the 98% of accused products shipped to other fora). (D.I. 8 at 4 (quoting *Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006)); D.I. 36 (hereinafter, "Tr.") at 18)

However, none of the cases cited by Defendants in support of their "separate cause of action" argument relate to personal jurisdiction at all. (D.I. 8 at 4-5) Instead, they relate to *when* a cause of action for infringement arose.[6] Indeed, Defendants have not cited any patent case that states that personal jurisdiction exists in a forum only as to the portion of the accused products that are made, used, offered for sale or sold within that forum. It is clear that *Beverly Hills Fan* is the controlling precedent on this issue, and that case held that a court *can* assert jurisdiction over

---

[6]   *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969, 1972-74 (2014) (addressing the "separate-accrual rule" for the copyright statute of limitations); *Hazelquist*, 437 F.3d at 1180-81 (holding that acts of patent infringement occurring after a bankruptcy each "gives rise to a cause of action that dates from the moment of infringement, after the discharge of [the defendant's] debts"); *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1362 (Fed. Cir. 2008) (recognizing that "each act of infringement gives rise to a separate cause of action" with regard to whether the infringement arose before or after a certificate of correction was issued).

out-of-state infringement activities in a patent action, in a manner somewhat analogous to the circumstances addressed in *Keeton*.  *Beverly Hills Fan*, 21 F.3d at 1568; *cf. Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 812 (E.D. Tex. 2014) (Bryson, J.) ("With respect to its activities in Texas, [the defendant] is in the same situation as many other national corporations that sell products or services nationwide.  Those companies are subject to specific jurisdiction in any district in which their infringing products are sold.") (citing *Beverly Hills Fan* and *Keeton*); *see also Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370-71 (Fed. Cir. 2010) (citing *Beverly Hills Fan* and *Keeton* to reverse a lower court holding that a forum lacked personal jurisdiction over defendants, in part because a contrary holding would require the patentee to pursue multiple separate actions against the defendants in their home states).

Defendants' next argument is that in *Walden*, the Supreme Court "distinguished" *Keeton* and "effectively overrule[d]" *Beverly Hills Fan*.  (D.I. 8 at 9-10)  In *Walden*, the Supreme Court rejected a theory of specific jurisdiction that was based on the state of residence of the plaintiff, holding that "plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 134 S. Ct. at 1121-26.  It distinguished prior cases, including *Keeton*, as relying on ties between the defendant and the *forum*, rather than between the defendant and the *plaintiff*.  *Id.* at 1123-24.

The Court concludes that *Walden* did not overrule, or even impact, the holdings in *Keeton* or *Beverly Hills Fan*.  *Keeton* involved a finding of specific jurisdiction based on the defendant's sales within the forum; plaintiff's "only connection with [the forum was] the circulation there of [copies of] a magazine that she assist[ed] in producing."  *Keeton*, 465 U.S. at 772.  Thus, *Walden*'s holding that jurisdiction cannot be based on the state of residency of a plaintiff is

13

simply irrelevant to *Keeton*'s core holding.  Likewise, *Beverly Hills Fan* relied on the fact that "at

least fifty-two" of the defendants' products were present in the forum, which reflected an

"ongoing relationship" with a retailer in that forum.  *Beverly Hills Fan*, 21 F.3d at 1565.  That, in

turn, demonstrated that the defendants had "intentionally established" a distribution channel and

that the "defendants knew, or reasonably could have foreseen, that a termination point of the

channel was [the forum state.]"  *Id.  Beverly Hills Fan* did not rely on the contacts between the

plaintiff and the forum, and as a result, its holding is not impacted in any way by *Walden*.[7]

In sum, Defendants have not persuaded the Court that the rule set forth in *Beverly Hills*

*Fan* is inapplicable or has been overruled.

> ### 4.      Conclusion

For the reasons set out above, the Court therefore recommends that the District Court

deny Defendants' Motion as to Defendants' specific jurisdiction arguments.

