IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KRAFT FOOD GROUP BRANDS, LLC,

    Plaintiff,

  v.                  Civil Action No. 14-028-LPS-CJB

TC HEARTLAND, LLC d/b/a HEARTLAND
FOOD PRODUCTS GROUP and HEARTLAND     **UNSEALED ON**
PACKAGING CORPORATION,          **AUGUST 1, 2016**

    Defendants.

---

Frederick L. Cottrell, III, and Selena E. Molina, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

Patrick D. Lane, Joshua A. Lorentz, John D. Luken, Eric K. Combs, Robert M. Zimmerman, Nicole M. Sigurdson, Jaci L. Overmann, and Christen M. Steimle, DINSMORE & SHOHL LLP, Cincinnati, OH

  Attorneys for Plaintiff.

Mary B. Graham, Stephen J. Kraftschik, Thomas Curry, and Anthony D. Raucci, MORRIS NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE.

James W. Dabney, James R. Klaiber, Ross Lipman, Richard M. Koehl, David Lansky, Emma L. Baratta, Lynn Russo, and Stefanie Lopatkin, HUGHES HUBBARD & REED LLP, New York, NY.

John Fitzgerald Duffy, HUGHES HUBBARD & REED LLP, Washington, DC.

  Attorneys for Defendants.

---

**MEMORANDUM OPINION**

July 25, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is a dispute between the parties regarding the scope of Plaintiff Kraft's ("Kraft") waiver of attorney-client privilege. In April 2016, Defendant TC Heartland ("Heartland") moved to compel discovery on the subject of why Kraft and its agents failed to disclose International Patent Application No. PCT/US2006/010444, published as International Publication No. WO 2006/102435 ("Ackilli"), to the United States Patent and Trademark Office ("USPTO") during the prosecution of U.S. Patent No. 8,293,299 ("the '299 patent"). (D.I. 221, 222) Heartland argued that Kraft had impliedly waived privilege on that topic. (*Id.*) The Court held a hearing by teleconference on the issue on April 18, 2016. (D.I. 256 ("Tr.")) At the conclusion of the hearing, the Court found that there had been some waiver with respect to this subject matter and ordered the parties to submit briefs regarding the scope of the waiver. (Tr. at 54-55; D.I. 253) Briefing was completed on May 23, 2016. (D.I. 257, 266, 287, 288)

## I. BACKGROUND

In November 2015, Heartland propounded its Interrogatory No. 12 ("Interrogatory No. 12"), which requested:

> For each of the individuals whose names are listed in Exhibit 1 (the "Individuals"), please state the complete factual circumstances surrounding that Individual's awareness of International Patent Application No. PCT/US2006/010444 published as International Publication No. WO 2006/102435 (collectively "Ackilli"), including but not limited to, describing in detail the Individual's first awareness and any subsequent awareness of Ackilli, how the Individual became aware of Ackilli, and why the Individual did not disclose Ackilli to the United States Patent and Trademark Office during the prosecution of the applications leading to U.S. Patent No. 8,293,299 ("the '299 Patent"), and identify each document and thing which reflects, or refers or relates to, such Individual's awareness of Ackilli.

1

(D.I. 222 at 43-44) Interrogatory No. 12 referenced an Exhibit 1, which is a list of individuals whose awareness of Ackilli was of interest, along with a general request for information about "[a]ny other person who was substantively involved in the preparation or prosecution of the applications leading to the '299 patent." (*Id.* at 45)

In a February 2016 response, Kraft objected to Interrogatory No. 12 on the grounds that it "seeks the production of information protected by the Attorney-Client Privilege and Attorney Work Product Doctrine, neither of which has been waived to allow for its disclosure." (*Id.* at 50) However, Kraft also included in its response information regarding what a single Kraft patent attorney knew about Ackilli and why she did not disclose the application to the Patent Office, stating that:

> On or about October 2, 2012, Calista Mitchell received an international search report which disclosed Ackilli in connection with a separate patent application. Ms. Mitchell then accessed information about Ackilli using Espacenet, which identified Ackilli as being also published as US Ackilli, a reference that had previously been cited by Kraft in the prosecution of the '299 Patent. After the issue date of the '299 Patent, Ms. Mitchell first determined that Ackilli was not identically published as U.S. Ackilli.

(*Id.*)

Heartland moved to compel additional production, arguing that, having disclosed "one thought that one of its patent attorneys allegedly harbored . . . during the prosecution of the '299 patent," Kraft "cannot now rightly withhold discovery relevant to whether, in fact, the alleged attorney mistake was the true reason why . . . numerous others failed to disclose Ackilli" to the USPTO. (D.I. 221 at 4) Heartland moved to compel discovery of all documents related to Ackilli and an alleged commercial embodiment of Ackilli ("Water Sensations"). (D.I. 221 at 4;

2

D.I. 222 at 53-58)

After hearing oral argument, the Court found that there was at least some waiver of privilege, finding that Heartland is, at a minimum, entitled to sufficient discovery to assess the veracity of Heartland's statements regarding Ms. Mitchell. (Tr. at 53) Further, given that Kraft has indicated that it may defend itself against Heartland's inequitable conduct allegations by arguing that Kraft or its agents were unaware that Ackilli should have been disclosed (Tr. 40-43), Kraft's decision to put in the record evidence to support this view constitutes waiver of information about other individuals who may have had a different perspective (Tr. at 54-58).

