IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KRAFT FOODS GROUP BRANDS LLC, | : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A. No. 14-28-LPS |
| TC HEARTLAND, LLC d/b/a HEARTLAND FOOD PRODUCTS GROUP and HEARTLAND PACKAGING CORPORATION, | : : : : : : | |
| Defendant. | : : | |

**MEMORANDUM ORDER**

**I. BACKGROUND**

On July 6, 2016, Plaintiff Kraft Foods Group Brands LLC ("Kraft" or "Plaintiff") filed two *Daubert* Motions to Exclude the testimony of experts retained by Defendants TC Heartland, LLC and Heartland Packaging Corporation ("Heartland" or "Defendants"). (*See* D.I. 316, 320) The Court heard argument on these and other motions on August 30, 2016. (*See* D.I. 416 ("Tr."))

**II. LEGAL STANDARDS**

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles

1

and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Civ. P. 702(b)-(d). There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

## III. DISCUSSION

### A. Motion to Exclude Robert Kimmel's Testimony

Kraft seeks to exclude Dr. Robert Kimmel's non-infringement opinions concerning the asserted claims' packaging limitations. Kraft argues that Dr. Kimmel's testimony regarding the packaging limitations should be excluded because it is unreliable. (*See* D.I. 316 at 3) More specifically, Kraft contends that Dr. Kimmel's testimony is built on the view that Kraft's claims are limited flavored beverage concentrates that are packaged in containers that are "approximate copies" of those depicted in the '472 and '557 patent specifications. According to Kraft, this testimony violates the claim construction order, in which the Court rejected Heartland's position that the packaging claims of the '472 and '557 patents should be construed as encompassing only "approximate copies" of the embodiments disclosed in the specification. (*See* D.I. 198 at 23-26) Further, Kraft argues, this "approximate copies" approach is not the correct legal test for assessing infringement.

In his deposition, Dr. Kimmel stated that Heartland's counsel instructed him to conduct his infringement analysis by not only comparing the accused products to each of the claim elements, but "in addition in this case because of the crowded nature of this field" to consider "an additional restriction to the specific embodiments that are . . . clearly delineated in the patents," i.e., the figures. (D.I. 316 at 5-6) Heartland does not dispute that it so instructed Dr. Kimmel.

2

(*See* D.I. 363 at 2-5)

At oral argument, counsel for Heartland stated that "even if . . . literal infringement is shown . . . , it is a defense that the accused containers are not equivalent." (Tr. at 16) In support of this "reverse doctrine of equivalents," Heartland refers the Court to *SRI International v. Matsushita Electric Corporation of America*, 775 F.2d 1107 (Fed. Cir. 1985), and *Holland Furniture Co. v. Perkins Glue Co.*, 277 U.S. 245, 250 (1928). (Tr. at 16-17) Kraft responds that the reverse doctrine of equivalents has never been asserted as an infringement defense in this case and, further, that Heartland is attempting to use the term to "cloak an existing argument in some different disguise." (Tr. at 20)

"Infringement occurs when a properly construed claim of an issued patent covers an accused device." *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1346 (Fed. Cir. 2008). Thus, "infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002). The reverse doctrine of equivalents is "an equitable doctrine designed to prevent unwarranted extension of the claims beyond a fair scope of the patentee's invention." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008) (internal quotation marks omitted). Its application is limited to circumstances "where a device is so far changed in ***principle*** from a patented article that it performs the same or similar function in a ***substantially different way***, but nevertheless falls within the literal words of the claim." *Id.* (emphasis original) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608–609 (1950)).

In its claim construction order, the Court rejected Heartland's legal argument that the

3

claims asserted in this case are limited to the embodiments specifically disclosed in the specification. (D.I. 198 at 23-26) Heartland has not presented to the Court any new claim construction arguments that justify reevaluation of that position.[1] Even assuming that assertion of the reverse doctrine of equivalents defense would be appropriate and timely, the law does not permit Heartland to import limitations from the specification into the claims through expert testimony.

Because expert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact, Dr. Kimmel's infringement opinions regarding the packaging limitations of the asserted patents are STRICKEN, and Kraft's motion (D.I. 316) is GRANTED.