> ### B.      Transfer Under 28 U.S.C. § 1406(a)

---

[7]      Defendants also rely on *Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1228-30 (D. Del. 1990), (D.I. 8 at 5; Tr. at 36-37), which addressed whether "the Court can exercise specific personal jurisdiction over [the defendant] for the acts of its non-Delaware subsidiaries" in a trademark and trade name infringement action.  The Court noted that "the rule" in a trade name infringement action is that "each case of trade name or trademark infringement is a separate tort arising where the confusion to the customer occurs," and that the separate torts in other states committed by the subsidiaries did not "arise from" the defendant's contacts with Delaware.  *Id.* at 1228-30.  It found no reason to depart from that rule, and distinguished *Keeton* as applying the "single publication rule," which rendered a libelous publication a single, nationwide tort.  *Id.* at 1229-30.

However, this is a patent case, and the relevant precedent is that established by *Beverly Hills Fan*—that a state with jurisdiction over the infringing use or sale of a product arising out of or relating to a defendant's contacts with that state also has jurisdiction to award damages for infringing activity that occurs in other states.  *Beverly Hills Fan*, 21 F.3d at 1568.  Thus, this Court's holding in *Sears* cannot have the impact Defendants ascribe to it.

14

Defendants next argue that a major change in the law has also occurred with respect to venue. That is, they claim that venue in a patent action is now appropriate only in a defendant's state of incorporation, or "where the defendant has committed acts of infringement and has a regular and established place of business." (D.I. 8 at 10 (quoting 28 U.S.C. § 1400(b))

### 1.    Legal Standard

Venue in a patent action is governed by 28 U.S.C. § 1400(b), which provides that:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

Also relevant here is the general venue statute, Section 1391, which, *inter alia*, states that a corporate defendant is "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c).

If a case is filed in an improper venue, 28 U.S.C. § 1406(a) provides that a court shall "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."

### 2.    Analysis

Defendants note that Section 1391(c) was amended in 2011, and claim that these amendments had the effect of changing the state of patent venue as it relates to Section 1400(b). (D.I. 8 at 11) To understand Defendants' argument, some backtracking is required.

The interaction between sections 1400(b) and 1391(c) was addressed by the Supreme Court's 1957 opinion in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957). *Fourco* held that venue in a patent action is governed by Section 1400(b), which was "not to be

supplemented by the provisions of [Section] 1391(c)." *Id.* at 229. The Supreme Court viewed Section 1391(c) as general venue statute, and Section 1400(b) as a specific venue statute; it concluded that the general statute does not override the specific statute. *Id.* at 228-29. In light of this, the Supreme Court went on to hold that "the residence of a corporation for purposes of [Section] 1400(b) is its place of incorporation." *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 707 n.2 (1972) (citing *Fourco*, 353 U.S. 222).

Then, in 1988, Congress amended Section 1391(c). In doing so, it added the language "[f]or purposes of venue under this chapter" before the beginning of the rest of Section 1391(c)'s text. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990). In light of those amendments, the Federal Circuit in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990), held that Section 1391(c) now governs the meaning of "resides" in Section 1400(b). *Id.* at 1579-84. The Federal Circuit determined that the typical rule (that a specific statute like Section 1400(b) supercedes a general one like Section 1391(c)) no longer applied in this instance, for several reasons. *Id.* at 1580. First, the Court stated that "the [amended] general statute, § 1391(c), expressly reads itself into the specific statute, § 1400(b)[.]" *Id.* Additionally, it noted that the amended "§ 1391(c) only operates to define a term in § 1400(b)—it neither alone governs patent venue nor establishes a [separate] patent venue rule[,]" and it does not otherwise conflict with Section 1400(b). *Id.* Thus, according to *VE Holding*, the language of Section 1391(c) revealed "a clear intention" to supplement Section 1400(b); as a result, the Court found that a patent infringement action may be brought in any forum that has personal jurisdiction over the defendant corporation. *Id.* at 1581 (internal quotation marks and citation omitted). That conclusion has stood undisturbed by the Federal Circuit since *VE*

16

*Holding. See, e.g., In re Apple Inc.*, 456 F. App'x 907, 908 (Fed. Cir. 2012) (noting in dicta that "28 U.S.C. § 1400(b) . . . authorizes venue jurisdiction over any patent infringement suit where an alleged act of infringement has been committed.").