## II. LEGAL STANDARDS

Federal Rule of Evidence 502(a) provides that a waiver resulting from the disclosure of privileged or protected information in a federal proceeding extends to undisclosed information only if "(1) the waiver [was] intentional: (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fairness requires that a Court prevent a party from invoking privilege "as to communications whose confidentiality he has already compromised for his own benefit." *In re Intel Corp. Microprocessor Litigation*, 258 F.R.D. 280, 289-290 (D. Del. 2008).

## III. SCOPE OF THE WAIVER

The Court has already held that Kraft intentionally waived privilege with respect to the information it disclosed about Ms. Mitchell. The parties' dispute centers on what other information "concern[s] the same subject matter" and "should in fairness be considered together" with the information already disclosed. In particular, the dispute concerns: (1) whether the scope of the waiver is limited to documents and information about Mitchell; (2) whether the waiver is

3

limited in time to documents and information from the period contemporaneous with the documents already produced; and (3) whether the waiver applies to information related only to Ackilli or also to information related to commercial embodiments of Ackilli.[1]

Specifically, "Heartland submits that the waiver extends to all communications relating to the <u>subject matter</u> of Interrogatory No. 12 up through <u>the date of the waiver</u>, *i.e.*, up through February 8, 2016 [the date Kraft responded to the interrogatory], exclusive of communications with Kraft's trial counsel or work product generated by Kraft's trial counsel in this case." (D.I. 257 at 1) Kraft, by contrast, argues: "Because Kraft is not relying on advice of counsel to defend against Heartland's inequitable conduct claim, Kraft's Answer to Interrogatory No. 12 presents no sword and shield concern with respect to the fourteen other individuals listed in Interrogatory No. 12. As a result, there is no need to extend the waiver beyond the information Kraft has already disclosed. If the Court finds there is a need to expand the waiver, it should be limited to documents and deposition testimony relevant to the issue of whether Fitch Even attorney Calista Mitchell knew that US Ackilli and WO Ackilli were not identical prior to the issuance of U.S. Patent No. 8,293,299 (the "'299 Patent") on October 23, 2012." (D.I. 266 at 2)

### A. The Waiver is Not Limited to Information about Ms. Mitchell

Kraft argues that the scope of the waiver in this case should be limited to the information already produced because Kraft is "not relying on an advice of counsel defense" to inequitable conduct. (D.I. 266 at 9) At most, Kraft, argues, the waiver should extend only to information about Ms. Mitchell, because Kraft is "not relying on Attorney Mitchell's advice to explain why it

---

[1] The parties agree that the waiver of privilege does not extend to communications with Kraft's trial counsel or work product generated by Kraft's trial counsel in this case. (*See* D.I. 257 at 4; D.I. 266 at 7)

or the fourteen other individuals listed in Interrogatory No. 12 did not cite Ackilli" during prosecution of the '299 patent. Rather, Kraft claims, its answer to Interrogatory No. 12 put at issue "only Attorney Mitchell's state of mind." (*Id.* at 14)

Although Kraft's disclosure is related exclusively to information about Ms. Mitchell's state of mind, the Court is not persuaded that Kraft's disclosure puts only her state of mind "at issue" in this case. Kraft disclosed information about Ms. Mitchell in response to an interrogatory ***directed to Kraft*** and seeking information about what anyone "who was substantively involved in the preparation or prosecution of the applications leading to the '299 patent" knew about Ackilli, and why any such individuals did not disclose Ackilli to the USPTO. (D.I. 222 at 43-45) Through Interrogatory No. 12, Heartland sought information regarding what Kraft ***as a whole*** knew about Ackilli, when it acquired that knowledge, and why Kraft did not disclose Ackilli to the PTO. By the time Kraft responded to Interrogatory No. 12, Heartland had already filed a motion for leave to serve an Amended Answer alleging inequitable conduct, citing in its motion Kraft's failure to disclose Ackilli as the basis for its inequitable conduct claims. (D.I. 173 at 1-3) Given this context, Kraft cannot plausibly argue that, at the time it responded to the interrogatory with privileged information, it was unaware that the information regarding Ms. Mitchell would be relevant to Heartland's claim that Kraft engaged in inequitable conduct by failing to disclose Ackilli to the USPTO.