**B.  Motion to Exclude Bradford Cornell's Testimony**

**1.  Availability and Cost of Non-Infringing Alternative**

Kraft moves to exclude Dr. Cornell's testimony regarding the availability of a non-infringing alternative and the cost of producing such an alternative, arguing that neither is based on a reliable factual foundation. (*See* D.I. 323 at 3-4) Kraft takes particular issue with what it characterizes as Dr. Cornell's reliance on Heartland employees' unsubstantiated opinions about the availability and cost of such an alternative. (*See id.* at 4-5) At times, in Kraft's view, "the testimony of Heartland's own witnesses establish[es] that the facts upon which Dr. Cornell relied are in error." (D.I. 323 at 2; *see also* Tr. at 9) Kraft asserts that Dr. Cornell "undertook no investigation to ensure the accuracy or reliability of the facts Heartland provided." (D.I. 323 at 5)

---

[1] Since the Court found at claim construction that Heartland's legal arguments contradict binding precedent (*see* D.I. 198 at 23-26), Heartland's new contentions (D.I. 363) in support of its untenable theory are not helpful to its case.

4

Kraft finds in deposition testimony evidence that Heartland's employees answered Dr. Cornell's questions casually and without background research or detailed context. (*See* D.I. 323 at 6) Kraft contends that Dr. Cornell relied upon unreliable information that was given off-the-cuff, is based on the wrong time period, or does not reflect an acceptable alternative. (*See id.* at 6-7)

Heartland responds that Dr. Cornell appropriately relied on input from knowledgeable Heartland employees. (*See* D.I. 362 at 1-2) Heartland notes that each of these individuals was identified by Dr. Cornell in his report and was deposed by Kraft. (*See id.* at 2) Heartland characterizes Kraft's "challenges to the non-infringing alternatives' cost estimates, feasibility, and commercial acceptability" as having "no impact on admissibility, but are instead points for cross examination and presentation of contrary evidence" – particularly because the lay witnesses upon whose statements Dr. Cornell relied are available to testify at trial. (*Id.* at 2-3)

Courts exercise their discretionary gatekeeping role on a case-by-case basis and their decisions turn on the particular circumstances presented. *See generally Elcock*, 233 F.3d at 745. Kraft's objections to Dr. Cornell's report are grounds for cross-examination; they go to the weight to be accorded to Dr. Cornell's testimony rather than its admissibility. As Heartland observes and represents, the individuals Dr. Cornell relies on have been deposed and will be available to testify at trial. (*See, e.g.,* D.I. 362 at 2; Tr. at 13 ("The financial economist talks to the executives of the company, and they have all testified at trial. So if it doesn't prove out at trial, well, then the noninfringing alternative may not be accepted.")) Kraft's motion is therefore DENIED.

### 2.     Mr. McGavock's Damages Calculation

Kraft argues that Dr. Cornell's criticism of Mr. McGavock's opinions should be excluded

because Dr. Cornell's report does not provide the calculations that form the basis of his critique. (*See* D.I. 323 at 9-11) Heartland responds that its production of Dr. Cornell's working papers upon Kraft's request cures any deficiency. Although Kraft complains that Heartland did not produce the working papers until after Dr Cornell's deposition, Kraft did not request the papers until that time – despite having Dr. Cornell's expert report in hand. (*See* D.I. 362 at 4) The Court is not persuaded that Heartland's failure to produce these documents earlier turned out to be unfairly prejudicial to Kraft. With regard to the purported error in Dr. Cornell's royalty rate calculation, his use of a flawed spreadsheet, and his purported "rel[iance] on nothing more than his intuition," the Court believes these issues go to weight rather than admissibility. (D.I. 323 at 10)

Kraft also argues that Dr. Cornell's critique should be precluded because Dr. Cornell failed to perform an original market analysis. (*See* D.I. 323 at 10 ("Dr. Cornell does not set forth an opinion as to what the relevant market should be, and he admits that he made no effort to determine the relevant market or perform his own market analysis.")) However, as Heartland notes, Dr. Cornell's criticisms of McGavock's report center on McGavock's methodology and whether McGavock's conclusions deserve any weight. (*See* D.I. 362 at 5 ("Dr. Cornell simply criticizes Mr. McGavock for failing to show that Kraft would have made any additional sales ***but for*** Heartland's alleged infringement . . . ." (emphasis original))) Given that the burden of proving lost profit damages is on Kraft, it is not necessary that Dr. Cornell provide an alternative market analysis of his own. Again, this critique goes to weight and not admissibility

For these reasons, Kraft's motion to exclude Dr. Cornell's critique of McGavock's testimony is DENIED.

## IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Kraft's *Daubert* motion to exclude testimony of Dr. Kimmel (D.I. 316) is GRANTED.

2. Kraft's *Daubert* motion to exclude testimony of Dr. Cornell (D.I. 320) is DENIED.

January 12, 2017  
Wilmington, Delaware

HON. LEONARD P. STARK  
UNITED STATES DISTRICT COURT

7