In 2011, Congress passed the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "Act"), which again amended Section 1391(c). Pub. L. No. 112-63, 125 Stat. 758, 763-64 (Dec. 7, 2011); *see* 28 U.S.C. § 1391 (2011). The Act replaced the words in Section 1391(c) that *VE Holding* relied on ("[f]or purposes of venue under this chapter") with new language: "[f]or all venue purposes[.]" *Id.* Congress also altered Section 1391(a) to read as follows:

> **(a) Applicability of section.**--Except as otherwise provided by law–
>
> (1) this section shall govern the venue of all civil actions brought in district courts of the United States; and
>
> (2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.

28 U.S.C. § 1391(a).[8]

Defendants assert that the effect of these changes is that Section 1391(c) no longer provides for the definition of the term "resides" in Section 1400(b). (D.I. 26 at 3-5) The Court

---

[8]   Congress also made another change to section 1391 that is raised by Defendants. It added the words "with respect to the civil action in question" to Section 1391(c), such that this part of the statute now reads that a defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction *with respect to the civil action in question*[.]" *Id.* (emphasis added). Defendants assert that this new language would exclude much of this case, because the Court lacks personal jurisdiction over infringement claims relating to the 98% of accused products that are not used or sold in Delaware (i.e., the "civil action" involving allegations relating to those products). (D.I. 8 at 11-12) The Court disagrees. As described above in Section II.A.3, the Court has jurisdiction to hear this patent infringement action with regard to all of the accused products (that is, over the entire "civil action" here).

will address Defendants' three most prominent arguments in support of this claim, and why they are not persuasive.

First, Defendants claim that because Congress removed "[f]or purposes of venue under this chapter" from Section 1391(c), and because the *VE Holding* Court had relied heavily on this now-removed language as the basis for its decision, *VE Holding*'s decision is now a nullity. (D.I. 26 at 3-4)

The Court disagrees. *VE Holding* held that Congress intended the prior wording used in Section 1391(c) to give meaning to the residency requirements in Section 1400(b). *VE Holding*, 917 F.2d at 1579-84. If anything, the 2011 amendments to this portion of Section 1391(c) served to further broaden the applicability of the statute. That is, wherein Section 1391(c) had previously helped to define, *inter alia*, the place of a corporate defendant's residence "[f]or purposes of venue under this chapter[,]" it now provides such a definition "[f]or all venue purposes[.]" If Congress' intent in enacting the 2011 amendments to Section 1391(c) was to alter the status quo as described in *VE Holding*—and to now indicate that Section 1391(c)'s terms have no impact on the meaning of "resides" in Section 1400(b)—then adding language that appears to *expand* the reach of Section 1391(c)'s definition of residency seems a strange way of accomplishing that.

This analysis is also supported by the Act's legislative history. The House of Representatives Report on the Act states that it intended to expand Section 1391(c) to "apply to all venue[ ]statutes, including venue provisions that appear elsewhere in the United States Code."