USPTO regulations impose upon each inventor, each attorney or agent who prepares or prosecutes a patent application, and every "other person who is substantively involved in the preparation or prosecution of the patent application and who is associated with the inventor" a duty to disclose information relevant to an invention's patentability. 37 C.F.R. § 1.56. As such,

5

the actions and intentions of *every* such individual may be relevant to an inequitable conduct analysis, regardless of what defenses the patentee invokes. *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005). Thus, the Court is persuaded that Kraft's waiver with respect to Ms. Mitchell includes not only the information already disclosed, but also all information relevant to whether her failure to disclose Ackilli constitutes inequitable conduct by Kraft, including information about (1) her awareness of Ackilli and (2) her reasons for opting not to disclose Ackilli to the patent office.

Further, it would be unfair to limit the waiver of privilege to information about the knowledge and actions of Ms. Mitchell alone. To limit discovery to information regarding just one of the many individuals who had a duty to disclose Ackilli would create a risk of unfair prejudice, permitting Kraft an opportunity to argue to a factfinder that this one individual's knowledge and conduct are representative of those of the entire group and of Kraft itself. The knowledge and actions of the other individuals, on behalf of Kraft, are part of the same subject matter and ought in fairness be disclosed.

For these reasons, the Court finds that Kraft's waiver includes (1) whether the individuals listed in Interrogatory No. 12 were aware of Ackilli, and (2) why any individuals who were aware of Ackilli did not disclose Ackilli to the USPTO.

**B.     The Temporal Scope of the Waiver**

Heartland contends that the waiver extends all the way through the date that Kraft filed its response to Interrogatory No. 12, which is February 8, 2016. (D.I. 257 at 4) Kraft contends that any waiver is, at most, limited to the period between October 2, 2012, when Ms. Mitchell received an international search report and learned that the WO Ackilli reference was different

6

than the U.S. Ackilli patent, and October 23, 2012, when the '299 patent issued. Other dates may also be conceived including: (i) September 13, 2012, when the PTO issued its Notice of Allowability[2] for the '299 patent, *see Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1318 (Fed. Cir. 2008) (stating duty of candor extends until issuance of notice of allowance); or (ii) March 26, 2013, the date Kraft cited Ackilli to the PTO in connection with prosecution of U.S. Patent No. 8,603,557 ("the '557 patent"), a continuation of the '299 patent (D.I. 257 at 6).

The Court concludes that neither party's position is persuasive. Heartland's February 2016 date would constitute too broad of a waiver, as discussions of Ackilli that post-date Kraft's disclosure of the reference to the PTO are unlikely to clarify its knowledge of and decision about making that disclosure. But Kraft's three-week October 2012 window would be too narrow; it would create a risk of unfair prejudice by permitting Kraft to argue that its knowledge and decision-making in those weeks was representative of its knowledge and decision-making throughout prosecution of the '299 patent (and throughout the time it took Kraft to disclose Ackilli during prosecution of the '557 patent).

March 26, 2013 – the date Kraft cited Ackilli to the PTO in connection with prosecution of the '557 patent – is the appropriate date through which the waiver extends. As Heartland argues, "Ackilli-related information is just as material to the patentability of the subject matter claimed in the '557 Patent as it is to the patentability of the subject matter claimed in the '299 Patent." (D.I. 287 at 8) Kraft's discussions regarding its decision to disclose Ackilli during prosecution of the '557 patent may help to clarify whether Kraft knew of Ackilli during

---

[2]The Notice of Allowability for the '299 patent, while not included in the record in this case, is available on the USPTO's Public Pair web page.

prosecution of the '299 patent and, if so, why Kraft did not disclose Ackilli to the PTO at that time.

### C.  Information Related to Commercial Embodiments of Ackilli

Heartland argues that the scope of the waiver in this case should extend beyond information related to Ackilli, and also to "the technology of Ackilli, or the Water Sensations product." (D.I. 257 at 5-6) But commercial embodiments of Ackilli, including Water Sensations, are not mentioned in either Heartland's Interrogatory No. 12 or in Kraft's response to it, nor are they described as the basis for Heartland's inequitable conduct claim. (*See* D.I. 173) Documents and information that relate exclusively to the technology of Ackilli or the Water Sensations product and not also to Defendants' knowledge of and/or decision not to disclose Ackilli are not within the scope of the waiver.[3]

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Kraft waived attorney client privilege with respect to the factual circumstances surrounding Kraft's awareness of Ackilli, and why Kraft did not disclose Ackilli to the USPTO, up to and including March 26, 2013. Accordingly, Kraft will be ordered to provide a complete response to Heartland's Interrogatory No. 12 and to produce discovery related to Ackilli. An order follows.

---

[3]The parties' briefs make reference to a potential dispute about redactions Kraft may make in any documents it will be producing pursuant to today's order. All the Court may say about this dispute at this point is that any redactions must be consistent with this order and the Court's conclusions about waiver of privilege.

8