18

H.R. Rep. No. 112-10, at 20 (2011).  This "replace[d] [then-]current subsection 1391(c), which applie[d] . . . only for purposes of venue under Chapter 87." *Id.*[9]

Second, Defendants focus on the fact that as amended in 2011, Section 1391's "[a]pplicability" section (Section 1391(a)) now states that Section 1391's terms apply "[e]xcept as otherwise provided by law[.]"  (D.I. 26 at 2, 4); 28 U.S.C. § 1391(a) (2011).  Yet this new addition also does not alter the Court's conclusion.  After all, in light of the prior 1988 amendments to Section 1391(c), the Federal Circuit held that Section 1400(b) does not "conflict" with Section 1391(c), and that Congress' "'clear intention'" was that "§ 1391(c) is to supplement § 1400(b)." *VE Holding*, 917 F.2d at 1579-84.  That was the legal status quo as of the time of the enactment of the 2011 amendments.  And so, at the time of the 2011 amendments (and indeed, as of the present date), Section 1400(b) could not be said to "otherwise provide[]" for an outcome different than what is called for by the portion of Section 1391(c) at issue here.  Therefore, Section 1391(a)'s "applicability" section does not affect the outcome here—Section 1391 and Section 1400(b) can be read to be in harmony.[10]

_____

[9]    It is also worth noting that there is nothing in the legislative history submitted by the parties regarding the 2011 amendments suggesting that, in amending this subsection of 1391, Congress intended to take a step that would radically alter the landscape as to venue for patent litigation in the United States. *See, e.g.*, H.R. Rep. No. 112-10 (2011).

[10]    Indeed, our Court has continued to read Section 1391(c) and Section 1400(b) in this way since the Act's passage in 2011. *See Andrulis Pharm. Corp. v. Celgene Corp.*, C.A. No. 13-1644-RGA, 2015 WL 4366118, at *1 & n.5 (D. Del. July 16, 2015) (reading Section 1400(b) in light of Section 1391(c)); *Beacon Nav. GmbH v. Crysler Grp. L.L.C.*, C.A. No. 11-cv-921 (GMS), 2013 WL 1163943, at *5 (D. Del. Mar. 20, 2013) (same); *Devicor Med. Products, Inc. v. Biopsy Sciences, LLC*, Civil Action No. 10-1060-GMS, 2013 WL 486638, at *3 (D. Del. Feb. 7, 2013) ("A business entity defendant, for the purposes of both § 1391(b) and § 1400(b), 'resides' in 'any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.'") (citation omitted). And so have other courts. *See, e.g., Global Touch Solutions, LLC v. Toshiba Corp.*, — F. Supp. 3d —, Civil No. 2:14CV346,

19

Third, Defendants point to *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 n.2 (2013), which issued after the 2011 amendments, and which stated in dicta that "[s]ection 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply. *Cf., e.g.*, § 1400 (identifying proper venue for copyright and patent suits)." (D.I. 26 at 4)  But that statement is consistent with *VE Holding*'s determination that "§ 1391(c) only operates to define a term in § 1400(b)—it neither alone governs patent venue nor establishes a patent venue rule separate and apart from that provided under § 1400(b)." *VE Holding*, 917 F.2d at 1580.  *Atlantic Marine* is therefore unhelpful for Defendants.

Ultimately, it is clear that Section 1391(c) continues to operate to define "resides" in Section 1400(b), as was set out in *VE Holding*.  *See TNR Indus. Doors, Inc. v. PerforMax Grp., LLC*, No. 13-13815, 2014 WL 2800750, at *3 n.3 (E.D. Mich. June 17, 2014) ("[T]he scope of § 1391(c) as amended is even broader than the previous version interpreted in *VE Holding Corp.*, and this Court's conclusion that § 1391(c) supplements § 1400(b) is consistent with the holding in *VE Holding* . . . as well as the plain language of § 1391(c)."); *Devicor Med. Prods., Inc. v. Biopsy Sci., LLC*, Civil Action No. 10-1060-GMS, 2013 WL 486638, at *3 n.7 (D. Del. Feb. 7, 2013) (concluding that the 2011 amendments to Section 1391 did not undermine the Federal Circuit's conclusion in *VE Holding*).  The Court therefore recommends that the District Court deny Defendants' Motion as it relates to transfer of venue requested pursuant to Section 1406(a).

**C.     Transfer Under 28 U.S.C. § 1404**

---

2015 WL 3798085, at *10 (E.D. Va. June 15, 2015); *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-cv-00043-MOC-DCK, 2015 WL 2412467, at *9 (W.D.N.C. May 21, 2015); *Digcom, Inc. v. Pantech Wireless, Inc.*, No. 3:13-cv-00177- RCJ-WGC, 2014 WL 4232573, at *2 (D. Nev. Aug. 26, 2014).

Finally, Defendants set forth, in a cursory fashion,[11] arguments seeking transfer of venue

to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).  (D.I. 8 at 12-14)

### 1.    Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.[12]  It

provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been

brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The party seeking a transfer has the burden "to establish that a balancing of proper interests

weigh[s] in favor of the transfer[.]" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)

(citation omitted); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  That

burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of*

*defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal

---

[11]    Defendants did not address most of the Section 1404(a) transfer factors in their opening brief.  Instead, they provided only a short paragraph stating that the Southern District of Indiana is the more convenient venue because:  (1) that is TC Heartland's principal place of business and is where the claims arose, (2) that location is closer than is Delaware to Kraft's principal place of business, and (3) there are potential third party witnesses in that district who may be called as trial witnesses regarding the state of the relevant art.  (D.I. 8 at 12-13)  In their reply brief, Defendants did not address transfer under Section 1404(a) at all.  (D.I. 26)  At oral argument, Defendants did not raise the issue until prompted by the Court at the end of the hearing.  (Tr. at 69-71)  Once prompted, Defendants stated that their Section 1404(a) argument, though not "conceded[,]" was clearly "subsidiary" to their other arguments regarding personal jurisdiction and venue.  (*Id.*)  All of this comes very close to an acknowledgment that the Motion should not be properly viewed as a Section 1404(a) motion at all.  *Cf. Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *15 (D. Del. Oct. 14, 2014).  But for the sake of completeness, the Court will address Section 1404(a) below.

[12]    In analyzing a motion to transfer venue in a patent case, the law of the regional circuit applies.  *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*,

C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

The Third Circuit has observed that courts must analyze "all relevant factors" to

determine whether "the litigation would more conveniently proceed and the interests of justice be

better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal quotation marks

and citation omitted). Nevertheless, it has identified a set of private interest and public interest

factors that should be taken into account in this analysis (the "*Jumara* factors"). The private

interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original
> choice, [2] the defendant's preference, [3] whether the claim arose
> elsewhere, [4] the convenience of the parties as indicated by their
> relative physical and financial condition, [5] the convenience of the
> witnesses—but only to the extent that the witnesses may actually be
> unavailable for trial in one of the fora . . . and [6] the location of
> books and records (similarly limited to the extent that the files could
> not be produced in the alternative forum)[.]

*Id.* (citations omitted). The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations
> that could make the trial easy, expeditious, or inexpensive, [3] the
> relative administrative difficulty in the two fora resulting from court
> congestion, [4] the local interest in deciding local controversies at
> home, [5] the public policies of the fora, . . . and [6] the familiarity
> of the trial judge with the applicable state law in diversity cases[.]

*Id.* at 879-80 (citations omitted).

## 2.  Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been

brought in the proposed transferee venue. *Mallinckrodt Inc. v. E–Z–Em Inc.*, 670 F. Supp. 2d

349, 356 (D. Del. 2009). Here, there is no dispute, (D.I. 20 at 14), that this infringement action

could have been properly brought in the Southern District of Indiana, where Defendants are incorporated and have their headquarters. *See* 28 U.S.C. § 1400(b).

### 3.   Application of the *Jumara* Factors

The Court will proceed to analyze the *Jumara* factors and their impact on whether transfer should be granted.

#### a.   Private Interest Factors

#### i.   Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 & n.5 (D. Del. Oct. 15, 2012) ("*Pragmatus I*") (internal quotation marks and citation omitted) (citing cases), *adopted by* 2013 WL 174499 (D. Del. Jan. 16, 2013) ("*Pragmatus II*"); *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus I*, 2012 WL 4889438, at *4 (internal quotation marks and citations omitted) (citing cases); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753-54 (D. Del. 2012) ("*Altera*").

As noted above, Plaintiff chose to bring suit in Delaware, its state of incorporation. (D.I. 1 at ¶ 1)  The fact that Delaware is the plaintiff's state of incorporation has often been found to be a rational and legitimate reason to bring suit here. *See, e.g., Good Tech. Corp. v. MobileIron, Inc.*, Civil Action No. 14-1308-LPS-CJB, 2015 WL 1458091, at *3 (D. Del. Mar. 27, 2015);

23

*Altera*, 842 F. Supp. 2d at 754; *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 479 (D. Del. 2011) ("*Checkpoint Software*").  Defendants do not offer any contrary analysis with regard to this factor.

The Court therefore holds that the first private interest *Jumara* factor weighs against transfer.

### ii.      Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—Defendant prefers to litigate in the Southern District of Indiana.  In analyzing this factor, our Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference."  *Pragmatus I*, 2012 WL 4889438, at *6 (citation omitted).

Defendants argue that this action should be transferred to the Southern District of Indiana because its principal place of business is there.  (D.I. 8 at 13)  This Court has often held that the physical proximity of a defendant's place of business (and relatedly, of witnesses and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer to that district.  *See, e.g.*, *Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014); *Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014).

This second private interest *Jumara* factor weighs in favor of transfer.

### iii.      Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879.  As a matter of law, a claim regarding patent infringement arises "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or

sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil

Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (internal

quotation marks and citations omitted), *adopted by* 2013 WL 6869866 (D. Del. Dec. 30, 2013).

Nevertheless, as to this factor, this Court typically focuses on the location of the production,

design and manufacture of the accused instrumentalities. *Id.* (citing cases); *Altera*, 842 F. Supp.

2d at 755 ("'[I]f there are significant connections between a particular venue and the events that

gave rise to a suit, this factor should be weighed in that venue's favor.'") (alterations in original)

(quoting *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

In this case, it is undisputed that, while the accused products are sold nationwide

(including in Delaware), they are developed, tested, and manufactured in the transferee district.

(D.I. 9 at ¶ 3)  Because it appears that the operative events giving rise to the Plaintiff's claims of

infringement have a far stronger connection to the Southern District of Indiana than to any other

district, this factor weighs in favor of transfer. *See Fuisz Pharma LLC v. Theranos, Inc.*, Civil

Action No. 11-1061-SLR, 2012 WL 1820642, at *12 (D. Del. May 18, 2012), *adopted by* 2012

WL 2090622 (D. Del. June 7, 2012).

### iv.     Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated

by their relative physical and financial condition"—this Court has traditionally examined issues

including:  "(1) the parties' physical location; (2) the associated logistical and operational costs

to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district)

for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its

size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted).

Both parties are located either in the transferee forum, or far closer to that forum than to Delaware. (D.I. 8 at 13)  But in most actions, few case events involve travel to Delaware, particularly if the case does not result in a trial. *McRo, Inc.*, 2013 WL 6571618 at *7.  Here, the parties have national and international operations. (D.I. 9; D.I. 20 at 17)  Moreover, no record has been made by Defendants to suggest that the limited amount of travel required to Delaware would impose any meaningful physical or financial burden on them. *See McRo, Inc.*, 2013 WL 6571618 at *7.  In the absence of any attempt to put forward such evidence, this factor weighs in favor of transfer, but only slightly. *See id.*

### v.   Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. Of particular concern here are fact witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001); *Affymetrix*, 28 F. Supp. 2d at 203-05.

The practical impact of this factor has often been said to be limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live). *See Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 382 n.6 (D. Del. 2012); *Altera*,

842 F. Supp. 2d at 757-58. And here, Defendants argue only that a third party, the Coca Cola Company, "makes liquid water enhancers in Indiana, . . . and is likely to employ individuals who may be called as third-party witnesses knowledgeable as to the state of the . . . art at relevant times." (D.I. 8 at 13) But Defendants have not: (1) identified any particular witnesses from the Coca Cola Company whom Defendants intend to call at trial; (2) provided any further articulation as to how such testimony will actually be relevant at trial; or (3) provided any evidence that these unnamed witnesses would "actually be unavailable" for trial in Delaware. *See McRo, Inc.*, 2013 WL 6571618, at *9 ("Absent some concrete evidentiary showing that [potential third party witnesses] would be unlikely to testify, it is difficult to give Defendants' argument as to their potential unavailability significant weight.") (citing cases).

Under these circumstances, the Court finds this factor to be neutral. *See Ross v. Institutional Longevity Assets LLC,* Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *12 (D. Del. Sept. 20, 2013) ("With little in the record as to witnesses who would be unavailable in the fora at issue, and less still that is persuasive, the Court finds this factor to be neutral."), *adopted by* 2013 WL 5613998 (D. Del. Oct. 11, 2013); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012).

### vi.    Location of books and records

Because neither party raises any concern regarding the location of books and records, this factor is neutral.

### b.    Public Interest Factors

The parties either agree that four of the six public interest factors are neutral here, or do not address those factors at all. (D.I. 8 at 12-14; D.I. 20 at 18-20)  The Court thus addresses the two public interest factors that were asserted by any party to be other than neutral.

### i.      Administrative difficulties in getting the case to trial

The first relevant public interest factor is the "relative administrative difficulty in the two fora resulting from court congestion[.]" *Jumara*, 55 F.3d at 879.

Plaintiff asserts that this factor "weighs heavily against transfer and in favor of venue in Delaware." (D.I. 20 at 19)  According to Plaintiff, the "median time between the filing of a case and trial" in the year 2013 was 27.6 months in Delaware, as compared to 35.8 months in the Southern District of Indiana. (*Id.* (citation omitted))  Defendants do not oppose this conclusion, or point to any contrary evidence regarding court congestion. (*See* D.I. 8, 26)  The Court therefore finds that this factor weighs against transfer. *Cf. Cruise Control Techs. LLC v. Chrysler Grp. LLC*, Civil Action No. 12–1755–GMS, 2014 WL 1304820, at *5 (D. Del. Mar. 31, 2014) (finding that this factor favored transfer where the proposed transferee district's median time to trial in a civil case was 6.5 months less than in this District).

### ii.     Public policy of the fora

The next factor relates to the public policy of the respective fora.  This Court has previously held in the transfer context that the "public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Graphics Props.*, 964 F. Supp. 2d at 331 (internal quotation marks and citation omitted).  Delaware promotes itself as a place that entities should choose as their corporate home, and in doing so,

touts itself as a forum well-positioned to help resolve business disputes. *See, e.g.*, *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 604 & n.9 (D. Del. 2012).

Plaintiff asserts that because it is a Delaware corporation, this factor weighs against transfer. (D.I. 20 at 19-20) Defendants do not respond to this assertion in any way, and thus do not appear to contest this conclusion on the facts here. (*See* D.I. 8, 26) Under those circumstances, the Court finds this factor to weigh against transfer. *See Graphics Props.*, 964 F. Supp. 2d at 331.

### c.    Conclusion Regarding Impact of *Jumara* Factors

In sum, Plaintiff's choice of forum, the "administrative difficulties" factor, and the "public policy" factor weigh against transfer. Defendant's forum preference and where the claim arose weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. The remainder of the *Jumara* factors are neutral.

The Court therefore concludes that a balancing of the *Jumara* factors produces a result that is not "strongly in favor of" transfer. *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted).

## III.    CONCLUSION

For the reasons set forth above, the Court recommends that Defendants' Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1) and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  August 13, 2015

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

30